GOODIN, MACBRIDE, SQUERI,
   DAY & LAMPREY, LLP
WAYNE T. LAMPREY, State Bar No. 095408
ANNE H. HARTMAN, State Bar No. 184556
505 Sansome Street, Suite 900
San Francisco, California 94111
Telephone:   (415) 392-7900
Facsimile:   (415) 398-4321

Attorneys for Plaintiff-Relator

ORIGINAL

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
2012 JUN 13   PM 4: 05
BY: ___

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* [Under Seal], | No.  CV 10-7409 PA (AJWx) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT** |
| v. | |
| [Under Seal] | **[FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)]** |
| Defendant. | |

ORIGINAL

GOODIN, MACBRIDE, SQUERI,
    DAY & LAMPREY, LLP
WAYNE T. LAMPREY, State Bar No. 095408
ANNE H. HARTMAN, State Bar No. 184556
505 Sansome Street, Suite 900
San Francisco, California 94111
Telephone:  (415) 392-7900
Facsimile:  (415) 398-4321

Attorneys for Plaintiff-Relator

2012 JUN 13  PM 4: 05

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

FILED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA *ex rel.* [Under Seal],<br><br>              Plaintiffs,<br><br>v.<br><br>[Under Seal]<br><br>              Defendant. | No.  CV 10-7409 PA (AJWx)<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**<br><br>**[FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)]** |
| --- | --- |

1
2   GOODIN, MACBRIDE, SQUERI,
        DAY & LAMPREY, LLP
3   WAYNE T. LAMPREY, State Bar No. 095408
    ANNE H. HARTMAN, State Bar No. 184556
4   505 Sansome Street, Suite 900
    San Francisco, California 94111
5   Telephone: (415) 392-7900
    Facsimile: (415) 398-4321
6
7   Attorneys for Plaintiff-Relator
    Mario Rizzo
8
9                    UNITED STATES DISTRICT COURT
10                  CENTRAL DISTRICT OF CALIFORNIA
11  UNITED STATES OF AMERICA *ex*        No. CV 10-7409 PA (AJWx)
    *rel*. Mario RIZZO,
12                                       **FIRST AMENDED COMPLAINT**
                    Plaintiffs,          **FOR VIOLATIONS OF THE**
13                                       **FALSE CLAIMS ACT**
    v.
14                                       **[FILED UNDER SEAL**
    HORIZON LINES, LLC, a Delaware       **PURSUANT TO 31 U.S.C.**
15  Limited Liability Company; MATSON    **§ 3730(b)(2)]**
    NAVIGATION COMPANY, INC., a
16  Hawaii Corporation; PASHA HAWAII
    TRANSPORT LINES, LLC;
17  AAA SYSTEMS, INC., a Nevada
    Corporation; AALCO FORWARDING,
18  INC., a Kansas Corporation; ABBA
    INTERNATIONAL, INC., a
19  Washington Corporation;
    ACCELERATED INTERNATIONAL
20  FORWARDERS, LLC, an Indiana
    Limited Liability Company; AIR LAND
21  FORWARDERS, INC., a Florida
    Corporation; ARPIN
22  INTERNATIONAL GROUP, INC., a
    Rhode Island Corporation; H&B
23  FORWARDING, INC., D/B/A AXIS
    INTERNATIONAL, a Maryland
24  Corporation; BINL, INCORPORATED,
    a California Corporation;
25  CARTWRIGHT INTERNATIONAL
    VAN LINES, INC., a Missouri
26  Corporation; CLASSIC
    FORWARDING, INC., a California
27  Corporation; COVAN
    INTERNATIONAL, INC., an Alabama
28  Corporation; CRYSTAL
    FORWARDING, INC., a California

**FIRST AMENDED COMPLAINT**
                          -2-                    CV 10-7409 PA (AJWx)

1  Corporation; DESERET
   FORWARDING INTERNATIONAL,
2  INC., a Texas Corporation; DEWITT
   TRANSPORTATION SERVICES OF
3  GUAM, INC., D/B/A DEWITT
   MOVING AND STORAGE GUAM, a
4  Guam Corporation; DYER
   INTERNATIONAL, INC., a Hawaii
5  Corporation; FOREMOST
   FORWARDERS, INC., a California
6  Corporation; JET FORWARDING,
   INC., a California Corporation; LIFT
7  FORWARDERS, INC., an Oregon
   Corporation; ROYAL HAWAIIAN
8  MOVERS, INC., a Nevada Corporation;
   RYAN'S WORLD, INC., a California
9  Corporation; SENATE
   FORWARDING, INC., a Georgia
10 Corporation; and, SUDDATH VAN
   LINES, INC., a Florida Corporation,
11
                Defendants.
12

13         Plaintiff Mario Rizzo, in his capacity as a Relator ("Relator"), files this

14 First Amended Complaint against defendants and alleges as follows:

15                              **INTRODUCTION**

16         1.     This action is brought on behalf of the United States pursuant to the

17 False Claims Act, 31 U.S.C. sections 3729, et seq. (hereinafter "the Act").

18         2.     This action concerns false and fraudulent claims for payment that the

19 defendants submitted and caused to be submitted to the Department of Defense

20 ("DoD"), specifically the Surface Deployment and Distribution Command

21 ("SDDC"), which oversees the shipment of personal property of members of the

22 United States Armed Forces and civilian employees of the DoD ("military

23 household goods"). The defendants routinely submitted false and fraudulent claims

24 for payment to the SDDC, created false writings in support of such false claims,

25 and caused the submission of false claims. Specifically, and as more fully

26 described below, defendants submitted false claims for payment by claiming fuel

27 surcharges for the entirety of shipments that included both ocean transport by ship,

28 and inland transport by rail or truck. The SDDC allowed and would pay fuel

**FIRST AMENDED COMPLAINT**                              CV 10-7409 PA (AJWx)

surcharges – a charge on top of the base rate permitted only when fuel prices rose –
for ocean transport, but never for transport by rail and for truck only if the fuel price
exceeded a specified level.  The defendants included on their bills fuel surcharges
for transport by rail, which was expressly forbidden, and for transport by truck, at
levels far greater than that authorized by the SDDC.  Defendants' bills were false
and fraudulent.  Relator brings this action on behalf of the United States pursuant to
the "qui tam" provisions of the Act.  Those provisions allow and empower
individuals with knowledge of violations of the Acts to file suit on behalf of the
government, and, to encourage individuals to do so, provide that these individuals
are to share in any resulting recovery.

