1   the Rate Solicitation and TR-12 and knowingly made and submitted false and

2   fraudulent freight bills for shipments of HHG to and from Hawaii or Guam and

3   CONUS.  The fact the SDDC received freight bills from Horizon for intermodal

4   shipments of HHG to and from Puerto Rico that complied with SDDC rules and

5   separately set forth the two surcharges one of which was for overland transport,

6   made it appear that the single surcharge included in Horizon's freight bills for

7   transport of HHG in the Pacific was not inflated and did not include a surcharge on

8   overland transport.

9       76.    Horizon created and presented an extremely large number of freight

10   bills that were similar in all material respects to Exhibit E.  Based on data regarding

11   the total number of military HHG shipments between Hawaii, on the one hand, and

12   specific east coast and gulf coast ports/rail ramps (Baltimore, Charleston,

13   Jacksonville, and Houston), on the other hand, from 2005-2012, and taking account

14   of Horizon's market share in those channels, which upon information and belief is

15   approximately 40%, Horizon in those channels alone acted as the ocean carrier, and

16   submitted freight bills to freight forwarder TSPs on approximately 40,000

17   occasions.  Horizon made and presented similarly false and fraudulent freight bills

18   for shipments of military HHG for the SDDC totaling approximately the following

19   amounts in the following periods:

20   / / /

21

22

23

24

25

26

27

28

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| Horizon Shipments to/from BAL, CHS, JAX, and HOU and | | | | |
|---|---|---|---|---|
| | Hawaii | | Guam | |
| | Number of Horizon Shipments Made/Claims Submitted (Approx.) | Pounds of Military HHG Shipped by Horizon (Approx.) | Number of Horizon Shipments Made/Claims Submitted (Approx.) | Pounds of Military HHG Shipped by Horizon (Approx.) |
| 2005 | 5,100 | 26,200,000 | 600 | 2,700,000 |
| 2006 | 4,900 | 24,900,000 | 700 | 3,300,000 |
| 2007 | 5,000 | 25,400,000 | 600 | 3,200,000 |
| 2008 | 5,500 | 28,500,000 | 600 | 2,900,000 |
| 2009 | 4,300 | 19,500,000 | 400 | 2,100,000 |
| 2010 | 5,300 | 27,000,000 | 600 | 3,000,000 |
| 2011 | 6,100 | 30,900,000 | 600 | 2,900,000 |
| 2012 | 5,000 | 25,600,000 | 500 | 2,200,000 |
| Total | 41,200 | 207,900,000 | 4,600 | 22,200,000 |

**Matson's False and Fraudulent Claims and Freight Bills**

77.    Beginning on a precise date that is presently unknown, but at least as early as January 1, 2007 and continuing until approximately May, 2012, Matson created and submitted to freight forwarders false and fraudulent freight bills, caused freight forwarders to submit false and fraudulent claims to the SDDC, and created false writings to support such false claims.

78.    A representative bill of lading from Matson is attached as Exhibit F.  It concerns a shipment from Hawaii to Charleston, South Carolina made in July, 2009. It was an intermodal shipment, involving ocean transport by ship and overland transport by rail.  Matson's bill notes that the shipment is "DOD SPONSORED."

79.    Matson's bill includes a single consolidated "Fuel Related Surcharge."

80.   The amount of the Fuel Related Surcharge is false and fraudulent in that it is inflated, it includes a portion that is disallowed, and the entirety of the amount is not an allowed surcharge.  The amount stated is not the amount of the bunker only fuel surcharge; it is instead the amount of the bunker fuel surcharge plus a surcharge on the rail transport.

81.   The single, consolidated fuel surcharge is false and fraudulent because the true or actual bunker surcharge is not set forth and also is not separately stated. The Rate Solicitation required that the freight bills set forth the "actual amount" of the bunker fuel surcharge (not a bunker fuel surcharge plus a disallowed rail fuel surcharge) and that the bunker fuel surcharge be set forth "separately" (and not combined with another surcharge).

82.   The bill is false and fraudulent as it was made and forwarded to the freight forwarder as part of a scheme to defraud the SDDC.  As reflected on the first page of the bill, Matson knew that this shipment was "DOD SPONSORED," and that its bill would be interpreted and understood in light of the related rules and requirements.  Matson also knew and intended that freight forwarders would "pass through" the full false and inflated fuel surcharge, and use and rely upon Matson's bill in support of false and fraudulent claims to the SDDC.  The bill was designed and intended to deceive the SDDC and government personnel who might review it with these requirements in mind, and freight forwarders who were not aware the fuel surcharge was inflated and not reimbursable, and was false and fraudulent.

