ROBERT L. CORBIN (State Bar No. 75445)
NICHOLAS B. MELZER (State Bar No. 246356)
CORBIN, ATHEY & MARTINEZ LLP
601 West Fifth Street, Suite 1150
Los Angeles, California 90071
Tel: (213) 612-0001
Fax: (213) 612-0061
rcorbin@corbinathey.com
nmelzer@corbinathey.com

JAMES L. EISENBRANDT (Admitted *pro hac vice*)
CHRISTINA M. DIGIROLAMO (Admitted *pro hac vice*)
TIMOTHY R. WEST (Admitted *pro hac vice*)
BERKOWITZ OLIVER WILLIAMS
SHAW & EISENBRANDT LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Tel: (816) 561-7007
Fax: (816) 561-1888
jeisenbrandt@berkowitzoliver.com
cdigirolamo@berkowitzoliver.com

*Attorneys for Defendant*
*Cartwright International Van Lines, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Mario RIZZO,<br><br>    Plaintiff,<br><br>    v.<br><br>HORIZON LINES, LLC; MATSON NAVIGATION COMPANY, INC.; and CARTWRIGHT INTERNATIONAL VAN LINES, INC.,<br><br>    Defendants. | Case No. 10-CV-7409 PA (AJWx)<br><br>**DEFENDANT CARTWRIGHT INTERNATIONAL VAN LINES' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[F.R.C.P. 8, 9, and 12]**<br><br>The Honorable Percy Anderson<br><br>Date:   October 21, 2013<br>Time:  1:30 p.m.<br>Place:  Courtroom 15 |

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 21, 2013, at 1:30 p.m., or as soon thereafter as counsel may be heard in the above-entitled Court, Defendant Cartwright International Van Lines, Inc. ("Cartwright") moves to dismiss the Second Amended Complaint ("SAC") filed by Plaintiff, United States of America *ex rel*. Mario Rizzo ("Plaintiff").

Cartwright's Motion to Dismiss is based on this Notice of Motion; the Memorandum of Points and Authorities attached hereto; any additional briefing regarding this Motion to Dismiss that the Court may request or the parties may submit; and the evidence and arguments that will be presented to the Court at the hearing on this matter.

In accordance with Local Rule 7-3, this Motion is made following a conference with counsel for Plaintiff, held telephonically, on September 6, 2013, concerning Cartwright's Motion to Dismiss the Second Amended Complaint.

Respectfully submitted,

DATED:      September 16, 2013        CORBIN, ATHEY & MARTINEZ LLP

By: _____/s/_____
      Robert L. Corbin
      Nicholas B. Melzer

BERKOWITZ OLIVER WILLIAMS
SHAW & EISENBRANDT LLP

      James L. Eisenbrandt
      Christina M. DiGirolamo
      Timothy R. West

*Attorneys for Defendant*
*Cartwright International Van Lines, Inc.*

i

# **TABLE OF CONTENTS**

Page No.

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

I.    INTRODUCTION ................................................................................................2

    A.    Procedural Background........................................................................2

    B.    Factual Background .............................................................................3

II.   ARGUMENT ......................................................................................................5

    A.    The Second Amended Complaint Fails to Plead a Plausible
          Cause of Action against Cartwright and Should Be Dismissed
          Pursuant to Rule 8(a).........................................................................6

    B.    The Second Amended Complaint Fails to Plead Claims Under §§
          3729(a)(1)(A) or 3729(a)(1)(B) with the Requisite Particularity
          and Should Be Dismissed Under Rule 9(b)..........................................9

        1.    Rule 9(b)'s Heightened Pleading Requirement Applies to
             FCA Allegations ...........................................................................9

        2.    Plaintiff Must Plead "Who, What, When, Where, How,
             and Why" to Satisfy Rule 9(b) ..................................................10

        3.    A Case from the Central District of California Provides a
             Concrete Example of the Pleading Necessary to Satisfy
             9(b)..............................................................................................11

        4.    The SAC Does Not Satisfy the 9(b) Pleading
             Requirements ..............................................................................13

            a.    Plaintiff Is Unable to Identify the Invoices at Issue
                 in this Case – the "What" ..................................................14

             b.    Plaintiff Is Unable to Identify "What" Statements
                 Are False and "Why" Those Statements Are False .........15

             c.    Plaintiff Does Not State "When" Cartwright
                 Allegedly Made or Submitted – or Caused to be
                 Made or Used – False or Fraudulent Statements .............16

    C.    The Second Amended Complaint Fails to Plead a Conspiracy
          Claim, 31 U.S.C. § 3729(a)(1)(C), against Cartwright and Should
          Be Dismissed Pursuant to Rule 8(a) and 9(b).......................................17

    D.    In the Event the Second Amended Complaint is Not Dismissed
          Entirely, It Should Be Limited to Post June 13, 2006 Allegations.......19

III.  CONCLUSION ................................................................................22

ii

# TABLE OF AUTHORITIES

Page No.