3.      Relator estimates that the government has sustained damages as a
result of the violations alleged below in excess of $2 million per year, before
imposition of lawful penalties, including trebling and per-claim penalties pursuant
to the Act.

## PARTIES

4.      Relator is an individual and a resident of Illinois.

5.      Plaintiff United States of America is acting on behalf of the
Department of Defense, Surface Deployment and Distribution Command
("SDDC"), formerly known as Military Traffic Management Command.  During
the relevant time period, SDDC has had its headquarters in Alexandria, Virginia
and at Scott Air Force Base, Illinois.

6.      Defendant Horizon Lines, LLC ("Horizon"), is a limited liability
corporation organized and operating under the laws of the State of Delaware with
its principal place of business in Charlotte, North Carolina.

7.      Defendant Matson Navigation Company, Inc. ("Matson"), is a
corporation organized and operating under the laws of the State of Hawaii with its
principal place of business in Oakland, California.

8.      Defendant Pasha Hawaii Transport Lines, LLC ("Pasha") is a limited

liability company organized and operating under the laws of the State of California with its principle place of business on Corte Madera, California.

9.  Defendants Horizon, Matson, and Pasha are referred to herein collectively as " Carrier Defendants."

10.  The following defendants are referred to herein collectively as the "Freight Forwarder Defendants":

   a.  Defendant AAA Systems, Inc., is corporation organized and operating under the laws of the State of Nevada with its principal place of business in Mercer Island, Washington.

   b.  Defendant AALCO Forwarding, Inc., is a corporation organized and operating under the laws of the State of Kansas with its principal place of business in Overland Park, Kansas.

   c.  Defendant Abba International, Inc. is a corporation organized and operating under the laws of the State of Washington with its principal place of business in Everett, Washington.

   d.  Defendant Accelerated International Forwarders, LLC is a limited liability company organized and operating under the laws of the State of Indiana with its principal place of business in Fort Wayne, Indiana.

   e.  Defendant Air Land Forwarders, Inc. is a corporation organized and operating under the laws of the State of Florida with its principal place of business in Jacksonville, Florida.

   f.  Defendant Arpin International Group, Inc. is a corporation organized and operating under the laws of the state of Rhode Island with its principal place of business in East Greenwich, Rhode Island.

   g.  Defendant H&B Forwarding, Inc., d/b/a/Axis International, is a corporation organized and operating under the laws of the state of Maryland with its principal place of business in West Warwick, Rhode Island.

1    h. Defendant BINL, Incorporated, is a corporation organized and
2        operating under the laws of the state of California with its principal
3        place of business in Long Beach, California.
4    i. Defendant Cartwright International Van Lines, Inc. is a corporation
5        organized and operating under the laws of the state of Missouri, with
6        its principal place of business in Grandview, Missouri.
7    j. Defendant Classic Forwarding, Inc. is a corporation organized and
8        operating under the laws of the state of California, with its principal
9        place of business in Carlsbad, California.
10   k. Defendant CoVan International, Inc., is a corporation organized and
11       operating under the laws of the state of Alabama, with its principal
12       place of business in Midland City, Alabama.
13   l. Defendant Crystal Forwarding, Inc. is a corporation organized and
14       operating under the laws of the state of California, with its principal
15       place of business in Carlsbad, California.
16   m. Defendant Deseret Forwarding International, Inc., is a corporation
17       organized and operating under the laws of the state of Texas with its
18       principal place of business in El Paso, Texas.
19   n. Defendant DeWitt Transportation Services of Guam, Inc., d/b/a
20       DeWitt Moving and Storage Guam, is a corporation, upon information
21       and belief, organized and operating under the laws of the Territory of
22       Guam, with its principal place of business in Tamuning, Guam.
23   o. Defendant Dyer International, Inc., is a corporation organized and
24       operating under the laws of the State of Hawaii, with its principal place
25       of business in Pearl City, Hawaii.
26   p. Defendant Foremost Forwarders, Inc., is a corporation organized and
27       operating under the laws of the state of California, with its principal
28       place of business in Tualatin, Oregon.

**FIRST AMENDED COMPLAINT**

CV 10-7409 PA (AJWx)

q. Defendant Jet Forwarding, Inc., is a corporation organized and operating under the laws of the state of California, with its principal place of business in Torrance, California.

r. Defendant Lift Forwarders, Inc., is a corporation organized and operating under the laws of the state of Oregon, with its principal place of business in Tigard, Oregon.

s. Defendant Royal Hawaiian Movers, Inc., is a corporation organized and operating under the laws of the state of Nevada, with its principal place of business in Honolulu, Hawaii.

t. Defendant Ryan's World, Inc., is a corporation organized and operating under the laws of the state of California, with its principal place of business in Escondido, California.

u. Defendant Senate Forwarding, Inc., is a corporation organized and operating under the laws of the state of Georgia, with its principal place of business in Orange Park, Florida.

v. Defendant Suddath Van Lines, Inc., is a corporation organized and operating under the laws of the state of Florida, with its principal place of business in Jacksonville, Florida.