83.   The bill is false and fraudulent also in that the amount of the fuel surcharge attributable to the overland or line haul portion of the shipment is not set forth and cannot be determined from the bill.  The bill was not only designed to conceal the disallowed portion of the fuel surcharge from the SDDC; freight forwarders receiving and reviewing the bill also could not determine from it what portion of the surcharge was disallowed.  If a freight forwarder wanted to be sure to comply with the Rate Solicitation and TR-12, and to subtract any portion of the

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

surcharge that was prohibited, Matson prevented the freight forwarder from doing so and thereby caused the freight forwarder to submit a false and inflated bill to the SDDC. Matson caused even innocent freight forwarders to present false and fraudulent claims to the SDDC. Moreover, the absence of the data needed to determine what portion of the surcharge was on the line haul portion made the billing false and fraudulent because the absence of that data conveyed that that entire surcharge was a bunker fuel surcharge and was proper.

84.    In June, July and August 2010, Matson created and presented freight bills that separately stated the fuel surcharge for ocean transport and line haul or overland transport for freight forwarders who elected to utilize the "multi-factor" rate Matson offered. On the related freight bills, created and submitted by Matson during this period, Matson identified the disallowed fuel surcharge on the overland transport as a "bunker fuel surcharge." These freight bills were false and fraudulent because the surcharge on the line haul portion of the shipment was not a bunker fuel surcharge.

85.    Matson changed its billing practices in August 2010, but instead of correcting the labels on its freight bills to make them accurate and non-fraudulent, Matson again issued false and fraudulent freight bills that included a single fuel surcharge for both ocean or bunker fuel, and for line haul or rail fuel.

86.    Based on data regarding the total number of military HHG shipments between Hawaii or Guam, on the one hand, and specific east coast and gulf coast ports/rail ramps (Baltimore, Charleston, Jacksonville, and Houston), on the other hand, from 2005-2012, and taking account of Matson's market share in those channels (upon information and belief, approximately 55% in the Hawaii market and 60% in the Guam market), Matson in those channels alone acted as the ocean carrier, and submitted freight bills to freight forwarder TSPs on approximately 62,000 occasions. Matson made and presented false and fraudulent freight bills

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  similar to that in Exhibit F for shipments of military HHG for the SDDC totaling

2  approximately the following amounts in the following periods:

| Matson Shipments to/from BAL, CHS, JAX, and HOU and | | | | |
|---|---|---|---|---|
| | **Hawaii** | | **Guam** | |
| | Number of Matson Shipments Made/Claims Submitted (Approx.) | Pounds of Military HHG Shipped by Matson (Approx.) | Number of Matson Shipments Made/Claims Submitted (Approx.) | Pounds of Military HHG Shipped by Matson (Approx.) |
| **2005** | 6,900 | 35,100,000 | 900 | 4,000,000 |
| **2006** | 6,600 | 33,400,000 | 1,000 | 4,900,000 |
| **2007** | 6,700 | 34,100,000 | 1,000 | 4,800,000 |
| **2008** | 7,400 | 38,300,000 | 900 | 4,300,000 |
| **2009** | 5,700 | 26,200,000 | 700 | 3,100,000 |
| **2010** | 7,200 | 36,200,000 | 900 | 4,500,000 |
| **2011** | 8,200 | 41,400,000 | 900 | 4,400,000 |
| **2012** | 6,600 | 34,300,000 | 700 | 3,300,000 |
| **Total** | **55,200** | **278,900,000** | **7,000** | **33,300,000** |

**The Ocean Carrier Defendants' Recent Actions**

87.   The filing of the original Complaint in this action triggered an investigation by the United States into the practices of the Ocean Carrier Defendants with respect to their imposition of fuel surcharges on international intermodal military HHG shipments.  After the Ocean Carrier Defendants learned of this investigation, they changed their practices and rate structure.

88.   Matson published military HHG rates applicable to the Defense Personal Property Program IT-2012, covering June, 2012 to May, 2013, on or about June, 2012.  In a departure from their earlier rate guides, the IT-2012 rates included a "bunker adjustment factor" in a fixed dollar amount, that did not change, no matter whether the shipment was going to the west coast, gulf coast, or east coast.