Cases

*Abels v. Farmers Commodities Corp.*, 259 F.3d 910 (8th Cir. 2001) .................11, 16

*Aflatooni  v. Kitsap Physicians Servs.*, 314 F.3d 995 (9th Cir. 2002).................11, 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) ........................6, 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)) ................................6

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ...........................10

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047 (9th Cir. 2011)...................................................................................passim

*Ebeid, ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) ...........................10, 15

*Gilbrook v. City of Westminister*, 177 F.3d 838 (9th Cir. 1999) ...............................18

*Gonzalez v. Planned Parenthood of Los Angeles*, 2011 WL 1481398 (C.D. Cal. Apr. 19, 2011)..............................................................................7, 11, 17

*Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465 (9th Cir. 1996) ...................11

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007)................................13, 16, 17

*Schreiber Distrub. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986)..12

*U.S. ex rel. Casady v. American Intern. Group, Inc.*, 2013 WL 1702777 (S.D. Cal. Apr. 19, 2013)..............................................................................11, 16

*U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996)............................8, 11, 17

*U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211  (9th Cir. 1996) ........................21

*U.S. ex rel. Lee v. Corinthian Coll.*, 655 F.3d 984 (9th Cir. 2011) ........................8, 12

*U.S. ex rel. Serrano v. Oaks Diagnostics, Inc.*, 568 F.Supp.2d 1136 (C.D. Cal. 2008) ...........................................................................................passim

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008)....11

*U.S. ex rel. Woodruff v. Hawaii Pacific Health*, 560 F.Supp.2d 988 (D. Haw. 2008); ...........................................................................................18

*U.S. ex. rel. Frazier v. IASIS Healthcare Corp.*, 812 F.Supp.2d 1008 (D. Ariz. 2011) ...........................................................................................21

*U.S. v. Rivera*, 55 F.3d 703 (1st Cir. 1995) .............................................................14

*U.S. v. Sequel Contractors, Inc.*, 402 F.Supp.2d 1142 (C.D. Cal. 2005) ............ 11, 12

*U.S. v. St. Luke's Subacute Hosp. & Nursing Centre, Inc.*, 2004 WL 2905237 (N.D. Cal. Dec. 16, 2004) ........................................................................................... 18

*Vieux v. E. Bay Reg'l. Park Dist.*, 906 F.2d 1330 (9ᵗʰ Cir. 1990) ............................ 18

Statutes

31 U.S.C. § 3729 ........................................................................................................... 5

31 U.S.C. § 3729(a)(1) .................................................................................................. 5

31 U.S.C. § 3729(a)(1)(A) ................................................................................... passim

31 U.S.C. § 3729(a)(1)(B) ................................................................................... passim

31 U.S.C. § 3729(a)(1)(C) ...................................................................................... 5, 18

31 U.S.C. § 3729(b)(1)(A) ............................................................................................ 7

31 U.S.C. § 3731 ......................................................................................................... 20

31 U.S.C. § 3731(b)(1) ..................................................................................... 5, 20, 21

31 U.S.C. § 3731(b)(2) ................................................................................................ 20

Other Authorities

5C Wright and Miller, Federal Practice and Procedure § 1363 (3d ed. 2010) ............ 7

Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 5, 20

Federal Rule of Civil Procedure 9(b) ................................................................... passim

Federal Rule of Civil Procedure Rule 8(a) ...................................................... 1, 5, 6, 22

iv

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Cartwright moves this Court for dismissal of Plaintiff's Second Amended Complaint in that it fails to comply with the general pleading requirements of Federal Rule of Civil Procedure Rule 8(a) and the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  More specifically, Plaintiff's Second Amended Complaint fails for three independent and equally sufficient reasons:

*First*, the False Claims Act ("FCA") requires that a defendant "knowingly" submit false claims to the government for payment.  And here, the only explicit allegations Cartwright knew Matson's and Horizon's billings were (allegedly) false are nothing more than variations on the word "knowingly."  Exactly the type of "formulaic recitations" that are insufficient to satisfy the general standard of Rule 8(a).

*Second*, the Ninth Circuit explicitly requires that an FCA plaintiff attempting to satisfy Rule 9(b) must plead "the who, what, when, where and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  Here, Plaintiff has not even identified what Cartwright bills were false, let alone pleaded with particularity why they were false.  Rule 9(b) requires more.

*Third*, Plaintiff's allegations of a conspiracy between Matson and Cartwright are not plausible on their face.  Plaintiff fails to allege any details of the alleged conspiracy with particularity because there are none.  The only evidence Plaintiff points to in support of his allegations of a conspiracy is an email between Matson and Cartwright that is better evidence of good faith than bad.  Plaintiff's conclusory and implausible allegations of conspiracy are not sufficient to state a claim for

1  conspiracy under the FCA and do not cure the SAC's failure to otherwise plead

2  knowledge on Cartwright's part.

3      For these reasons, and those stated below, Plaintiff's SAC should be

4  dismissed with prejudice as to Cartwright.  To the extent Plaintiff's claims against

5  Cartwright are not dismissed in their entirety, claims of alleged violations occurring

6  before June 13, 2006 should be dismissed pursuant to the False Claim Act's six-year

7  statute of limitations.

8  **I.    INTRODUCTION**

9      **A.    Procedural Background**

10      On October 4, 2010, Plaintiff filed a *qui tam* action against three ocean carrier

11  defendants, Horizon Lines, LLC, Matson Navigation Company, Inc. and Pasha

12  Hawaii Transport Lines, LLC ("ocean carriers").  (Docket No. 1).  The Complaint

13  was filed under seal.  (Docket No. 4).  On June 13, 2012, Plaintiff filed a First

14  Amended Complaint against the ocean carriers.  Plaintiff also sought to assert new

15  claims against twenty-one new defendants (the "freight forwarders"), including

16  Cartwright.  (Docket No. 16).  Plaintiff subsequently dismissed all of the freight

17  forwarder defendants except for Cartwright.  (Docket No. 33).  On May 9, 2013, the

18  government declined to intervene in this action (Docket No. 26) and the First

19  Amended Complaint was unsealed on May 15, 2013.  (Docket No. 27).

20      After conferring with counsel for Defendants pursuant to Local Rule 7-3 as to

21  plaintiff's First Amended Complaint, Plaintiff proposed to file a Second Amended