## JURISDICTION AND VENUE

11.  This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 31 U.S.C. § 3732 (federal court jurisdiction for actions brought pursuant to 31 U.S.C. § 3730).

12.  Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), because Defendant(s) transact business, including shipping goods through this District as alleged in this complaint, and under 28 U.S.C. 1391(b) and 1395(a).

## ALLEGATIONS COMMON TO ALL CLAIMS

13.  The DoD, through the U.S. Transportation Command, and its subordinate military command, SDDC, contracts for the transportation of military

-7-

1  household goods, including between, on the one hand, Hawaii and Guam and, on

2  the other hand, the continental United States.

3      14.    Each shipment of military household goods may be comprised of

4  numerous steps. A move from Hawaii to the Eastern United States can involve the

5  following different transportation services performed by:

6          a.    Local Hawaii moving and storage companies to get the freight

7                from the service member's location to the port in Honolulu;

8          b.    Honolulu port agent services;

9          c.    ocean transport services;

10         d.    mainland port agent services, and

11         e.    mainland moving and storage companies to get the freight from

12               the port to the delivery point at the service member's new

13               location.

14     15.    Freight forwarders such as the Freight Forwarder Defendants act as

15  agents, arranging each of these steps on behalf of shipping customers like the

16  SDDC, while not typically owning or operating any of the ships, trains, trucks, or

17  storage facilities themselves.

18     16.    SDDC establishes the prices and terms for moving military service

19  members and DoD civilian employees through a competitive bidding process.

20  SDDC issues solicitations for transportation rates for traffic channels that require

21  that household goods carriers and household goods freight forwarders, including

22  the Freight Forwarder Defendants, provide door-to-door transportation services for

23  shipments of military household goods under an international through government

24  bill of lading ("ITGBL") (Hawaii and Guam are "international" for these purposes).

25  The rates filed for such "door-to-door" service are commonly known as "through

26  rates," that is, the overall rate that applies to a given traffic channel on a

27  government through bill of lading.

28     17.    Freight forwarder bids for SDDC household goods ITGBL shipments

**FIRST AMENDED COMPLAINT**

-8-

CV 10-7409 PA (AJWx)

1   cover six-month "rate cycles." During a six-month rate cycle, freight forwarders

2   cannot change the through rates they charge the government for such shipments.

3       18.    Each of the Freight Forwarder Defendants filed through rates with the

4   SDDC in channels including shipments to and/or from Hawaii and/or Guam during

5   the relevant time period, and pursuant to those rate filings, provided freight

6   forwarding services for military household goods shipments, billing the SDDC for

7   those shipments. The Freight Forwarder Defendants in turn contracted with the

8   Carrier Defendants for ocean transportation of these shipments, as well as for

9   certain overland transportation, as set forth in more detail below.

10       19.    The Carrier Defendants each established rates specifically for the

11   shipment of military household goods and "DOD-sponsored" shipments. The

12   carrier Defendants further knew the Freight Forwarder Defendants utilized those

13   rates when establishing their through rates for the SDDC.

14       20.    All ocean transport of military household goods between Hawaii

15   and/or Guam and the continental United States must be performed by "Jones Act"

16   carriers, those meeting the requirements of the Jones Act, 46 U.S.C. § 101 et seq.,

17   that all freight be carried on vessels registered under the United States flag,

18   constructed in the United States, owned and operated by domestic companies, and

19   predominantly crewed by U.S. citizens.

20       21.    The Carrier Defendants each operate "Jones Act" fleets, and, indeed,

21   are the only companies doing so in the Pacific market. Horizon and Matson

22   collectively handle 96% of the Jones Act trade between the west coast of the

23   continental United States and Hawaii (Pasha handles the remainder) and 100% of

24   the trade between the west coast and Guam.

25       22.    The "through rates" bid by freight forwarders through the SDDC rate

26   solicitation process are required to cover the entire cost of shipment, but the SDDC

27   does allow and will pay a few specified "surcharges" designed to allow the freight

28   forwarder to recoup cost increases due to unforeseeable events and circumstances.

FIRST AMENDED COMPLAINT

-9-

CV 10-7409 PA (AJWx)

1    One of the allowed surcharges is a "bunker fuel surcharge," to cover increases in
2    "bunker" fuel used by ships during ocean transport.  The bunker fuel surcharge was
3    originally designed to provide "fair compensation" to carriers and freight
4    forwarders required to incur higher than anticipated fuel costs for ocean transport
5    during one of the six-month rate cycles.

6        23.    The Carrier Defendants frequently impose bunker fuel surcharges,
7    often referred to as a "bunker service charge," "BSC," "BS" "BAF" or "fuel
8    surcharge" (hereinafter "BSC") or similar name, in addition to their ocean
9    transportation rates.  The BSC can add more than 25% to the Carrier Defendants'
10   published rates.  The surcharge is so named because of the "bunker fuel" used on
11   ships; bunker fuel is not used in any other transportation application, and any
12   reference to "bunker fuel," "bunker surcharges," or "bunker adjustments" is, by
13   definition, a reference to ocean transportation only.

14       24.    While not part of the "through rates," SDDC rate solicitations provide
15   that the United States will pay lawful BSCs on SDDC shipments when those
16   surcharges are billed to the freight forwarder by an ocean carrier such as the Carrier
17   Defendants.  SDDC rules require that the "actual amount" of the allowed BSC be
18   "separately" stated on the ocean carrier's invoices, which are required to be
19   submitted to the government by the freight forwarder for payment.