1    The surcharge no longer increased if the shipment included overland transport by

2    rail.  Matson's military HHG rates for IT-2013 included separate columns breaking

3    out the ocean freight charge from the inland rate on intermodal shipments, and

4    stating that rates were "subject to a current Bunker Adjustment Factor of 43.5% on

5    the ocean component only."   Thus, in both the IT-2012 and IT-2013 rate guides,

6    Matson began to correctly apply its "BAF" to the ocean rates only, and set forth the

7    actual amount of the bunker surcharge.

8           89.     Horizon also dramatically changed its billing practices.  On or about

9    January 25, 2013, Horizon published a rate sheet for IT-2013, effective May, 2013,

10   which showed rates per channel and included separate columns for "ocean freight"

11   and rail transport.  The rates included an "Ocean FAF" which was applied to the

12   ocean freight component only; the rates specifically stated that inland transportation

13   to a rail ramp was "not subject to FAF."

**Cartwright Prepared and Presented False and Fraudulent Claims and
Submitted False Writings**

16          90.     Cartwright prepared and presented false and fraudulent claims and

17   made and presented supporting false writings.  Cartwright "passed through" the full

18   amount of the false and fraudulent fuel surcharges imposed by the Ocean Carrier

19   Defendants, and prepared and presented false and fraudulent claims to the SDDC.

20          91.     Cartwright submitted false and fraudulent bills of lading beginning on

21   a date that is presently unknown, but at least as early as January1, 2007 and

22   continuing until the Ocean Carrier Defendants changed their billing practices and

23   separately identified the fuel surcharges they imposed on ocean transport and

24   overland transport.

25          92.     Cartwright's bills to the SDDC incorporated the full amount of the fuel

26   surcharges imposed by the Ocean Carrier Defendants, including the prohibited

27   surcharge for the rail or line haul transport.  Cartwright's bills and claims were false

28   and fraudulent in the same manner as the freight bills prepared and presented by the

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Ocean Carriers.  Cartwright presented claims to the SDDC for payment of fuel
2    surcharges that were inflated and unauthorized by the Rate Solicitation and TR-12.
3    Cartwright made and submitted bills of lading to the SDDC that included a
4    purported bunker fuel surcharge that included a surcharge on fuel used for line haul
5    transport, including transport by rail.  The amount of the surcharge was false and
6    fraudulent; the bill of lading did not separately state the bunker fuel surcharge
7    separate and apart from the fuel surcharge on the line haul transport; and the
8    amount of the fuel surcharge was not the "actual amount" of the bunker fuel
9    surcharge.

10        93.    Cartwright also used the false freight bills presented by the Ocean
11   Carriers to the SDDC as support for Cartwright's false and fraudulent claims.
12   When DoD relied on paper invoices, Cartwright included the false and fraudulent
13   bills from the Ocean Carrier Defendants with its bills to the SDDC.  After the
14   SDDC computerized the billing system for the type of shipments at issue, in or
15   around 2010, Cartwright incorporated the false and fraudulent fuel surcharges
16   imposed by the Ocean Carrier Defendants in its bills to the SDDC, and maintained
17   copies of the Ocean Carriers' freight bills to be available for review by the SDDC.
18   In both time periods, Cartwright relied upon the false and fraudulent billings to
19   support its claims to the SDDC and the Ocean Carrier Defendants made and
20   presented them to Cartwright and other freight forwarders in order to cause the
21   freight forwarders to submit false and fraudulent claims and to provide false writing
22   sin support of those claims.

23        94.    Relator lacks specific information concerning the shipments for which
24   Cartwright was the freight forwarder.  Cartwright touts itself as one of the "top"
25   transportation service providers for military HHG.  Cartwright made and presented
26   false and fraudulent bills of lading for each and all of the shipments made by the
27   Ocean Carrier Defendants for which Cartwright was the transportation service
28

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  provider, until the Ocean Carrier Defendants stopped their illegal billings in

2  approximately 2012.

### The False and Fraudulent Claims and Supporting False Writings Were Materially False and the United States Has Suffered Damages

5   95.   The freight bills prepared and presented by the Ocean Carrier

6  Defendants, and the billings submitted to the government by Cartwright and other

7  freight forwarders based upon the freight bills from the Ocean Carrier Defendants,

8  were materially false and fraudulent.  The government would not have paid the fuel

9  surcharges included on the GBLs submitted to the government, or accepted the

10  freight bills from the Ocean Carriers as sufficient support for the surcharges set

11  forth on the GBLs, had the government known the true facts.