22  Complaint ("SAC") to address Defendants' contentions.  Pursuant to the August 5,

23  2013 Stipulation for Filing of Second Amended Complaint (Docket No. 65), the

24  parties stipulated that Plaintiff may amend and file a SAC (*Id*.), which was filed on

25  August 23, 2013.

26

27

28

### B.     Factual Background

Cartwright is a Transportation Service Provider ("TSP") known as a freight forwarder.  *Id*., at ¶ 23.  Freight forwarders contract with the Surface Deployment and Distribution Command ("SDDC") to manage the move of military household goods ("HHG") from door to door.  *Id*., at ¶ 19.  Freight forwarders, including Cartwright, arrange for the door to door move and contract with others, such as ocean carriers (including Matson and Horizon), as needed.  *Id*.  Because Matson and Horizon's "ships call only on west coast ports, for intermodal shipments where the CONUS point of origination or destination is not in the western United States," Horizon and Matson contract with railroads and/or trucking companies for overland transportation.  *Id*., at ¶21.  Matson and Horizon "receive and pay bills from the railroads or trucking companies for this overland transportation."  *Id*.  **Matson and Horizon "do not set forth a separate charge for the rail or line haul transport, and do not forward the billings from the railroads or trucking companies to the freight forwarders," including Cartwright**.  *Id*., at ¶ 22 (emphasis added).

As Plaintiff's allegations now stand, Plaintiff claims that two ocean carriers (Matson and Horizon) and one freight forwarder (Cartwright) have violated the FCA by making or submitting improper billings to the United States.  More specifically, Plaintiff claims that Cartwright "passed through" invoices from Matson and Horizon to the SDDC of the Department of Defense ("DoD") in connection with the shipment of household goods for military personnel in the Army, Navy, Air Force, Marines and Coast Guard ("military HHG" or "HHG")."  SAC, ¶ 2.  According to Plaintiff, these shipments were between Hawaii or Guam to the continental United States ("CONUS"), and included a movement from "ports on the west coast of the United States, and to or from there by rail (or infrequently by truck) to other locations in CONUS."  *Id*.  These shipments are referred to as "intermodal"

3

shipments, and include two modes of transport: "ocean transport by ship and inland or 'line haul' transport by truck." *Id.*

According to Plaintiff, "the SDDC rate solicitations for these types of shipments provide that the SDDC will, subject to certain conditions, pay carriers a so-called 'bunker surcharge' to account for changes in the cost of a type of fuel used only by ships – bunker fuel." *Id.*, ¶ 3. According to Plaintiff, "[t]he SDDC, however, expressly prohibits all fuel surcharges for 'any type of rail shipment,'" and "limits fuel surcharges on truck transportation. . . ." *Id.* Plaintiff contends that "[d]espite this clear prohibition, the defendants . . . routinely included in their freight bills for intermodal shipments fuel surcharges on the rail or line haul portion of the shipments." *Id.*, ¶ 4. According to Plaintiff, the "prohibited fuel surcharges, however, were concealed and falsely labeled." *Id.* "The defendant's bills included a single purported bunker fuel surcharge which had been inflated to encompass the rail or line haul portion of the transport." *Id.* And "[n]ot withstanding SDDC rules that so required, the purported bunker fuel surcharges were not separately or accurately set forth, and the defendants' billings were both false and fraudulent claims and false writings." *Id.*

A surcharge is defined as:

An extra fee, levied to a shipment, paid by the transportation service provider and sometimes reimbursed by the U.S. Government. Except for those five surcharges identified below (including Bunker Surcharge), surcharge reimbursement is considered on a case-by-case basis with reimbursement decision resting at the sole discretion of the Surface Deployment and Distribution Command.

SAC, Ex. A, Item 252, Bates 23; SAC, ¶ 29. Bunker surcharge is defined as:

Bunker Surcharge (BSC) – An extra charge, also known as Bunker Adjustment Factor (BAF) or Fuel Adjustment Factor (FAF), sometimes

4

1  added to ocean TSP rates.  This surcharge is justified by higher fuel

2  costs.  This surcharge is applicable to codes of service 1,2,3,4 and 7.

3  SAC, Ex. A, Item 252, Bates 23; SAC, ¶ 30.

4  As Plaintiff alleges, surcharges are permissible under Item 432 of the Rate

5  Solicitation when actually billed by an ocean carrier, such as Matson or Horizon, to

6  a freight forwarder, such as Cartwright.  SAC, ¶ 32; SAC, Ex. A, Item 432, Bates

7  71.  The SDDC will only pay a bunker fuel surcharge if the ocean carrier, such as

8  Matson or Horizon, provides the freight forwarder, such as Cartwright, an invoice

9  stating the actual amount of the bunker fuel surcharge, and the freight forwarder has

10  the invoice from the ocean carrier to support the invoice submitted to the SDDC.

11  Thus, as Plaintiff alleges, Cartwright is just "passing through" the charges submitted

12  to it by the ocean carriers.  SAC, ¶ 90.

13  **II.  ARGUMENT**

14  Plaintiff alleges that Cartwright has violated three sections of the FCA, 31

15  U.S.C. § 3729, False Claims: §§ 3729(a)(1)(A), 3729(a)(1)(B), and 3729(a)(1)(C).

16  31 U.S.C. § 3729(a)(1) provides:

17  any person who --

18  (A) knowingly presents, or causes to be presented, a false or fraudulent

19  claim for payment or approval;

20  (B) knowingly makes, uses, or causes to be made or used, a false record

21  or statement material to a false or fraudulent claim;

22  (C) conspires to commit a violation of subparagraph (A), (B),

23  is liable to the United States government for a civil penalty….

24  Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6).  He has

25  failed to satisfy the plausibility requirement found in Rule 8(a) and failed to plead

26  the allegations in the SAC with requisite particularity under Rule 9(b).  For these

27  reasons, the SAC should be dismissed.  If the SAC is not dismissed in its entirety,

28

5

any claims for violations prior to June 13, 2006 should be dismissed under the FCA's six-year statute of limitations, 31 U.S.C. § 3731(b)(1).  Pursuant to Local Rule 7-3, counsel again conferred in regard to the SAC, and this time Plaintiff's counsel said he would not seek amendment in light of the expressed concerns.

### A. The Second Amended Complaint Fails to Plead a Plausible Cause of Action against Cartwright and Should Be Dismissed Pursuant to Rule 8(a)

Plaintiff's allegations that Cartwright knowingly presented false claims or made or used a false record in violation of 31 U.S.C. §§ 3729(a)(1)(A) & (B) fails to satisfy the requirements of Rule 8(a).  In addition to meeting the heightened pleading requirements of Rule 9(b) as described below, a plaintiff bringing a claim for violations of the FCA also must satisfy Rule 8(a)'s pleading requirements.  *See Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  Rule 8(a) mandates that the "complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief."  *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Additionally, "[t]he district court will not accept as true pleading allegations that are contradicted by facts that can be

6

1  judicially noticed or by other allegations or exhibits attached to or incorporated in

2  the pleading." *Gonzalez v. Planned Parenthood of Los Angeles*, 2011 WL 1481398,

3  *2 (C.D. Cal. Apr. 19, 2011). (quoting 5C Wright and Miller, Federal Practice and

4  Procedure § 1363 (3d ed. 2010)).  Thus, in determining whether the SAC has

5  alleged a plausible claim against Cartwright for knowingly violating the FCA, this

6  Court need not accept Plaintiff's allegations against Cartwright as true as they are

7  contradictory to other allegations in the SAC.

8       The express language of the statute Cartwright allegedly violated requires

9  Cartwright to have known it was presenting a false claim or to have known it was

10 making or using a false record or statement.  31 U.S.C. §§ 3729(a)(1)(A) & (B).  *See*

11 *also* 31 U.S.C. § 3729(b)(1)(A) (knowledge is defined as actual knowledge,

12 deliberate ignorance or reckless disregard of the truth).

13      There are no allegations in the SAC evidencing "knowledge" by Cartwright.

14 As an initial matter, Plaintiff fails to satisfy Rule 8(a) in that he only alleges a

15 "threadbare recital" of the knowledge element and "conclusory statements" as to the

16 knowledge element, which are not sufficient as a matter of law.  SAC, ¶ 47; *Iqbal*,

17 129 S.Ct. at 1950.  But even if Plaintiff had plead more as to Cartwright's alleged

18 knowledge, the SAC still fails to state a plausible cause of action against Cartwright

19 for violating the FCA.  Plaintiff, himself, has alleged that freight forwarders *could*

20 *not* have complied with the alleged applicable regulations based on the invoices it

21 received from the ocean carriers.  According to paragraph 83 of the SAC:

22      [i]f a freight forwarder wanted to be sure to comply with the Rate

23      Solicitation and TR-12, and to subtract any portion of the surcharge

24      that was prohibited, Matson prevented the freight forwarder from doing

25      so and thereby caused the freight forwarder to submit a false and

26      inflated bill to the SDDC.

27

28                                    7

*See also* SAC, ¶ 74 (same language as above, but as to Horizon).  Plaintiff also alleges that Cartwright "passed through" the purportedly improper fuel surcharges. *Id*. at ¶¶ 46, 74, 83.  That makes perfect sense in light of the fact that Matson and Horizon "do not set forth a separate charge for the rail or line haul transport, and do not forward the billings from the railroads or trucking companies to the freight forwarders," including Cartwright.  SAC, ¶ 22.  These allegations do not state a cause of action under the FCA as "[i]t is not the case that any breach of contract, or violation of regulation or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the FCA." *Cafasso*, 637 F.3d at 1058 (quoting *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265 (9th Cir. 1996)).  And "innocent mistakes, mere negligent misrepresentations and differences in interpretations" do not create liability under the FCA.  *U.S. ex rel. Lee v. Corinthian Coll.*, 655 F.3d 984, 996 (9th Cir. 2011).

Plaintiff's conclusory allegations that Cartwright knew the billings submitted to it by ocean carriers were false and fraudulent and that Cartwright made false and fraudulent records cannot trump Plaintiff's more specific and contradictory statements that Cartwright could not have known of the alleged falsities in the invoices it received.  Allegations that Cartwright "passed through" deceitful charges from the Ocean Carriers to the government while being prevented from complying with regulations by those Ocean Carriers are fundamentally inconsistent with conclusory allegations of Cartwright's knowledge and do nothing to support a conclusory allegation thereof.  Even assuming that the Ocean Carrier's bills were false (which Cartwright does not concede), Plaintiff has not plausibly alleged how Cartwright ***knew*** they were false.  And, plausibility aside, Plaintiff has certainly not explained how Cartwright knew or could have known the Ocean Carriers' bills were false when every other freight forwarder did not.  As Plaintiff admits, the Ocean Carriers "do not set forth a separate charge for the rail or line haul transport, and do

8

not forward the billings from the railroads or trucking companies to the freight forwarders," including Cartwright.  SAC, ¶ 22.

Further, it cannot be lost that the portion of the SAC committed to Cartwright is titled: "Cartwright Prepared and Presented False and Fraudulent Claims and Submitted False Writings."  Heading before SAC, ¶ 90.  Tellingly, the title does not include the allegation that Cartwright did so "knowingly" as required by the statute.  Further, none of the five paragraphs in this section allege Cartwright "knowingly" violated the FCA.  SAC, ¶¶90-94.  To so allege would conflict with Plaintiff's theory against the remaining defendants in that the SAC alleges that ocean carriers submitted invoices that would not allow the freight forwarders to know or be able to separate a bunker fuel surcharge.

All other freight forwarders have already been dismissed from this case.  Cartwright should be dismissed as well because there is not a plausible cause of action pled against Cartwright for merely passing along charges that Plaintiff alleges are in violation of certain regulations.

**B.    The Second Amended Complaint Fails to Plead Claims Under §§ 3729(a)(1)(A) or 3729(a)(1)(B) with the Requisite Particularity and Should Be Dismissed Under Rule 9(b)**

      **1.    Rule 9(b)'s Heightened Pleading Requirement Applies to FCA Allegations**

Grounded in fraud, FCA claims must be pled with particularity pursuant to Rule 9(b).  The heightened pleading requirements of Rule 9(b) apply to False Claims Act allegations.  *E.g. Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (finding the heightened pleading requirements apply "because 'insiders privy to a fraud on the government' should have adequate knowledge of the wrongdoing

at issue.")[1]  Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

### 2. Plaintiff Must Plead "Who, What, When, Where, How, and Why" to Satisfy Rule 9(b)

To satisfy Rule 9(b), a pleading must identify "the who, what, when, where and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent ] statement, and why it is false." *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid, ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).  "In the Ninth Circuit, Rule 9(b) requires allegations of fraud to 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'"  *U.S. ex rel. Serrano v. Oaks Diagnostics, Inc.*, 568 F.Supp.2d 1136, 1142 (C.D. Cal. 2008) (quoting *U.S. v. Sequel Contractors, Inc.*, 402 F.Supp.2d 1142, 1152 (C.D. Cal. 2005)).  "It is not enough … 'to describe a fraudulent scheme in detail but then to allege simply and without any stated reason … that claims requesting illegal payments must have been submitted.'"  *Cafasso*, 637 F.3d at 1058 (quoting *Aflatooni  v. Kitsap Physicians Servs.*, 314 F.3d 995, 997 (9th Cir. 2002)).  This flows from the rationale that "[t]he particularity requirement is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations."  *U.S. ex rel. Casady v. American Intern. Group, Inc.*, 2013 WL 1702777, *6 (S.D. Cal. Apr. 19, 2013) (citing *Abels v. Farmers*

---

[1]  Based on this rationale, the Ninth Circuit has held that it is not appropriate to relax the particularity pleading requirement even when the evidence is in the exclusive control of the defendant "because the FCA is geared primarily to encourage insiders to disclose information necessary to prevent fraud on the government."  *Ebeid, ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010).

1  *Commodities Corp.*, 259 F.3d 910, 920-21 (8th Cir. 2001)).  Plaintiff has not

2  identified a single invoice that Cartwright allegedly made or submitted, or caused to

3  be made or used, in violation of the FCA, §§ 3729(a)(1)(A) and 3729(a)(1)(B).

4  Thus, Cartwright has no ability to respond specifically and quickly to the allegations

5  alleging it has committed fraud against the government.

6       Further, "[i]t is not the case that any breach of contract, or violation of

7  regulation or law, or receipt of money from the government where one is not

8  entitled to receive the money, automatically gives rise to a claim under the FCA."

9  *Cafasso*, 637 F.3d at 1058 (quoting *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261,

10  1265 (9th Cir. 1996)).  "No case creates or imposes FCA liability merely where one

11  overcharges the government – the overcharging must be committed in conjunction

12  with a false statement that is a lie."  *Gonzalez*, 2012 WL 2412080, at *5 (citing

13  *Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996) and

14  *Hopper*, 91 F.3d at 1267).  "[T]he normal run of contractual disputes are not

15  cognizable under the [FCA]."  *Cafasso*, 637 F.3d at 1057-58 (quoting *U.S. ex rel.*

16  *Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 383 (4th Cir. 2008)).

17  Similarly, "innocent mistakes, mere negligent misrepresentations and differences in

18  interpretations" do not create liability under the FCA.  *U.S. ex rel. Lee v. Corinthian*

19  *Coll.*, 655 F.3d 984, 996 (9th Cir. 2011).

20

21        **3.**       **A Case from the Central District of California**
                            **Provides a Concrete Example of the Pleading**

22                           **Necessary to Satisfy 9(b)**

23

24       A case from this District further illustrates the type of pleading necessary to

25  satisfy Rule 9(b)'s requirements in relation to FCA claims.  *U.S. ex rel. Serrano v.*

26  *Oaks Diagnostics, Inc.*, 568 F.Supp.2d 1136 (C.D. Cal. 2008).  In *Serrano*, the

27  government alleged that the entity and its owners were liable for submitting false

28   

11

Medicare billings. *Id.* at 1137. "According to the Complaint, Defendants are liable because they were either specifically aware of the illegal activities or were deliberately ignorant of the activities." *Id.* at 1138. Just as Plaintiff here, the government in *Serrano* alleged violations of the first three subsections of the FCA. *Id.*[2]

The *Serrano* court found that Ninth Circuit law requires that "[i]n order to properly state a claim for fraud under the False Claims Act, the Plaintiff must allege with particularity, the time, place, specific content and parties involved." *Id.* at 1142 (quoting *U.S. v. Sequel Contractors, Inc.*, 402 F.Supp.2d 1142, 1152 (C.D. Cal. 2005), which quoted *Schreiber Distrub. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In its analysis, the court explained that "the Complaint sets out a detailed report of the alleged scheme to defraud Medicare which included transporting 'patients' to the clinic, usually on weekends." *Id.* The *Serrano* Complaint contained specific details about the tests run on the patients and to allege that each test was medically unnecessary, which made it a false claim under Medicare billing guidelines. *Id.* "According to the Government, 1393 false claims were submitted between September 21, 1999 and December 31, 2003 involving 432 separate Medicare beneficiaries." *Id.* The *Serrano* plaintiff even provided a chart "listing each of the alleged false claims including the date, internal control number, referring physician, amount billed and amount paid for each of the claims."

Despite the detail provided in *Serrano*, the district court determined that the level of information provided still was insufficient to satisfy the rigors of Rule 9(b).

---

[2] Unlike the present lawsuit, in *Serrano*, an employee of the defendant had been convicted on criminal charges for her participation in the false billing scheme. *Id.* No criminal charges have been brought or threatened against Cartwright or its employees.

Importantly, the *Serrano* Complaint did not "identify any dates of service, an example of tests performed, or a single patient involved in the tests."  *Id*. at 1142-43. The Court concluded:

> The general allegations that all claims submitted during an almost four
> year period were fraudulently submitted is insufficient particularly to
> satisfy the 9(b) pleading standard.  While the Court is not suggesting
> that Rule 9(b) requires precise details pertaining to each of the
> allegedly 1393 claims submitted, the Ninth Circuit requires some
> specifics, such as the time, place, nature of the false statement, as well
> as the identities of the parties to the misrepresentation to comply with
> Rule 9(b) pleadings standards.

*Id*. at 1143 (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007)).

As set forth further below, Plaintiff's SAC as to Cartwright falls far short of what was plead in *Serrano*, which itself was insufficient.  Plaintiff's SAC does not satisfy the pleading requirements of Rule 9(b) and should be dismissed.

### 4.      The SAC Does Not Satisfy the 9(b) Pleading Requirements

The SAC does not sufficiently plead the "what, when, how and why" of the alleged false statements as required by Rule 9(b) and the Ninth Circuit cases interpreting the heightened pleading requirement.  This point is readily illustrated through a comparison of the allegations pled in *Serrano* as compared to the allegations plead against Cartwright in this case.  The lack of specific pleading against Cartwright should cause a dismissal of Plaintiff's FCA claims against Cartwright.

The following questions that are unanswered by the SAC guide this discussion:

13

a.  What invoices contain alleged false statements?

b.  What specifically is false about those statements?

c.  Why is that false?

d.  When were these allegedly false statements made by Cartwright?

e.  When were these allegedly false statements submitted by Cartwright?

f.  How did Cartwright cause to be made or used an allegedly false statement?

### a.  Plaintiff Is Unable to Identify the Invoices at Issue in this Case – the "What"

"The FCA attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'"  *Cafasso*, 637 F.3d at 1055 (quoting *U.S. v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)).  "An actual false claim is the sine qua non of an FCA violation.'"  *Id*. (quoting *Aflatooni*, 314 F.3d at 1002).  And under the statute, the alleged false claim must be made or submitted "knowingly."

Plaintiff concedes he is unable to identify any specific invoice that he alleges was improperly submitted to the government by Cartwright: "Relator lacks specific information concerning the shipments for which Cartwright was the freight forwarder."  SAC, ¶ 94.  Yet at the same time, Plaintiff attempts to plead a viable claim against Cartwright by alleging "Cartwright made and presented false and fraudulent bills of lading for *each and all of the shipments* made by the Ocean Carrier Defendants for which Cartwright was the transportation service provider, until the Ocean Carrier Defendants stopped their illegal billings in approximately 2012."  *Id*. (emphasis added).   As evidenced by *Serrano,* 568 F.Supp.2d at 1143, these allegations are not enough to hurdle over the 9(b) requirement (finding general allegations that all claims submitted during an almost four year period were

14

1  fraudulently submitted is insufficient particularly to satisfy the 9(b) pleading

2  standard).

3      Plaintiff  is unable to identify even one invoice alleged to contain a false

4  statement.  On the contrary, in *Serrano*, the government specifically identified 1393

5  claims at issue and also provided a chart with internal control numbers so that

6  defendant could locate the claims at issue.  *Id*. at 1142.  That level of particularity in

7  *Serrano* was insufficient, and Plaintiff here has not pled, as to Cartwright, any level

8  of facts close to those pled in *Serrano*, and candidly admits that he cannot.  As such,

9  the SAC should be dismissed as to Cartwright.

10

11          **b.      Plaintiff Is Unable to Identify "What" Statements Are**
           **False and "Why" Those Statements Are False**

12

13     To satisfy Rule 9(b), a pleading must identify "what is false or misleading

14  about [the purportedly fraudulent] statement, and why it is false."  *Cafasso, U.S. ex*

15  *rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)

16  (quoting *Ebeid, ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

17     Plaintiff alleges generally that Cartwright's invoices "to SDDC incorporated

18  the full amount of the fuel surcharges imposed by the Ocean Carrier Defendants,

19  including the prohibited surcharge for the rail or line haul transport."  SAC, ¶ 92.

20  General allegations that invoices contained a surcharge for rail or line haul, or

21  violated a regulation, are insufficient to satisfy the pleading requirement as the

22  allegations do not allege what is false about each allegedly false statement and why

23  it is false.  In *Serrano*, for example, the government alleged that 1393 claims

24  submitted during an almost four-year time period contained false statements because

25  the defendant billed the government for medically unnecessary tests.  The district

26  court found that level of pleading deficient under Rule 9(b), stating "The general

27  allegations that all claims submitted during an almost four year period were

28

15

fraudulently submitted is insufficient particularly to satisfy the 9(b) pleading standard." *Serrano*, 568 F.Supp.2d at 1143 (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007)).

General allegations of wrongdoing simply are not enough.  Plaintiff must allege specific allegations as to what Cartwright allegedly did that was false or fraudulent and why it was allegedly false or fraudulent.  That has not been done here.  Without this knowledge, Rule 9(b) is circumvented and Cartwright is unable to "respond specifically and quickly to the potentially damaging allegations." *U.S. ex rel. Casady v. American Intern. Group, Inc.*, 2013 WL 1702777, *6 (S.D. Cal. Apr. 19, 2013) (citing *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920-21 (8th Cir. 2001)).

Further, Plaintiff's attempt to state a claim by alleging that the unidentified invoices were in violation of the "Rate Solicitation and TR-12" is not enough.  SAC, ¶ 92.  Plaintiff has not pled why those alleged violations would necessarily contain false statements or why those statements are false.  Mere violations of a regulation, or contract disputes, are not actionable under the FCA.  Something more is required. *Cafasso*, 637 F.3d at 1058 (quoting *Hopper*, 91 F.3d at 1265).

### c.   Plaintiff Does Not State "When" Cartwright Allegedly Made or Submitted – or Caused to be Made or Used – False or Fraudulent Statements

Plaintiff alleges that Cartwright prepared or submitted false and fraudulent bills of lading "beginning on a date that is presently unknown, but at least as early as January 1, 2007 and continuing [until sometime in 2012]." SAC, ¶ 91.  These allegations are deficient under Rule 9(b).  In *Serrano*, it was not sufficient pleading when the plaintiff alleged that the conduct occurred between two dates certain, September 21, 1999 and December 31, 2003.  Here, Plaintiff has not even alleged a

16

1   definitive beginning and ending date to his allegations.  "The general allegations
2   that all claims submitted during an almost four year period were fraudulently
3   submitted is insufficient particularly to satisfy the 9(b) pleading standard." *Serrano*,
4   568 F.Supp.2d at 1143 (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir.
5   2007)); *see also Gonzalez v. Planned Parenthood of Los Angeles*, 2011 WL
6   1481398, *8 (C.D. Cal. Apr. 19, 2011).

7        In *Gonzalez*, the plaintiff alleged violative acts from "at least 1997," but
8   without further specificity as to date.  The court determined that while "Plaintiff
9   need not state each and every claim in exacting detail, [ ] there must be something
10  more than the mere blanket assertion that defendants submitted false claims." *Id*.
11  The court dismissed the plaintiff's claims.  *Id*.

12       In this case, Plaintiff does not allege more than Cartwright made or submitted
13  invoices at some point over a five or more year period, which may not be in
14  compliance with a rate solicitation or TR-12.  SAC, ¶¶ 91-92.  That is not enough to
15  satisfy the pleading with particularity standard of Rule 9(b).

16
17       **C.    The Second Amended Complaint Fails to Plead a Conspiracy**
         **Claim, 31 U.S.C. § 3729(a)(1)(C), against Cartwright and**
18       **Should Be Dismissed Pursuant to Rule 8(a) and 9(b)**

19       Plaintiff alleges that Matson and Cartwright (but not Horizon) "conspired to
20  defraud the United States, to get false and fraudulent claims allowed and paid."
21  SAC, ¶ 102.  In order to plead a claim for conspiracy under § 3729(a)(1)(C), the
22  plaintiff must plead sufficient facts to allege that (1) Cartwright conspired with one
23  or more persons to get a false or fraudulent claim paid by the United States; and (2)
24  one or more of the conspirators performed any act to effect the object of the
25  conspiracy.  *U.S. ex rel. Woodruff v. Hawaii Pacific Health*, 560 F.Supp.2d 988, 998
26  (D. Haw. 2008); *U.S. v. St. Luke's Subacute Hosp. & Nursing Centre, Inc.*, 2004
27
28                                          17

WL 2905237, *5 (N.D. Cal. Dec. 16, 2004) (finding also that general principles of civil conspiracy apply to FCA claims).  While Plaintiff alleges that Matson and Cartwright conspired, Plaintiff has not provided any facts to support a conspiracy, including what conspiracy Cartwright and Matson agreed to (meeting of the minds), who from Cartwright was involved, who from Matson was involved, when the conspiracy was made, where or how the conspiracy was made, and what acts were taken in furtherance of the alleged conspiracy.

As an initial matter, because Plaintiff has failed to sufficiently plead a cause of action under 31 U.S.C. §§ 3729(a)(1)(A) or 3729(a)(1)(B), Plaintiff's claim of conspiracy fails and must be dismissed.  *See Woodruff*, 560 F.Supp.2d at 1004 (collecting cases).

Further, Plaintiff has not alleged with particularity that Cartwright engaged in a conspiracy with Matson.  In order to satisfy the first prong of the conspiracy element, Plaintiff must sufficiently allege a meeting of the minds.  *Gilbrook v. City of Westminister*, 177 F.3d 838, 856-57 (9th Cir. 1999) (quoting *Vieux v. E. Bay Reg'l. Park Dist.*, 906 F.2d 1330, 1343 (9th Cir. 1990)).  Plaintiff's allegations in the SAC do not satisfy the particularity requirement.  Plaintiff fails to state the terms of the alleged conspiracy, the date the conspiracy was entered into, the circumstances in which the conspiracy was formed, how the conspiracy was formed, who from Cartwright was involved, and who from Matson was involved.  Plaintiff's allegations that Matson and Cartwright entered into a conspiracy to defraud the government in an email exchange by two employees is not plausible.  Further, the language from the email Plaintiff relies on belies the assertion that there was a conspiracy.  The quoted language indicates that the Matson employee stated "When we received the review of Policy TR-12 after the official Federal Register filing, I began the process to change our nomenclature in regard to the fuel surcharge."  SAC, ¶ 57.  That is nothing other than unilateral action by Matson to apparently

18

1   change the name of its surcharge.  It provides no detail necessary to establish

2   conspiracy and cannot serve as evidence of a conspiracy between Cartwright and

3   Matson.

4          Further, Plaintiff's allegations of communications amongst the members of

5   the Household Goods Forwarders Association of America ring hollow as there is no

6   allegation that there was anything improper about those communications.  *Id*., ¶ 52.

7   Plaintiff Rizzo served as the Chair of that Committee and if a conspiracy was

8   reached among its members certainly he would know the particular facts necessary

9   to allege that.  Similarly, the snippets of emails selectively cited by Plaintiff do not

10  evidence a conspiracy as Plaintiff would have this Court believe.  At most, they

11  evidence an intention to comply with the rules.  The truth is there was no meeting of

12  the minds as to a conspiracy between these companies in this highly competitive

13  industry and that is why Plaintiff is unable to plead such and has alleged only

14  general, conclusory allegations.

15

16      **D.     In the Event the Second Amended Complaint is Not**

17      **Dismissed  Entirely, It Should Be Limited to Post June 13,**
        **2006 Allegations**

18

19         It is unknown from the SAC what Cartwright invoices are alleged to be at

20  issue and thus, the date of those invoices are unknown.  To the extent Plaintiff seeks

21  recovery of damages from Cartwright based on invoices submitted before June 13,

22  2006, those claims are barred pursuant to Rule 12(b)(6) and the FCA's six-year

23  statute of limitations.

24         31 U.S.C. § 3731 provides:

25         (b)  A civil action under section 3730 may not be brought –

26          (1) more than 6 years after the date on which the violation of section 3729 is

27  committed,

28

1    or

2      (2) more than 3 years after the date when the facts material to the right of

3    action are known or reasonably should have been known by the official of the

4    United States charged with responsibility to act in the circumstances, but in

5    no event more than 10 years after the date on which the violation is

6    committed,

7    whichever occurs last.

8    31 U.S.C. § 3731(b)(1) and (b)(2), False claims procedure.

9    As the Ninth Circuit has summarized:

10    a civil action under the Act brought by a *qui tam* plaintiff must be

11    commenced no more than (1) six years after the date on which the FCA

12    violation is committed or (2) three years after the date when facts material to

13    the right of action are known or reasonably should have been known by the

14    *qui tam* plaintiff, whichever occurs last.  A suit under the Act must, in any

15    event, be brought no more than ten years after the date on which the violation

16    occurred.

17    *U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996).

18    Plaintiff filed his First Amended Complaint, which named Cartwright as a

19    party for the first time, on June 13, 2012.[3]  Plaintiff has not pled with specificity the

20    dates he claims that Cartwright violated the False Claims Act.  Instead, he generally

21    alleges that "Cartwright submitted false and fraudulent bills of lading beginning on a

---

[3] For purposes of addressing statute of limitations, the allegations against Cartwright in the SAC do not relate back to the filing of relator's original complaint, filed on October 4, 2010.  In the original complaint, relator brought suit based on alleged conduct by ocean carriers, including Horizon, Matson and Pasha.  Fed. R. Civ. P. 15(c); *U.S. ex. rel. Frazier v. IASIS Healthcare Corp.*, 812 F.Supp.2d 1008, 1020 (D. Ariz. 2011) (holding that relator's filing of third amended complaint, which added new defendants, did not relate back to his second amended complaint).

20

1  date that is presently unknown, but at least as early as January 1, 2007 and

2  continuing until the Ocean Carrier Defendants changed their billing practices and

3  separately identified the fuel surcharges they imposed on ocean transport and

4  overland transport."  SAC, ¶ 91.  Plaintiff also alleges that "[i]n late 2006 or early

5  2007, on a precise date that is presently unknown, the Conspiring Defendants agreed

6  that Matson would prepare invoices or freight bills that included a single fuel

7  surcharge applied to both the ocean freight ... and to overland or line haul

8  transportation.  *Id.* ¶ 53.[4]

9      It is unclear from the SAC whether Plaintiff contends that Cartwright violated

10  the FCA by making or submitting false billings prior to January 1, 2007.  Section

11  § 3731(b)(1) precludes any action based on FCA violations occurring six years

12  before filing suit against Cartwright.  Accordingly, claims based on violations

13  occurring prior to June 13, 2006 are barred.[5]

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  ────────────────

25  [4] Plaintiff makes allegations against Horizon and Matson dating back to 2005.  *Id.* at ¶¶ 76, 86.

26  [5] Plaintiff has not alleged whether his claims are timely under the second prong of § 3731(b), and
    Cartwright reserves its right to assert further arguments based on statute of limitations.

27

28                                   21

## III.    CONCLUSION

Plaintiff has failed to plead a cause of action against Cartwright in accordance with Rules 8(a) and 9(b).  For these reasons, the SAC should be dismissed.  Should this Court determine that Plaintiff's general allegations are somehow sufficient, claims for violations prior to June 13, 2009 should be precluded pursuant to § 3729(b)(1).

DATED:      September 16, 2013           CORBIN, ATHEY & MARTINEZ LLP


By: _____/s/_____
        Robert L. Corbin
        Nicholas B. Melzer

BERKOWITZ OLIVER WILLIAMS
SHAW & EISENBRANDT LLP

        James L. Eisenbrandt
        Christina M. DiGirolamo
        Timothy R. West

*Attorneys for Defendant*
*Cartwright International Van Lines, Inc.*