20       25.    The SDDC treats fuel surcharges on overland transportation much
21   differently than fuel surcharges on ocean transportation.  SDDC regulation TR-12,
22   adopted in 2001 in consultation between the SDDC (then called the Military Traffic
23   Management Command) and an Industry Fuel Board consisting of industry
24   representatives, covers such overland surcharges.  TR-12 limits fuel surcharges
25   based on the amount by which the national average diesel fuel price published by
26   the Department of Energy (DOE) Energy Information Administration (EIA) for the
27   time period of the shipment exceeds a baseline.  The truck/diesel fuel surcharge
28   authorized by TR-12 must be "clearly show[n] on all paper and electronic

1    commercial freight bills and Bills of Lading and invoices. The amount of any

2    diesel fuel rate surcharge must be shown as a separate line item on the carrier's

3    invoice." In amendments effective May 1, 2007, SDDC made clear that no fuel

4    surcharges at all were permitted on rail transportation.

5         26.    The Carrier Defendants, contracting through freight forwarders

6    including but not limited to the Freight Forwarder Defendants, transport defense

7    personal property from Hawaii and Guam to the continental United States.

8    However, none of the Carrier Defendants has ships that travel to East or Gulf Coast

9    ports; their ships operate exclusively in the Pacific Ocean. This does not mean,

10   however, that the Carrier Defendants only provide ocean services for SDDC

11   shipments to Pacific ports. To the contrary, the Carrier Defendants also provide

12   overland shipping. In the hypothetical move from Schofield Barracks in Hawaii to

13   Fort Benning in Georgia, for example, the Carrier Defendants would take

14   possession of the personal property at the port in Honolulu, ship it by ocean to a

15   west coast port such as Long Beach, and, from there, contract with a third party rail

16   or trucking company and transport it by train or truck to the east coast. Despite the

17   fact that the shipment in question has moved over land by rail or truck as much or

18   more than it has moved by ship, and despite the fact that fuel surcharges are

19   prohibited or limited for such overland shipments, the Carrier Defendants impose

20   their ocean fuel surcharge on the entire journey.

21        27.    The Carrier Defendants submitted claims for their unlawful fuel

22   surcharges in the forms of bills of lading or freight bills to the applicable freight

23   forwarder handling the entire shipment, including but not limited to the Freight

24   Forwarder Defendants. The bills created by the Carrier Defendants incorporating

25   the disallowed fuel surcharge were materially false. They falsely labeled the fuel

26   surcharge such that the SDDC would erroneously believe that the fuel surcharges

27   were allowed bunker or ocean fuel surcharges. The Carrier Defendants, for

28   example, despite knowing that the "actual amount" of the allowed bunker fuel

**FIRST AMENDED COMPLAINT**

CV 10-7409 PA (AJWx)

surcharge had to be "separately stated," included a single fuel surcharge that incorporated both an allowable component and a disallowed component, did not separately state the ocean portion or the overland portion, labeled the consolidated fuel surcharge as "BS" or "fuel surcharge," and described the bill as one for "ocean" freight.  The freight forwarders, including the Freight Forwarder Defendants, paid the Carrier Defendants the full amount of the fuel surcharges, including the portion not allowed by the SDDC.

28.     The freight forwarders, including the Freight Forwarder Defendants submitted the bills of lading to the SDDC for payment, incorporating the false and inflated fuel surcharges imposed by the Carrier Defendants and supported by the false and fraudulent bills of lading from the Carrier Defendants.  Based on the information set forth on those bills of lading, the SDDC would pay the freight forwarders.

29.     The Carrier Defendants knew that the freight forwarders, including the Freight Forwarder Defendants, would submit their ocean bills of lading to the SDDC and claim payment for the entire fuel surcharge reflected thereon, including the portion the SDDC did not allow.  The applicable SDDC rate solicitations required the freight forwarders' claims for fuel surcharges to be supported by ocean carrier bills of lading reflecting the surcharges, and the Carrier Defendants had knowledge of these regulations.  Indeed, the Carrier Defendants and Freight Forwarder Defendants communicated, through electronic messages and website postings, about what form of billing the Freight Forwarder Defendants needed in order to pass through the surcharges to the government and to "ensure" that the SDDC would be deceived and pay the disallowed portion of the fuel surcharge.

30.     The Carrier Defendants knew that the freight forwarders would seek payment from the government for the entire amount of their fuel surcharge as a bunker fuel surcharge.  Indeed, the ocean bills of lading provided no information from which the portion of the fuel surcharge imposed by the Carrier Defendants on

**FIRST AMENDED COMPLAINT**

-12-

CV 10-7409 PA (AJWx)

the overland transportation could be calculated such that if a freight forwarder wanted or sought to bill the SDDC only that portion of the fuel surcharge imposed by the Carrier Defendants that was allowed the freight forwarder would be unable to do so. The Carrier Defendants understood this. The Carrier Defendants further knew that the United States would pay for the entire fuel surcharge reflected on the ocean bill of lading, including the prohibited portion.

31.    The Freight Forwarder Defendants also knew that the Carrier Defendants' ocean bills of lading included charges for overland shipping, and unlawful fuel surcharges on that overland shipping, but claimed payment for the entire fuel surcharge reflected thereon. The Freight Forwarder Defendants were, after all, required to pay the entire ocean bill of lading amount to the Carrier Defendants, and, given the size of the fuel surcharges, the Freight Forwarder Defendants would not have been able to absorb the marginal cost of the unlawful overland fuel surcharges.

32.    The Carrier Defendants and the Freight Forwarder Defendants knew that applicable SDDC regulations barred fuel surcharges on overland shipments unless those surcharges complied with TR-12. The Carrier Defendants and Freight Forwarder Defendants regularly corresponded about applicable regulations, including specifically when the amendments to TR-12 were under consideration in 2006, and as they became effective in 2007.

33.    In addition, the Carrier Defendants and Freight Forwarder Defendants were members of and/or participants in the trade association then known as the Household Goods Forwarders Association of America (the "Association"). The Association had a specific Carrier Relations Committee that included representatives from the Carrier Defendants and other ocean carriers. Through the Association, freight forwarders and the Carrier Defendants communicated regarding implementation of the TR-12 rules, and the Carrier Defendants stated their intent to continue to charge "bunker fuel surcharge" rates on bills of lading

**FIRST AMENDED COMPLAINT**

CV 10-7409 PA (AJWx)

1   that included overland transportation, in a manner that would permit the Freight

2   Forwarder defendants to "pass through" the entire fuel surcharge to the

3   government.

4       34.    The Carrier Defendants knew their freight bills were false. They

5   employed full time staff specifically to serve the military and government shipping

6   market, whose job responsibilities required knowing the rules and regulations

7   concerning the shipment of military household goods. These individuals also

8   participated in industry organizations with the Freight Forwarder Defendants, such

9   as the Association. The Carrier Defendants' knowledge of SDDC regulations is

10  reflected in, for example, their use of rates specifically for the military household

11  goods market, with shipping rates that matched the SDDC rate cycle calendar.

12      35.    The Carrier Defendants and the Freight Forwarder Defendants knew

13  that the ocean bills of lading did not truthfully reflect the services provided by the

14  Carrier Defendants. All defendants knew that SDDC regulations barred any fuel

15  surcharge on rail transport, and limited fuel surcharges on truck transport (and, even

16  before the bar on rail fuel surcharges was made explicit, they too were limited by

17  TR-12). Despite this, the Carrier Defendants' freight bills, submitted to the SDDC

18  by the Freight Forwarder Defendants, impose a fuel surcharge on exactly such

19  transportation.

20      36.    Attached as Exhibit A hereto is a true and correct copy of a freight bill

21  from Carrier Defendant Horizon Lines, Inc. The document clearly states that it is

22  for a "DOD-Sponsored Household Goods" shipment. While the shipment traveled

23  by ship from Honolulu to Tacoma, its ultimate destination was Baltimore. Despite

24  this, the invoice bills simply for "ocean freight" and imposes a "BS Fuel surcharge"

25  of 33% on that entire "ocean freight" amount.

26      37.    Attached as Exhibit B hereto is a true and correct copy of a freight bill

27  from Carrier Defendant Matson Navigation Company, Inc. Also plainly labeled as

28  a "DOD Sponsored" shipment, this document reflects a shipment from Honolulu to

**FIRST AMENDED COMPLAINT**

-14-

CV 10-7409 PA (AJWx)

Charleston, with ocean shipping from Honolulu to Los Angeles only. The mode of overland transport is nowhere specified, but a "fuel surcharge" of 28% is charged on the entire freight charge.

38.     As can be seen from the freight bills and associated invoices, although the Carrier Defendants do not provide pure ocean transportation, they label their freight charges as "ocean freight," and impose a surcharge labeled either as a "bunker fuel surcharge," a "BS fuel surcharge," or a "fuel surcharge" on such "ocean freight," for the entire shipment, including overland transportation.

39.     The defendants' claims for a fuel surcharge that is applicable only to ocean transportation for transportation that the defendants actually provided or arranged over land are plainly false and fraudulent in that applicable regulations expressly prohibit surcharges in the amounts claimed by defendants for land transportation. Defendants claimed fuel surcharge amounts to which they are not entitled.

40.     The Carrier Defendants created false and fraudulent freight bills for presentment to the United States by the Freight Forwarder Defendants to induce payment of unlawful and excessive fuel surcharge.   Nowhere on the Carrier Defendants' freight bills do the Carrier Defendants indicate that the freight moved over land. To the contrary, the only form of transportation actually identified on the freight bills is the ocean transportation, complete with vessel name and voyage number.

41.     The Freight Forwarder Defendants, who actually submitted the Carrier Defendants' ocean freight bills to the United States, knew that they included excessive and unlawful fuel surcharges.

42.     The United States and the DoD have been damaged as a result of Defendants' illegal conduct in that they have paid  higher  fuel surcharges than allowed and specifically fuel surcharges on overland transportation that would, had it been properly described, been subject to a much lower, or no, overland fuel

1  surcharge.

2      43.    Relator estimates that the damages to the government are well in

3  excess of $2 million per year.

4      44.    Further information and evidence concerning the Defendants'

5  fraudulent practices and violations of the Acts are within the Defendants' exclusive

6  control and unavailable to Relator.

7  ### CLAIMS FOR RELIEF

8  ### Count 1

9  Submitting False Claims in Violation of the False Claims Act,
   31 U.S.C. section 3729(a)(1)(A)

10

11     45.    The allegations contained in paragraphs 1 through 44 are incorporated

12  by reference as if fully set forth herein.

13     46.    Through the acts described above, the Carrier Defendants and Freight

14  Forwarder Defendants knowingly presented, or caused to be presented, to the

15  United States, false or fraudulent claims for payment or approval.

16     Wherefore, Relator prays for relief as set forth below.

17  ### Count 2

18  Making False Records to Material to a False or Fraudulent Claim in
   Violation of the False Claims Act,

19  31 U.S.C. section 3729(a)(1)(B)

20     47.    The allegations in paragraphs 1 through 46 are incorporated by

21  reference as if fully set forth herein.

22     48.    As set forth above, the Carrier Defendants and Freight Forwarder

23  Defendants knowingly made, used, or caused to be made or used, a false record or

24  statement material to a false or fraudulent claim to the United States.

25     Wherefore, Relator prays for relief as set forth below.

26  ///

27  ///

28

**FIRST AMENDED COMPLAINT**

-16-

CV 10-7409 PA (AJWx)

## Count 3

### Conspiring to Violate the False Claims Act,
31 U.S.C. section 3729(a)(1)(C)

49.    The allegations in paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

50.    The Carrier Defendants and Freight Forwarder Defendants conspired to defraud the United States by getting false and fraudulent claims allowed and paid.

Wherefore, Relator prays for relief as set forth below.

### RELIEF REQUESTED

51.    Relator prays for judgment against the defendants, and each of them, as follows:

    a.    For damages in an amount equal to three times the amount of the damages the United States has sustained as a result of the defendants' unlawful conduct;

    b.    For civil monetary penalties for each false and fraudulent claim submitted to the United States;

    c.    For a permanent injunction, enjoining the defendants from violating the federal False Claims Act;

    d.    For Relator's attorneys' fees and costs;

    e.    For an order awarding the Relator the maximum award allowed by the False Claims Act; and

    f.    For such further relief as the Court may deem proper and just.

Dated:  June 13, 2012

GOODIN, MACBRIDE, SQUERI,
DAY & LAMPREY, LLP


By _____
    Wayne T. Lamprey
Attorneys for Plaintiff-Relator Mario
Rizzo

## CLAIM OF RIGHT FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated:  June 13, 2012

GOODIN, MACBRIDE, SQUERI,
DAY & LAMPREY, LLP

By _____
        Wayne T. Lamprey
Attorneys for Plaintiff/Relator Mario
Rizzo

3405/001/X141547.v2

 **Horizon Lines, LLC**

**INVOICE SUMMARY**

SEP 0 2 2009

**Please include remittance copy with payment**

Pier 51-A Sand Island Access Rd.
Honolulu, HI 96819

Direct Inquires to :
Domestic Rate Audit
808-842-1515

**Bill To :**

BEKINS VAN LINES
PO BOX 109

La Grange, Illinois 60525
United States

Reference Number :

**Total Charges :**

$2,304.81      PREPAID

ETD: 8/25/09 ETA: 8/30/09 DOD-SPONSORED HOUSEHOLD GOODS AND PERSONAL EFFECTS

**Shipment Summary Information :**

| | Freight Bill | Container | Booking Number | Shipper Reference | Vessel Voyage | Sail Date | Due Date | Charges |
|---|---|---|---|---|---|---|---|---|
| 1. | 300431058 | HRZU432226 | WB2230169 | KQ143167 | EN275N | 08/24/09 | 09/23/09 | 2,304.81 |

Total Invoice Charges :                                     $2,304.81

1825373

**Remit To:**
Horizon Lines
P O BOX 730369
Dallas.TX 75373-0369

Shipments invoiced herein are subject to the terms and conditions of Horizon Lines tariffs as filed with the Surface Transportation Board.  Failure to pay charges herein on a timely basis may subject invoiced shipment(s) to penalty and may result in suspension of credit privileges.

HP

Exhibit A

 **Horizon Lines, LLC**



# FREIGHT BILL COPY

| INV. DATE | DUE DATE | FREIGHT BILL # |
|---|---|---|
| 08/24/2009 | 09/23/09 | 300431058 |

| VESSEL | VOYAGE | CONTAINER | TEMP | BOOKING N | MASTER FREIGHT BILL | INVOICE NO |
|---|---|---|---|---|---|---|
| HORIZON ENTERPRISE | EN275N | HRZU432226 40 HIGH CUBE | | WB2230169 | | 1825373 |

| SERVICE | SEAL | CONT RECD | SAIL DATE | ETA | CONTAINER REFERENCE | HAZ IND |
|---|---|---|---|---|---|---|
| Container Yard TO Rail Yard Delivery | 040947 | 08/21/2009 | 08/24/2009 | 09/09/2009 | | |

| Point of Origin | Port of Load | Port of Discharge | Point of Destination | Inbound Voyage |
|---|---|---|---|---|
| Honolulu | Honolulu | Tacoma | Baltimore | EN275N |

| Shipper Account # | Reference |
|---|---|
| 16825 BEKINS VAN LINES | KQ143167 330 SOUTH MANNHEIM ROAD  Hillside, Illinois 60162 |

| Forwarder Account # | Reference |
|---|---|
| 290074 ALOHA INTERNATIONAL MOVING | 91 291 KALAELOA BLVD, UNIT #D1 Kapolei, Hawaii 96707 |

| Consignee Account # | Reference |
|---|---|
| 858200 PASHA FREIGHT | 1601 SOUTH HIGHLAND AVENUE  Baltimore, Maryland 21224 |

| Bill-To Account # | Reference |
|---|---|
| 16825 BEKINS VAN LINES | PO BOX 109  La Grange, Illinois 60525 |

| Notify Account # | Reference |
|---|---|
| 2443314 MID ATLANTIC PORT SERVICE | 6600 CABOT DRIVE SUITE C  Baltimore, Maryland 21226 |

| Item | Item Description | Quantity | Per Code | Rate | Charge Type | Charge |
|---|---|---|---|---|---|---|
| | 4 PIECES OF 16 Household Goods/ ........., KAREN. CVO/USA. KQ 143167 | 5044.00 | LBS | | | |
| | | 629.00 | CFT | | | |
| | Total Weight | 5044.00 | | Total Cube | 629.00 | |

**REMIT TO:**
Horizon Lines
P O BOX 730369
Dallas, TX 75373-0369



**Horizon Lines, LLC**

*IS9991*

**FREIGHT BILL COPY**

| INV. DATE 08/24/2009 | DUE DATE 09/23/09 | FREIGHT BILL # 300431058 |
| --- | --- | --- |

| | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| 0998119600 | HOUSEHOLD GOODS OR PERSONAL EFFECTS. & USED FURNITURE | 0.33 | Container | 5,109.00 | Ocean Freight | 1,680.86  P |
| BS | Fuel Surcharge | 0.33 | Each | 1,430.52 | Assessorial | 470.64  P |
| DC | DOCUMENTATION CHARGE | 1.00 | Container | 25.00 | Assessorial | 25.00  P |
| TC | Terminal Charge | 0.33 | Each | 390.00 | Assessorial | 128.31  P |

| Total Rated Weight: | 0.00 |
| --- | --- |

Brokerage:  Base Amount          CD          Amount

| Total Prepaid Charges : | $2,304.81 |
| --- | --- |
| Total Collect Charges : | $0.00 |
| Grand Total          : | $2,304.81 |



*505004-482 $1834.17*
*609040-482 $ 470.64*

**ORIGINAL**

SEP 0 8 2009

☑ **APPROVED**

REMIT TO:
Horizon Lines
P O BOX 730369
Dallas,TX 75373-0369

HP



## REMITTANCE COPY (Include with Payment)

Remit To :
Horizon Lines
P O BOX 730369
Dallas,TX 75373-0369

| Total Charges Due | Payment Terms | Amount Enclosed | Sail Date |
|---|---|---|---|
| $2,304.81 | PREPAID | | 08/24/09 |

**Remittance Information :**

| | Freight Bill | Charges | Amount Paid* | Comments |
|---|---|---|---|---|
| 1 | 300431058 | 2,304.81 | | |

**Total Invoice Charges :**     $2,304.81

Please direct all inquires to :
Domestic Rate Audit  808-842-1515

* Enter amount paid only if different
  than amount changed.

Shipments invoiced herein are subject to the terms
and conditions of Horizon Lines tariffs as filed with
the Surface Transportation Board.  Failure to pay
charges herein on a timely basis may subject
invoiced shipment(s) to penalty and may result in
suspension of credit privileges.

# Matson.

JUL 27 2009

PBSI   R FP10 PMX        STRAIGHT—NON-NEGOTIABLE

## ORIGINAL FREIGHT BILL

PAGE 1 OF 1

Mail To:

BEKINS INTERNATIONAL GROUP
BEKINS INDEPENDENCE FORWARDERS
PO BOX 109
LA GRANGE, IL  60525

**ORIGINAL**

I 59912

AUG 0 4 2009

| BILL OF LADING DATE | VESSEL | VOY | SHIPMENT NUMBER |
|---|---|---|---|
| 07-20-2009 | MAUNAWILI | 072 | 54530501 |

| CONTAINER/SEAL NO. | RECEIVING PORT | DELIVERY PORT |
|---|---|---|
| MATU452398-3/251912 | LOS ANGELES | HONOLULU |

| LOAD/DISCHARGE SERVICE | BL ORIGIN/DESTINATION |
|---|---|
| INTERMOD  /  CY | CHARLESTON |

| SHIPPER'S REFERENCE | P.O. NUMBER |
|---|---|
|  |  |

SHPR: C T C TRANSPORTATION INC      2241 TECHNICAL PKWY      NORTH CHARLESTON, SC
CNEE: CROWN PACIFIC HAWAII          600 KAHELU AVENUE        MILILANI, HI
BILL: BEKINS INTERNATIONAL GROUP    BEKINS INDEPENDENCE FORWARDERS  LA GRANGE, IL

| No. Pkgs. | Kind of Pkgs. | Commodity Description | | Quantity | Rate | Charges |
|---|---|---|---|---|---|---|
| 2 | PCS | SHIPPER'S LOAD AND COUNT SAID TO CONTAIN HOUSEHOLD GOODS/PE, NOS , EDWARD KQ040750 KQ09205 1 2 OF 4 | EA | 1 | 7,067.00 | 270.32 |
| TOTAL CUBE  2,56 | | | | | | ☑ APPROVED |
| | | INVASIVE SPECIES FEE | EA | | 7.50 | .29 |
| | | TERMINAL HANDLING CHARGE | EA | 1 | 15.00 | 29.64 |
| | | CONSOLIDATION CHARGE | UNIT | 1 | 25.00 | 25.00 |
| | | FUEL RELATED SURCHARGE | PCT | 270 | 28.00 | 76.00 |
| CONTAINER SIZE D45H. | | | | | | |

505004 460 325.25

DOD SPONSORED 609040 -482 # 76.00

Dan Russo

| Total Pkgs. | Total Cube | Total Weight | *See Reverse for Unit of Affreightment Formula for Calculating Charges | Tariff | Item | Total Freight |
|---|---|---|---|---|---|---|
| 2 | 98 | 830 | | 7200D | 1055A | 401.25 |

*CREDIT VALIDATED*

PLEASE RETURN THIS PORTION WITH YOUR REMITTANCE

## PAYABLE UPON PRESENTATION

SHIPMENT: 54530501

PAYOR:   BEKINS INTERNATIONAL GROUP

REMIT TO: MATSON NAVIGATION COMPANY, INC.
          P. O. BOX 98481
          CHICAGO, IL  60693

| PLEASE PAY THIS AMOUNT | 401.25 |
|---|---|
| | PREPAID |

Questions concerning this shipment, please call your
Customer Service Representative at 1-800-4-MATSON. Free time
and charges for storage and equipment detention will be determined
in accordance with applicable Matson local terminal tariffs.

F-219 (10/0

Exhibit B

**Matson**

JUL 27 2009

BSI  R FP10 PHX   STRAIGHT-NON-NEGOTIABLE

**ORIGINAL FREIGHT BILL**   PAGE I OF I

**ORIGINAL**

Mail To:

BEKINS INTERNATIONAL GROUP
BEKINS INDEPENDENCE FORWARDERS
PO BOX 109
LA GRANGE, IL  60525

I59912

AUG 0 4 2009

| BILL OF LADING DATE | VESSEL | VOY | SHIPMENT NUMBER |
|---|---|---|---|
| 07-20-2009 | MAUNAWILI | 072 | 91934142 |

| CONTAINER/SEAL NO. | RECEIVING PORT | DELIVERY PORT |
|---|---|---|
| MATU250404-8/251919 | LOS ANGELES | HONOLULU |

| LOAD/DISCHARGE SERVICE | BL ORIGIN/DESTINATION |
|---|---|
| INTERMOD   /   CY | CHARLESTON |

| SHIPPER'S REFERENCE | P.O. NUMBER |
|---|---|
| | |

SHPR: C T C TRANSPORTATION INC      2241 TECHNICAL PKWY       NORTH CHARLESTON, SC
CNEE: COVAN WORLDWIDE MOVING INC    1043 OPULE STREET          KAPOLEI, HI
BILL: BEKINS INTERNATIONAL GROUP    BEKINS INDEPENDENCE FORWARDERS  LA GRANGE, IL

| No. Pkgs. | Kind of Pkgs. | Commodity Description | Quantity | Rate | Charges |
|---|---|---|---|---|---|
| 2 | PCS | SHIPPER'S LOAD AND COUNT SAID TO CONTAIN HOUSEHOLD GOODS/PE, NOS _____, EDWARD KQ092052 2 OF 4 | EA 1 | 6,535.00 | 1,010.63 |
| | | | | ☑ APPROVED | |
| TOTAL CUBE: 2,011 | | | | | |
| | | INVASIVE SPECIES FEE | EA 1 | 7.00 | 1.08 |
| | | TERMINAL HANDLING CHARGE | EA 1 | 775.00 | 119.85 |
| | | CONSOLIDATION CHARGE | UNIT 1 | 25.00 | 25.00 |
| | | FUEL RELATED SURCHARGE | PCT 1,011 | 28.00 | 283.00 |
| CONTAINER SIZE D40H. | | 505004-4827 1156.56 | | | |
| | | DOD SPONSORED  609040-4824  283.00 | | | |

| Total Pkgs | Total Cube | Total Weight | *See Reverse for Unit of Affreightment Formula for Calculating Charges | Tariff | Item | Total Freight |
|---|---|---|---|---|---|---|
| 2 | 311 | 1,800 | | 7200D | 1055A | 1,439.56 |

*CREDIT VALIDATED*

HIPMENT:  91934142

AYOR:  BEKINS INTERNATIONAL GROUP

EMIT TO: MATSON NAVIGATION COMPANY, INC.
P. O. BOX 98481
CHICAGO, IL  60693

PLEASE RETURN THIS PORTION WITH YOUR REMITTANCE

PAYABLE UPON PRESENTATION

| PLEASE PAY THIS AMOUNT | 1,439.56 |
|---|---|
| | PREPAID |

Questions concerning this shipment, please call your
Customer Service Representative at 1-800-4-MATSON.  Free time
and charges for storage and equipment detention will be determined
in accordance with applicable Matson local terminal tariffs.

F-219  (10/07)

# Matson.

FB81   R FP10 PHX      STRAIGHT-NON-NEGOTIABLE

## ORIGINAL FREIGHT BILL

PAGE 1 OF 1

| BILL OF LADING DATE | VESSEL | VOY | SHIPMENT NUMBER |
|---|---|---|---|
| 08-26-2009 | MAHIMAHI | 183 | 5953161 |
| CONTAINER/SEAL NO. | | RECEIVING PORT | DELIVERY PORT |
| MATU454927-3/690199 | | HONOLULU | OAKLAND |
| LOAD/DISCHARGE SERVICE | | BL ORIGIN/DESTINATION | |
| CY /INTERMOD | | CHARLESTON | |
| SHIPPER'S REFERENCE | | P.O. NUMBER | |

Mail To:     SEP 0 2 2009

BEKINS INTERNATIONAL GROUP
330 S MANNHEIM ROAD
HILLSIDE, IL   60162

SHPR: ALOHA INTERNATIONAL MOVING S  91-291 KALAELOA BLVD, STE D-1  KAPOLEI, HI
CNEE: C T C TRANSPORTATION INC      2241 TECHNICAL PKWY               NORTH CHARLESTON, SC
BILL: BEKINS INTERNATIONAL GROUP    330 S MANNHEIM ROAD              HILLSIDE, IL

| No. Pkgs | Kind of Pkgs. | Commodity Description | | Quantity | Rate | Charges |
|---|---|---|---|---|---|---|
| 4 | PCS | SHIPPER'S LOAD AND COUNT SAID TO CONTAIN HOUSEHOLD GOODS/PE, NOS E6/USN ~~~~, ALEX KO142637 4 OF 4 | EA | 1 | 5,527.00 | 2,017.34 |
| TOTAL CUBE | 2,137 | | EA UNIT PCT | 1 1 2,017 | 190.00 25.00 28.00 | 142.35 25.00 565.00 |
| | | TERMINAL HANDLING CHARGE CONSOLIDATION CHARGE FUEL RELATED SURCHARGE | | | | |
| CONTAINER SIZE D4SH. | | DOD SPONSORED | | | | APPROVED |

SEP 03 2009

ORIGINAL

IS59263

| Total Pkgs | Total Cube | Total Weight | * See Reverse for Unit of Affreightment Formula for Calculating Charges | Tariff | Item | Total Freight |
|---|---|---|---|---|---|---|
| 4 | 780 | 5,844 | | 7200D | 1100A | 2,749.69 |

*CREDIT VALIDATED*

505004-482$2184.69
009040-482$565.00

SHIPMENT:  5953161

PAYOR:   BEKINS INTERNATIONAL GROUP

REMIT TO: MATSON NAVIGATION COMPANY, INC.
          P. O. BOX 98481
          CHICAGO, IL  60693

PLEASE RETURN THIS PORTION WITH YOUR REMITTANCE

PAYABLE UPON PRESENTATION

| PLEASE PAY THIS AMOUNT | 2,749.69 |
|---|---|

PREPAID

Questions concerning this shipment, please call your Customer Service Representative at 1-800-4-MATSON.  Free time and charges for storage and equipment detention will be determined in accordance with applicable Matson local terminal tariffs.

F-219  (10/07)