12   96.   The United States and the DoD, including the United States Navy, Air

13  Force, Army Marine Corp., and Coast Guard,  have been damaged as a result of

14  Defendants' illegal conduct; the government has paid higher fuel surcharges than

15  allowed on overland transportation.  The evidence necessary to determine the exact

16  amount of damage is within the exclusive control of Defendants and unavailable to

17  Relator.

### CLAIMS FOR RELIEF

### Count 1

Submitting False Claims in Violation of the False Claims Act,
31 U.S.C. section 3729(a)(1)(A)

22   97.   The allegations contained in paragraphs 1 through 96 are incorporated

23  by reference as if fully set forth herein.

24   98.   Through the acts described above, the Ocean Carrier Defendants, and

25  each of them, and Cartwright, presented, or caused to be presented, false or

26  fraudulent claims for payment or approval.  Cartwright presented, or caused to be

27  presented, false and fraudulent claims to an officer, employee and agent of the

28  United States.  The Ocean Carrier Defendants, and each of them, presented false

1  and fraudulent claims for payment to contractors, such as Cartwright, where the
2  money was to be spent and used on the Government's behalf and the Government
3  was to provide or had provided a portion of the money demanded.  The Ocean
4  Carrier Defendants, and each of them, also caused to be presented false and
5  fraudulent claims for payment to the United States.  The Defendants and each of
6  them acted "knowingly" as defined in the False Claims Act; acted in deliberate
7  ignorance of the truth or falsity of information as alleged above; and acted in
8  reckless disregard of the truth or falsity of information as alleged above.
9      Wherefore, Relator prays for relief as set forth below.

## Count 2

Making False Records Material to a False or Fraudulent Claim in Violation of the
False Claims Act, 31 U.S.C. section 3729(a)(1)(B)

13  99.  The allegations in paragraphs 1 through 98 are incorporated by
14  reference as if fully set forth herein.

15  100.  As set forth above, the Ocean Carrier Defendants and Cartwright
16  knowingly made, used, or caused to be made or used, a false record or statement
17  material to a false or fraudulent claim to the United States.  The Defendants and
18  each of them acted "knowingly" as defined in the False Claims Act; acted in
19  deliberate ignorance of the truth or falsity of information as alleged above; and
20  acted in reckless disregard of the truth or falsity of information as alleged above.
21      Wherefore, Relator prays for relief as set forth below.

## Count 3

Conspiring to Violate the False Claims Act,
31 U.S.C. section 3729(a)(1)(C)

25  101.  The allegations in paragraphs 1 through 100 are incorporated by
26  reference as if fully set forth herein.

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    102.   Defendants Cartwright and Matson, and others presently unknown,

2    conspired to defraud the United States, to get false and fraudulent claims allowed

3    and paid, and to violate 31 U.S.C. Section 3729(a)(1)(A) and (B).

4          Wherefore, Relator prays for relief as set forth below.

5                              **RELIEF REQUESTED**

6          103.   Relator prays for judgment against the Defendants, and each of them,

7    as follows:

8          (a)   For damages in an amount equal to three times the amount of the

9                damages the United States has sustained as a result of each

10               defendant's unlawful conduct;

11         (b)   For civil monetary penalties for each false and fraudulent claim

12               submitted to the United States;

13         (c)   For a permanent injunction, enjoining the Defendants from violating

14               the False Claims Act;

15         (d)   For Relator's attorneys' fees and costs;

16         (e)   For an order awarding the Relator the maximum award allowed by the

17               False Claims Act; and

18         (f)   For such further relief as the Court may deem proper and just.

19   Dated:      August 23, 2013          GOODIN, MACBRIDE, SQUERI,
                                          DAY & LAMPREY, LLP
20

21                                        By:  /s/ Wayne T. Lamprey
                                             Wayne T. Lamprey
22                                           Attorneys for Plaintiff-Relator
                                             Mario Rizzo
23

24

25

26

27

28

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**CLAIM OF RIGHT FOR TRIAL BY JURY**

2      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby

3  demands a trial by jury.

4  Dated:          August 23, 2013              GOODIN, MACBRIDE, SQUERI,
                                                DAY & LAMPREY, LLP
5

6                                              By:  /s/ Wayne T. Lamprey
7                                                 Wayne T. Lamprey
                                                  Attorneys for Plaintiff-Relator
8                                                 Mario Rizzo

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**EXHIBITS**

A    SDDC International Personal Property Rate Solicitation I-25, issued May 10, 2010

B    SDDC Transportation and Travel Policy No. TR-12

C    Household Goods Rate Guides issued by Horizon Lines

D    Household Goods Rate Guides issued by Matson

E    Invoice and Freight Bill issued by Horizon Lines

F    Freight Bills issued by Matson

3405/001/X154858.v1

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO