BLANK ROME LLP
Nicholas C. Harbist
Harbist@blankrome.com
Admitted *Pro Hac Vice*
301 Carnegie Center
3rd Floor
Princeton, NJ 08540
(T) 609.750.2991
(F) 609.897.7442

Paul M. Honigberg
Honigberg@blankrome.com
Admitted *Pro Hac Vice*
Watergate
600 New Hampshire Avenue NW
Washington, DC 20037
(T) 202.772.5955
(F) 202.572.8374

Arti L. Bhimani, Bar No. 235240
Abhimani@blankrome.com
1925 Century Park East, 19th Floor
Los Angeles, CA 90067
(T) 424.239.3428
(F) 424.239.3398

Attorneys for Defendant HORIZON LINES, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Mario RIZZO,<br><br>Plaintiff,<br><br>v.<br><br>HORIZON LINES, LLC, a Delaware Limited Liability Company; MATSON NAVIGATION COMPANY, INC., a Hawaii Corporation; and, CARTWRIGHT INTERNATIONAL VAN LINES, INC., a Missouri Corporation,<br><br>Defendants. | Case No. 10-CV-7409 PA (AJWx)<br><br>**DEFENDANT HORIZON LINES, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**<br><br>**[Fed. R. Civ. P. 9(b), 12(b)(6)]**<br><br>**[Motion for Judicial Notice Filed Concurrently]**<br><br>**[[Proposed] Order Filed Concurrently]**<br><br>Date:      October 21, 2013<br>Time:     1:30 p.m.<br>Place:    Courtroom 15<br>Judge:   Hon. Percy Anderson |

DEFENDANT HORIZON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on October 21, 2013, at 1:30 p.m. or as soon thereafter as counsel may be heard, in Courtroom 15 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, before the Honorable Percy Anderson, Defendant Horizon Lines, LLC, by and through its attorneys of record, will and hereby does move to dismiss the Second Amended Complaint brought by Plaintiff-Relator Mario Rizzo and alleging violations of the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A) and (B), for failure to state a claim upon which relief can be granted, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, this Motion is based upon the following grounds:

*First*, Relator has not and cannot allege properly that Horizon made any false statements in violation of the False Claims Act.

*Second*, Relator has not and cannot allege properly that Horizon knew that its statements at issue in this matter were false under the False Claims Act.

*Third*, Relator has not and cannot allege properly that Horizon caused to be submitted false claims, or caused false records to facilitate the payment of false claims.

*Fourth*, Relator has failed to plead fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 of the United States District Court for the Central District of California, which took place on September 11, 2013.

DEFENDANT HORIZON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Law and exhibits, served and filed herewith; any matters of which the Court may take judicial notice; the pleadings, records, and files in the above-captioned proceeding; and any oral argument of counsel.

Dated: September 16, 2013

By: */s/ Arti L. Bhimani*

    NICHOLAS C. HARBIST
    PAUL M. HONIGBERG
    ARTI L. BHIMANI

    Attorneys for Defendant
    Horizon Lines, LLC

# <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ....................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

    A.     Shipping of Military Household Goods ............................................. 2

    B.     Publicly Available Rates and Fuel Surcharges .................................. 3

    C.     Horizon's Invoices to the Freight Forwarders ................................... 3

    D.     Relator's Complaint .......................................................................... 5

III.    ARGUMENT .............................................................................................. 5

    A.     Standard of Review ........................................................................... 6

    B.     Relator Fails to Allege that Horizon Knowingly Made False
          or Fraudulent Claims, Records or Statements ................................... 7

          1.     The Rate Solicitation and the TR-12 Only Apply to TSPs
               That File Rates and Otherwise Have a Direct Contractual
               Relationship With the SDDC ..................................................... 8

          2.     Under Regulations Applicable to Horizon and Other
               Ocean Carriers, Horizon May Assess a Single Combined
               Fuel Surcharge That Includes Surcharges on Both Ocean
               and Rail Legs ........................................................................... 10

          3.     Even if the Rate Solicitation and the TR-12 Applied
               to Horizon's Invoices to Freight Forwarders, Horizon's
               Invoices Are Not Objectively False or Fraudulent................... 11

               a.     The Representative Invoice does not misrepresent
                    the shipment as an ocean-only shipment......................... 12

               b.     Horizon does not misrepresent that the fuel
                    surcharge is limited to a surcharge on only ocean
                    fuel................................................................................. 13

               c.     Only the GBL submitted by the freight forwarder is
                    required to state separately the actual fuel
                    surcharges, and not the carrier invoice............................ 14

    C.     Relator Has Not Plausibly Alleged Horizon's Knowledge of
          Falsity............................................................................................. 16

    D.     Relator Failed to Plead Adequately That Horizon Caused the
          Submission of False or Fraudulent Claims for Payment ................... 18

i

1.     Horizon Did Not Knowingly Assist Freight Forwarders in Submitting False Claims to the SDDC ....................................... 19

2.     Relator's Contention that Horizon's Invoices Caused "Innocent" Freight Forwarders to Submit False Claims Fails for the Additional Reason that Relator's Allegations Are Contradictory ..................................................................... 21

E.     Relator's Claims Against Horizon Fail to Meet the FCA's Heightened Pleading Requirements Pursuant to Rule 9(b) ................. 23

IV.     CONCLUSION ............................................................................. 25

DEFENDANT HORIZON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allison Engine Co. v. United States ex rel. Sanders*,
  553 U.S. 662, 128 S. Ct. 2123, 170 L. Ed. 2d 1030 (2008) ................................. 6

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................... 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................... 6

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ........................................................................... 23

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*,
  497 F.3d 972 (9th Cir. 2007) ............................................................................... 6

*Corsello v. Lincare, Inc.*,
  428 F.3d 1008 (11th Cir. 2005) ......................................................................... 23

*Gonzalez v. Planned Parenthood of Los Angeles*,
  No. CV 05-8818, 2012 WL 2412080 (C.D. Cal. June 26, 2012)............. 8, 11, 14

*Hagood v. Sonoma Cnty. Water Agency*,
  81 F.3d 1465 (9th Cir. 1996) ...................................................................... 1, 7, 17

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ............................................................................. 23

*Hindo v. Univ. of Health Sciences/The Chicago Med. Sch.*,
  65 F.3d 608 (7th Cir. 1995) ............................................................................... 16

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007)........................................................ 17, 24

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
  754 F. Supp. 2d 1239 (W.D. Wash. 2010) ......................................................... 11

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ............................................................................. 23

iii

DEFENDANT HORIZON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ................................................................ 6

*Neitzke v. Williams*,
490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ................................. 7

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) ................................. 17

*Schwenk v. Cnty. of Alameda*,
364 F. App'x 336 (9th Cir. 2010) .......................................................... 21

*Sumner Peck Ranch, Inc. v. Bureau of Reclamation*,
823 F. Supp. 715 (E.D. Cal. 1993) ..................................................... 7, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 127 S. Ct. 2499 ............................................................. 4

*United States ex rel. Anderson v. N. Telecom Inc.*,
No. 96-36152, 1998 U.S. App. LEXIS 6500 (9th Cir. Mar. 27, 1998) ............. 10

*United States ex rel. Bane v. Breathe Easy Pulmonary Servs.*,
597 F. Supp. 2d 1280 (M.D. Fla. 2009) ............................................. 17, 20

*United States ex rel. Butler v. Hughes Helicopters, Inc.*,
71 F.3d 321 (9th Cir. 1995) .............................................................. 17

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys.*,
637 F.3d 1047 (9th Cir. 2011) ......................................................... 6, 7

*United States ex rel. Drescher v. Highmark, Inc.*,
305 F. Supp. 2d 451 (E.D. Pa. 2004) .................................................... 19

*United States ex rel. Ebeid v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) ............................................................ 23

*United States ex rel. Hendow v. Univ. of Phoenix*,
461 F.3d 1166 (9th Cir. 2006) ................................................... 7, 16, 18

*United States ex rel. Kneepkins v. Gambro Healthcare, Inc.*,
115 F. Supp. 2d 35 (D. Mass. 2000) ..................................................... 25

*United States ex rel. Lee v. Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011) ......................................................... 6, 18

*United States ex rel. Local 342 Plumbers & Steamfitters v. Caputo Co.*,
    321 F.3d 926 (9th Cir. 2003) ................................................................. 7

*United States ex rel. Lockyer v. Hawaii Pac. Health Grp. Plan*,
    No. 07-17174, 2009 WL 270321 (9th Cir. Aug. 27, 2009) ............................. 18

*United States ex rel. Mason v. State Farm Mut. Auto Ins. Co.*,
    No. CV07-297-S-EJL, 2008 U.S. Dist. LEXIS 56218 (D. Idaho July 23,
    2008) ...................................................................................................... 19

*United States ex rel. Oliver v. Parsons Co.*,
    195 F.3d 457 (9th Cir. 1999) ................................................................. 7

*United States ex rel. Perry v. Hooker Creek Asphalt & Paving, LLC*,
    No. 08-6307-HO, 2011 U.S. Dist. LEXIS 144522 (D. Or. Dec. 13, 2011) ....... 20

*United States ex rel. Serrano v. Oaks Diagnostics, Inc.*,
    568 F. Supp. 2d 1136 (C.D. Cal. 2008) ................................................... 24

*United States ex rel. Stauffer v. Bell Atl.*,
    No. 1:CV-96-1432, 1998 U.S. Dist. LEXIS 22654 (M.D. Pa. Dec. 16,
    1998) ...................................................................................................... 10

*United States ex rel. Westerfield v. Univ. of San Francisco*,
    No. C 04-03440 JSW, 2006 U.S. Dist. LEXIS 15276 (N.D. Cal. Feb. 14,
    2006) ...................................................................................................... 22

*United States v. Bornstein*,
    423 U.S. 303, 96 S. Ct. 523, 46 L. Ed. 2d 514 (1976) ............................. 20

*United States v. Bourseau*,
    531 F.3d 1159 (9th Cir. 2008) ................................................................. 7

*United States v. Kitsap Physicians Serv.*,
    314 F.3d 995 (9th Cir. 2002) ............................................................. 7, 23

*United States v. Mackby*,
    261 F.3d 821 (9th Cir. 2001) ................................................................. 19

*United States v. McLeod*,
    721 F.2d 282 (9th Cir. 1983) ................................................................. 20

*Wang v. FMC Corp.*,
    975 F.2d 1412 (9th Cir. 1992) ................................................................. 16

DEFENDANT HORIZON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Warren v. Fox Family Worldwide, Inc.*,
 328 F.3d 1136 (9th Cir. 2003) .............................................................................. 6

*Zeman v. USC Univ. Hosp.*,
 No. CV 11-05755, 2013 U.S. Dist. LEXIS 79910 (C.D. Cal. June 6, 2013)..... 22

**STATUTES**

31 U.S.C. § 3729-3733 ......................................................................................*passim*

49 U.S.C. § 13701(a) ............................................................................................ 11

Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat.
 1617 (2009) (codified as 31 U.S.C. § 3729(a)(1)(B)) .......................................... 6

Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-
 88, 109 Stat. 803 (1995) (codified as 49 U.S.C. § 13101, *et seq.* (2010)) ......... 10

**OTHER AUTHORITIES**

49 C.F.R. § 1312.2 (2013) ............................................................................. 3, 4, 11

*Regulations for the Publication, Posting and Filing of Tariffs for the
 Transportation of Property By or With a Water Carrier in the
 Noncontiguous Domestic Trade*,
 2 S.T.B. 182, 1997 STB LEXIS 76 (Apr. 17, 1997) ......................................... 11

Fed. R. Civ. P. 8 ................................................................................................... 24

Fed. R. Civ. P. 9(b) ........................................................................................*passim*

# I.    __INTRODUCTION__

In any False Claims Act ("FCA") case, there must, at a minimum, be proof of an objective falsehood.  *See Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1477-78 (9th Cir. 1996).  Here, the Plaintiff-Relator's Second Amended Complaint ("SAC") fails as a matter of law to allege that any statement or invoice made or issued by Horizon Lines, LLC ("Horizon") was false, or that Horizon caused a freight forwarder to submit a false or fraudulent claim for payment to the United States Government.

The SAC alleges that Horizon violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, in its commercial billings to freight forwarders for their transportation of military household goods between Hawaii and Guam, on the one hand, and the continental United States ("CONUS"), on the other.  SAC ¶ 2. Relator acknowledges that Horizon did not have a direct contractual relationship with the government, did not directly submit any claims to the government, and billed freight forwarders according to its published rate guides and posted tariffs. *See* SAC ¶¶ 19, 40.  Nevertheless, Relator alleges that Horizon issued false invoices to freight forwarders, which, in turn, caused them to submit false claims for reimbursement to the Surface Deployment and Distribution Command ("SDDC"). *See* SAC ¶¶ 73-74.

Relator's allegations fail for numerous reasons.  First, Horizon's invoices are not false as a matter of law because the SDDC's rules do not apply to invoices issued by a carrier that does not file rates with the government.  Second, Horizon's invoices cannot be false because Horizon billed its freight forwarder customers according to its valid tariffs, which are approved by the Surface Transportation Board ("STB").  Third, Horizon's invoices are not false because Horizon's invoices and the corresponding tariffs make it clear that a single combined fuel surcharge was assessed for the entire intermodal voyage, which includes rail transportation, and Horizon's invoices to the freight forwarders do not need to set forth each fuel

DEFENDANT HORIZON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

surcharge separately.  Fourth, Relator's allegation that Horizon had knowledge of the alleged falsity fails as a matter of law because knowledge of the relevant regulations does not equate to knowledge of the falsity.  Fifth, Relator fails to allege plausibly that Horizon caused the submission of any false claims because the SAC fails to allege that Horizon had any control over, influence on, or role in the freight forwarders' independent decisions to submit their bills to the government and it is evident from Relator's allegations that so-called "innocent" freight forwarders were not deceived or otherwise prevented by Horizon's invoices from segregating the fuel surcharges in their submissions to the SDDC.  Finally, Relator fails to plead fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure.

Accordingly, the Court should dismiss the claims brought against Horizon.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Shipping of Military Household Goods

When a member of the United States Armed Forces is relocated, the Department of Defense ("DOD") procures transportation services for the shipment of his or her household goods.  SAC ¶ 17.  The DOD administers the transportation of the household goods through the SDDC.  SAC ¶ 17.  The SDDC solicits bids from freight forwarders, which are companies that contract with the SDDC to manage the move from a serviceman's present duty station to his or her new duty station.  SAC ¶¶ 18-19.  Freight forwarders submit bids in response to the International Personal Property Rate Solicitations ("Rate Solicitation"), which govern the transportation of military household goods by such freight forwarders.  SAC ¶¶ 25-27.

Because the freight forwarders generally do not own or operate the ships, trucks, or trains by which household goods are shipped, the freight forwarders enter into subcontracts with carriers and other transportation service providers ("TSPs") that provide shipping services.  SAC ¶ 19.  Specifically, for shipments of military

household goods between the CONUS and Hawaii or Guam, freight forwarders hire ocean carriers, such as Horizon, to move the goods to a port near the ultimate destination.  SAC ¶¶ 19-20.  If the shipment is "intermodal," meaning it also includes an inland leg, Horizon will contract with third-party trucking or rail services providers to complete the inland leg of the shipment.  SAC ¶ 21.

### B.    Publicly Available Rates and Fuel Surcharges

Before submitting their bids to the SDDC, freight forwarders first look to publicly available rate guides issued by ocean carriers, such as Horizon, to help formulate their bids.  SAC ¶ 40.  For example, on or around October 15, 2007, Horizon made it publicly known through its published rate guide ("Rate Guide") that it charged a single combined fuel surcharge of 24% for the transportation of military and commercial household goods to and from Honolulu.  *See* SAC Ex. C, Relator's Appendix of Exhibits ("App.") 166.  The Rate Guide also notes that the rates have been "forward filed" as tariffs, meaning that Horizon complied with the regulations set forth by the STB, and that Horizon could not charge or receive a different compensation for the transportation of household goods for this given route unless and until Horizon published another valid and approved tariff.  SAC Ex. C, App. 165; *see* 49 C.F.R. § 1312.2(b) (2013) (originally promulgated at 62 Fed. Reg. 19058, 19059 (Apr. 18, 1997)).  This also meant that when freight forwarders submitted their bids to the SDDC, the freight forwarders were fully aware that Horizon assessed a single combined fuel surcharge for intermodal shipments of household goods, and that any bill issued by Horizon would be consistent with the information contained in both the Rate Guide and the corresponding tariff.  *See* SAC ¶ 40.

### C.    Horizon's Invoices to the Freight Forwarders

Once Horizon completes its shipment of household goods to the agreed-upon location, it issues an invoice to the freight forwarder.  SAC ¶ 46.  This invoice provides detailed information as to the charges and rates for the given shipment,

3

DEFENDANT HORIZON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

including information as to the assessed fuel surcharge.  *See* SAC Ex. E, App. 301-04.  Because tariff regulations prohibit domestic carriers such as Horizon from receiving a different compensation for the transportation of household goods than what is provided in the corresponding tariff publication, the invoice provides a combined fuel surcharge consistent with Horizon's Rate Guide and the corresponding tariff rate.  *See* 49 C.F.R. § 1312.2(b).  *Compare* Horizon's Hawaii Tariff 1-2, served and filed herewith as Exhibit 1 to Horizon's Motion to Dismiss,[1] *with* SAC Ex. E (Horizon's invoices).

To illustrate, on the representative copy of Horizon's invoices that Relator attached to the SAC (the "Representative Invoice"), the combined fuel surcharge is $1,430.52.  *See* SAC Ex. E, App. 303.  Similarly on the corresponding publicly posted tariff, a "Fuel Adjustment Factor" of $1,430.52 was assessed for shipments completed between July 5, 2009 and October 4, 2009.  *See* Hawaii Tariff 1.  A comparison of the second and third pages of the Representative Invoice with the corresponding publicly posted tariff also demonstrates that the shipment in question is an "intermodal" shipment, *i.e.*, the shipment has both an ocean leg and an inland leg, which is necessary for all inland CONUS shipments.  *See* SAC Ex. E, App. 302-03; Hawaii Tariff 1.  The Representative Invoice explicitly describes a shipment that originated in Honolulu, discharged in Tacoma, and ultimately delivered to a rail yard in Baltimore.  SAC Ex. E, App. 302.  The corresponding tariff similarly notes that the shipment originated in Honolulu and arrived in Baltimore via Tacoma.  Hawaii Tariff 1, 4.  Pursuant to its contract with the freight forwarders, Horizon billed freight forwarders in accordance with the approved tariff rates for such an intermodal shipment.

---

[1] Horizon requests that the Court take judicial notice of the publicly filed tariff. *See* Request for Judicial Notice, served and filed herewith; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509; 168 L. Ed. 2d 179, 193 (2007).

### D.    Relator's Complaint

Relator filed his initial complaint on October 4, 2010.  Dkt. 1.  The First Amended Complaint was filed on June 13, 2012.  Dkt. 16.  On May 10, 2013, the United States formally declined to intervene in this matter.  Dkt. 26.  Relator filed the SAC on August 23, 2013.  Dkt. 76.

The SAC asserts two counts against Horizon.  First, Relator alleges that Horizon violated 31 U.S.C. § 3729(a)(1)(A) by having "knowingly presented, or caused to be presented, to the United States, false or fraudulent claims for payment or approval."  SAC Count 1, ¶ 98.  Second, Relator alleges that Horizon violated § 3729(a)(1)(B) by having "knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim to the United States."  SAC Count 2, ¶ 100.[2]

### III.   ARGUMENT

At bottom, liability under the FCA requires a finding that a defendant knowingly made a false or fraudulent statement that was material and caused the United States Government to pay a claim.  Despite its lengthy recitation of the process of soliciting bids for the transport of military household goods from Hawaii and Guam, on the one hand, to CONUS, on the other, the SAC fails to allege that any statement made or claim presented by Horizon was false.  Instead, the one example provided by Relator of an allegedly false or fraudulent statement by Horizon proves just the opposite; Horizon's invoices conformed to its publicly filed tariff in every respect.  To state a claim upon which relief can be granted, Relator must plead the following essential elements: (1) the claim, records, or statement are false; (2) the defendant knew of the falsity; and (3) the defendant presented or caused to be presented the claim to the government, or a statement to facilitate the

---

[2] The SAC also contains a conspiracy claim, in which Horizon is not named.  *See* SAC Count 3.

1   payment of the false claim.  *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d
2   984, 992 (9th Cir. 2011).[3]

3   ### A.     Standard of Review

4       A motion to dismiss for failure to state a claim tests the legal sufficiency
5   of the pleadings.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To survive
6   a motion to dismiss, a complaint must contain sufficient factual matter, accepted
7   as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,
8   556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868, 874 (2009); *Bell Atl.*
9   *Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929,
10  949 (2007) ("[Plaintiff must] nudge[] [its] claim [] across the line from conceivable
11  to plausible."); *see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys.*,
12  637 F.3d 1047, 1055 (9th Cir. 2011) ("FCA claims must, in addition to pleading
13  with particularity [under Rule 9(b)], also plead plausible allegations.").
14  The plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief'
15  requires more than labels and conclusions . . . ."  *Twombly*, 550 U.S. at 555.
16  "The pleading must state enough fact[s] to raise a reasonable expectation that
17  discovery will reveal evidence of [the misconduct alleged]."  *Id*. at 556.

18      While the Court should construe the facts alleged as true and in a light most
19  favorable to the non-moving party, *Cedars-Sinai Med. Ctr. v. Nat'l League*
20  *of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007), it need not "assume the
21  truth of legal conclusions merely because they are cast in the form of factual
22  allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.

---

23  [3] With respect to Count 2, for claims submitted and pending prior to June 7, 2008,
24  Relator must also plausibly allege that Horizon specifically intended that the freight
    forwarders used the allegedly false freight bills to obtain payment from SDDC.
25  *See Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671-72, 128
    S. Ct. 2123, 2130, 170 L. Ed. 2d 1030, 1039-40 (2008) (imposing specific intent
26  requirement).  Congress subsequently eliminated the specific intent requirement for
27  claims arising on or after June 7, 2008.  Fraud Enforcement and Recovery Act
    of 2009, Pub. L. No. 111-21, § 4(f)(1), 123 Stat. 1617, 1625 (2009) (codified
28  as 31 U.S.C. § 3729(a)(1)(B)).

2003).  The court may reject inferences drawn by the plaintiff if the inferences are contradicted or otherwise unsupported by the facts set out in the complaint, the exhibits attached therein, or matters of public record.  *Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F. Supp. 715, 719-20 (E.D. Cal. 1993) (citations omitted).  The Court should dismiss a complaint "if as a matter of law[,] it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 1832, 104 L. Ed. 2d 338, 348 (1989).

### B.    Relator Fails to Allege that Horizon Knowingly Made False or Fraudulent Claims, Records or Statements

The SAC fails to state a claim for relief because it fails to plead facts demonstrating that Horizon made a false or fraudulent statement, record or claim.  To state a claim for relief under sections 3729(a)(1)(A) and (B), Relator must, *inter alia*, demonstrate that the statement, record, or claim at issue is objectively false. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002); s*ee Hagood*, 81 F.3d at 1477-78 (FCA liability requires proof of objective falsehood). Because the FCA does not explicitly define "false," courts typically "decide whether a claim is false or fraudulent by determining whether a defendant's representations are accurate in light of applicable law."  *United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008); *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 463 (9th Cir. 1999).  A party must have made a "palpably false statement, known to be a lie when it is made."  *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006).  The determination typically involves interpreting the relevant regulations, contracts, and other laws.  *See United States ex rel. Local 342 Plumbers & Steamfitters v. Caputo Co.*, 321 F.3d 926, 933 (9th Cir. 2003).  In making this determination, courts draw on their judicial experience and common sense, and consider "obvious alternative explanations" to determine the plausibility of an inference.  *Cafasso*, 637 F.3d at 1056.  When the

plaintiff's complaint contradicts its own theory of falsity, the allegedly false statements are not false.  *See, e.g., Gonzalez v. Planned Parenthood of Los Angeles*, No. CV 05-8818, 2012 WL 2412080, at *5 (C.D. Cal. June 26, 2012).

Here, Relator relies on a single page of one invoice to support his allegations that Horizon's invoices are palpably false.  Specifically, Relator alleges that Horizon falsely labeled the shipment as "Ocean Freight" to obscure the fact that it assessed a fuel surcharge for the entire shipment that also included a rail leg – rather than only as to the ocean leg.  SAC ¶¶ 46, 69-70.   Relator cites the same page of the Representative Invoice to allege that Horizon falsely identifies the assessed fuel surcharge as a "BS Fuel Surcharge," which allegedly misrepresents that the fuel surcharge applies only to the ocean leg of the shipment. SAC ¶¶ 70-71.  Relator further avers that the Representative Invoice violates the FCA by failing to state separately the bunker fuel surcharge.  SAC ¶ 72.

Contrary to Relator's allegations, however, applying the relevant regulations to the Representative Invoice reveals that Horizon's invoices are not false or fraudulent as a matter of law.

### 1. The Rate Solicitation and the TR-12 Only Apply to TSPs That File Rates and Otherwise Have a Direct Contractual Relationship With the SDDC

Horizon did not submit any false or fraudulent claims or otherwise commit fraud because it has no legal or contractual obligation to conform its invoice to the SDDC's billing requirements.  The Rate Solicitation, by its terms, applies only to TSPs that file rates with the SDDC.  Item 400 of the Rate Solicitation states that "*[b]y the filing of rates*, Transportation Service Providers verify they will adhere to the terms, conditions, rates, and accessorial rates and charges contained in this solicitation."  *See* SAC Ex. A, App. 39 (emphasis added).  Similarly, Item 106 of the Rate Solicitation states that only "[TSPs] filing rates in response to this solicitation must comply" with provisions set forth in the rest of the Item.  *See* SAC

1   Ex. A, App. 15.  Indeed, Relator concedes that Horizon does not file rates with the

2   SDDC; only freight forwarders file rates with the SDDC.  SAC ¶ 27.

3       Similarly, the restrictions on fuel surcharges set forth in the SDDC's

4   Transportation and Travel Policy No. TR-12 ("TR-12"), only apply to the

5   submission of invoices *to the SDDC*, and not the submission of invoices *to the*

6   *freight forwarders*.  The TR-12 clearly states that the policy only applies to what

7   "the SDDC will pay," and explains that "[c]arriers are urged to consider anticipated

8   variation in fuel prices when submitting or supplementing rates during rate filing

9   and/or bid submission periods."  *See* SAC Ex. B, App. 280.  Because the SDDC

10  does not make any payments to subcontracted TSPs, like Horizon, the TR-12's

11  applicability is limited to those carriers that have filed rates and are directly

12  reimbursed by the SDDC, which are the rate-soliciting freight forwarders.  *See* SAC

13  Ex. B.

14      Lastly, Item 513 of the Rate Solicitation reaffirms that only the rate-soliciting

15  freight forwarder is subject to the requirements set forth in the Rate Solicitation

16  by confirming that Horizon and other subcontracting TSPs "lack[] privity of

17  contract with the U.S. government."  SAC Ex. A, App. 113.  To bind

18  subcontracting TSPs (such as Horizon) to requirements set forth under the Rate

19  Solicitation, rate-filing freight forwarders must "insert the required clause in any

20  subcontract" with Horizon.  *See* SAC Ex. A, App. 113.  Relator has failed to allege

21  that Horizon's subcontracts with the freight forwarders contained any such clauses.

22      Reading Items 106, 400, 513 of the Rate Solicitation, the TR-12, and

23  Plaintiff's allegations together, it is clear that the SDDC regulations do not apply to

24  Horizon or any TSP hired by the freight forwarder as a subcontractor.  In its SAC,

25  Relator concedes that it was the freight forwarders, not ocean carriers such as

26  Horizon, that filed the rates, submitted their Applications of Solicitation to the

27  SDDC, and then subsequently hired Horizon and other carriers as its

28  subcontractors.  *See* SAC ¶ 19 ("Freight forwarders, like defendant Cartwright,

contract with the SDDC to manage the move from door to door.  It is the freight

forwarders who arrange for each of the steps outlined above, contracting with

others as needed.").  Accordingly, it is both erroneous and contradictory for Relator

to assert that both the "Ocean Carrier Defendants *and* the freight forwarders [are]

subject to the terms and rules" of the SDDC.  *See* SAC ¶¶ 24-25, 35 (emphasis

added).

> **2.     Under Regulations Applicable to Horizon and Other Ocean Carriers, Horizon May Assess a Single Combined Fuel Surcharge That Includes Surcharges on Both Ocean and Rail Legs**

As a matter of law and policy, the STB permits Horizon to assess any fuel

surcharge as long as the corresponding tariff is approved by the STB in accordance

with the Interstate Commerce Commission Termination Act of 1995, Pub. L.

No. 104-88, 109 Stat. 803 (1995) (codified as 49 U.S.C. § 13101, *et seq.* (2010))

("ICCTA" or the "Act").  Invoices that comply with applicable laws, regulations,

and specifications cannot provide the basis for an FCA action.  *See, e.g.*, *United*

*States ex rel. Anderson v. N. Telecom Inc.*, No. 96-36152, 1998 U.S. App. LEXIS

6500, at *10 (9th Cir. Mar. 27, 1998) (affirming the dismissal of the FCA action in

which the defendant complied with the specifications set forth in its contract with

the military); *United States ex rel. Stauffer v. Bell Atl.*, No. 1:CV-96-1432, 1998

U.S. Dist. LEXIS 22654, at *12 (M.D. Pa. Dec. 16, 1998) (finding that any FCA

claim premised on challenging the "reasonableness or legality" of publicly filed

rates fails as a matter of law).  Because Horizon billed strictly according to its

approved tariffs, Horizon's invoices to the freight forwarders are not false as a

matter of law.

Under the ICCTA, Horizon and other ocean carriers may transport household

goods between Hawaii and Guam, on the one hand, and CONUS, on the other, only

if their "rates, and related rules and practices, for such transportation or service are"

both "reasonable" and "contained in a published tariff that is on file with the [STB]." 49 U.S.C. § 13701(a); 49 C.F.R. § 1312.2(a).  In assessing the rate's reasonableness, courts typically defer to the STB because it "unquestionably has jurisdiction," the "necessary expertise, as well as the authority delegated by Congress" to consider "[a]ny challenge" to the tariffs.  *See In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 754 F. Supp. 2d 1239, 1252, 1254 n.20 (W.D. Wash. 2010).  The STB invalidates any tariff that is unreasonable or otherwise in violation of "the Act, or a regulation of the Board carrying out th[e] section."  49 C.F.R. § 1312.2(f).  The STB stated that "[c]arriers have the initiative as to how to structure their rates."  *Regulations for the Publication, Posting and Filing of Tariffs for the Transportation of Property By or With a Water Carrier in the Noncontiguous Domestic Trade*, 2 S.T.B. 182, 1997 STB LEXIS 76, at *13 (Apr. 17, 1997).

Here, Relator acknowledges that Horizon, by publishing its tariffs**,** complied with the requirements set forth in the ICCTA.  *See* SAC ¶ 40; SAC Ex. C, App. 165.  Significantly, Relator does not allege that Horizon's tariff is unreasonable or has been otherwise declared as invalid by the STB.  Accordingly, because Horizon billed its fuel surcharges according to its approved tariffs, its corresponding invoices to the freight forwarders cannot be false or fraudulent.

### 3.    Even if the Rate Solicitation and the TR-12 Applied to Horizon's Invoices to Freight Forwarders, Horizon's Invoices Are Not Objectively False or Fraudulent

Putting to one side the inapplicability of the Rate Solicitation and the TR-12 to Horizon, there is nothing false or fraudulent in Horizon's invoices to the freight forwarders.  An entity is not subject to liability under the FCA when it has been open about how it assessed and billed for a charge.  *See Gonzalez v. Planned Parenthood*, 2012 WL 2412080, at *5 (truthfulness in billing practices "d[id] not support a plausible inference that Defendants misrepresented what they were

DEFENDANT HORIZON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

billing").  As demonstrated by the Representative Invoice proffered by Relator,

Horizon's invoice does not suggest that the shipment was an ocean-only shipment

or that the assessed fuel surcharge was simply a bunker or ocean fuel surcharge.

Moreover, under the SDDC regulations, Horizon is not required to segregate the

actual fuel surcharges from other charges on its invoices to the freight forwarders.

### a.      The Representative Invoice does not misrepresent the shipment as an ocean-only shipment

The SAC fails to show any attempt by Horizon to mislead the government.

An objective examination of the Representative Invoice proffered by Relator

demonstrates that it accurately reported the nature of the transportation.

The Representative Invoice explains that it concerns an "intermodal" shipment –

and not an ocean-only shipment – that includes both ocean and inland legs.

Accordingly, the invoice is not objectively false because it does not purport to be

limited to an ocean-only shipment.

Indeed, the Representative Invoice bears multiple indications that Horizon

did not misrepresent the shipment as an ocean-only shipment.  The invoice shows

that the shipment was loaded in Honolulu, discharged in Tacoma, and arrived at a

"Rail Yard" in Baltimore.  SAC Ex. E, App. 302.  It is evident from the face of the

freight bill that Horizon hired a rail services provider to transport the shipment from

Tacoma to Baltimore by rail, making the Representative Invoice a bill for an

intermodal shipment.  Moreover, the number "0998119600" found on the

Representative Invoice likewise indicates that this is an intermodal shipment.  SAC

Ex. E, App. 303.  This number directly references the corresponding tariff for

intermodal shipments of household goods from Hawaii to Baltimore.

The corresponding tariff with the same rate number of "0998119600" provides that

the origin of this particular shipment is Honolulu, with the destination as

"Baltimore, MD *VIA Tacoma, WA*," reaffirming that the Representative Invoice

refers to an intermodal shipment.  *See* Hawaii Tariff 1, 4 (emphasis added).

DEFENDANT HORIZON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

In short, this theory of falsity fails because it is clear from the face of the Representative Invoice and the corresponding tariff that the description "Ocean Freight" is not a misrepresentation, as the invoice on its face describes an intermodal shipment that includes both an ocean and an inland rail leg.

### b.   Horizon does not misrepresent that the fuel surcharge is limited to a surcharge on only ocean fuel

The Representative Invoice and the corresponding tariff likewise establish that the fuel surcharge applied to both the ocean and rail legs of the shipment.  SAC ¶ 70.  Indeed, Horizon's Rate Guide and Item 252 of the Rate Solicitation make clear that Horizon assessed a single combined "Fuel Surcharge."

The Representative Invoice plainly indicates that Horizon assessed a single fuel surcharge rate of $1,430.52 for the entire intermodal shipment.  SAC Ex. E, App. 303.  The corresponding tariff for this intermodal shipment confirms that the assessed fuel surcharge rate of $1,430.52 is the *single combined* fuel surcharge rate, and not simply an ocean fuel surcharge rate as the tariff clearly states that a general "Fuel Adjustment Factor" in effect from July 5, 2009 to October 4, 2009 for all intermodal shipments from Hawaii to Baltimore is 28% or $1,430.52.[4]  *See* Hawaii Tariff 1, 6.

Horizon's intent to assess a single combined "Fuel Surcharge" is further supported by its Rate Guide, which is publicly issued in advance of each military household goods rate cycle to make freight forwarders aware of the costs of hiring the ocean carrier for the given route.  *See* SAC ¶ 40; SAC Ex. C.  According to the Rate Guide, for all transportations of household goods to or from Hawaii to different inland locations in CONUS, there is a generally applied "Fuel Surcharge,"

---

[4] The total amount billed for the fuel surcharge is $470.64, because the invoice refers to a partial shipment (which only occupied one-third of the container), effectively pro-rating the total fuel surcharge at .33 of the total charge, as shown on the right column on the third page of the Representative Invoice.

13

1  and not an ocean-only fuel surcharge.  *See* Ex. C to SAC at 162-63; *see also id*. 161

2  ("All assessorial charges are now applied on a per container basis").

3      In sum, this theory of falsity relies on a selective reading of the

4  Representative Invoice and the relevant regulations.  When the invoice and

5  regulations are considered as a whole, it is clear that Relator's claims fail both as a

6  matter of law and common sense.  *See, e.g.*, *Gonzalez*, 2012 WL 2412080, at *5-6

7  (failing to find a plausible inference of falsity despite allegations that the defendant

8  "hid [its] billing practices" because there were "multiple examples of [d]efendants

9  admitting [their billing practices]" publicly).

10      c.      **Only the GBL submitted by the freight forwarder is**
              **required to state separately the actual fuel surcharges,**
11              **and not the carrier invoice**

12

13      Horizon was under no legal obligation to segregate the ocean fuel surcharge

14  from its other accessorial charges.  Thus, Relator's claims predicated on its

15  assertions that Horizon was so obligated fail as a matter of law.  The SAC relies on

16  Item 432 of the Rate Solicitation to assert that "the freight bill from the ocean

17  carrier must set forth the 'actual amount' of the bunker surcharge and do so

18  'separately' from any other charges."  *See* SAC ¶ 32.  Relator asserts that Horizon's

19  failure to comply with this requirement – *i.e.*, the Representative Invoice fails to set

20  forth separately the fuel surcharge assessed for the ocean transport and the fuel

21  surcharge assessed for the rail transport – is designed to deceive the SDDC and the

22  freight forwarders.  SAC ¶¶ 44, 70-72.

23      But, Horizon has no legal obligation to set forth separately the fuel

24  surcharges on its invoice.  While the Representative Invoice does not separately

25  set forth the rail and ocean components of the fuel surcharges, the invoice is not

26  false or fraudulent in light of the applicable regulations.

27      In this regard, Relator misconstrues the requirements set forth in Item 432.

28  Item 432 provides that "[s]uch [actual] [fuel] charges will be separately stated *on*

*the GBL* and supported by prorated ocean, air Transportation Service Provider or port agent invoices for the actual amount." SAC Ex. A, App. 71 (emphasis added). Thus, the supporting invoices, such as the one attached as Exhibit E, do not need to state separately the different fuel surcharges. Only the GBL that is submitted by the freight forwarders must separately set forth the different fuel surcharges.

According to the "Billing Instructions – Household Goods/Unaccompanied Baggage" on Page 4A-1 of the Rate Solicitation, the GBL is a document that the *freight forwarder* (not carriers such as Horizon) must submit along with copies of commercial bills for shipments to the SDDC. SAC Ex. A, App. 79; *see also* SAC ¶ 22 ("When the shipment is complete, the freight forwarder bills the SDDC for the entire shipment, submitting the completed [GBL]."). Because the freight forwarder that solicited the rates has direct control over the contents and submission of the GBL, Horizon cannot be responsible for the freight forwarders' failure to comply with Item 432. SAC ¶ 22. Thus, even if the Representative Invoice fails to set forth separately the fuel surcharges, this alone cannot impose FCA liability on Horizon, particularly since the invoices bill rates in accordance with the tariff and "support" the actual amount.[5]

_____

[5] The allegation that Horizon failed to state separately the different fuel surcharges on its bills only with respect to shipments for the Hawaii/Guam channel, but not the Puerto Rico channel, fails to demonstrate that Horizon "knowingly made and submitted false bills." SAC ¶ 75. As stated, in the Hawaii trade lane, Horizon had no legal obligation to set forth separately the actual fuel surcharges, and Horizon simply billed according to its approved tariffs. SAC Ex. A, App. 79; *see* SAC ¶ 40. By contrast, the Puerto Rico tariff requires that the fuel surcharges be listed as intermodal (truck and rail fuel surcharges) and bunker fuel surcharges (ocean and dock fuel surcharges). *See* Horizon Puerto Rico Tariff at 15, 17 (Exhibit 2). Thus, the bills for *both* channels are valid under the tariffs. For the same reasons, Relator's allegations that Horizon "dramatically changed its billing practices" (SAC ¶ 89), likewise do not demonstrate that its prior billing practices were false because those billing practices complied with the applicable tariffs and regulations.

## C.   Relator Has Not Plausibly Alleged Horizon's Knowledge of Falsity

In addition to his failure to plead that Horizon made any false or fraudulent statements, Relator has also failed to plead that Horizon acted with the requisite knowledge to violate the FCA.  Not only must a claim be "palpably false," it must also be "known to be a lie when it is made."  *Hendow*, 461 F.3d at 1172; *see also Hindo v. Univ. of Health Sciences/The Chicago Med. Sch.*, 65 F.3d 608, 613 (7th Cir. 1995) ("In short, the claim must be a lie") (citing *Wang v. FMC Corp.*, 975 F.2d 1412, 1420 (9th Cir. 1992)).  To support its claims against Horizon, Relator must plausibly allege that Horizon "knowingly" either (i) presented a false claim or caused one to be presented, or (ii) made, used, or caused to be made or used a false record that is material to a false claim.  31 U.S.C. §§ 3729(a)(1)(A), (B).  Under the FCA, defendants knowingly make false claims by: (1) having actual knowledge, (2) acting in deliberate ignorance, or (3) acting in reckless disregard. *See* 31 U.S.C. § 3729(b).

Relator alleges that Horizon "knew and intended" that freight forwarders would take advantage of Horizon's invoices to receive reimbursement for the full amount of the fuel surcharge in violation of the SDDC regulations because Horizon is a "sophisticated" party that "employ[s] [a] professional staff" with "job responsibilities that include serving the military HHG trade[,] and being familiar" and "well-acquainted with the SDDC rules, including the Rate Solicitation and [the] TR-12,"  SAC ¶¶ 49, 73.  Specifically, Relator claims that Horizon's Director of Government Sales & Marketing, Hugh Healey, had general knowledge of the relevant regulations, SAC ¶ 38, and another employee named "Ed Bertie" [sic] possessed a similar level of knowledge by participating in communications as to "how to deal with [the] TR-12" as a member of an industry trade group called the Household Goods Forwarders Association of America ("HHGFAA").  SAC ¶ 52.

Relator's allegations fail as a matter of law.  First, Relator's allegation that Horizon had actual knowledge by employing a "sophisticated" professional staff

that was "well-familiar" with the relevant regulations fails because knowledge of the relevant regulations (which do not even apply to Horizon) does not equate to knowledge of falsity. *See, e.g.*, *Hagood*, 81 F.3d at 1478 (finding that "to jump from [the allegation] that [the defendant] was sophisticated enough to know [the regulations]" to "the conclusion that [the defendant] knew that the cost allocation in the 1982 contract was false is a leap the evidence does not support"). Similarly, any allegation that Horizon had knowledge of the falsity by virtue of Ed Berti's affiliation with the HHGFAA fails as a matter of law. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023, 1033 (N.D. Cal. 2007) (suggesting that attending industry meetings and having generalized discussions cannot be the basis from which one can infer a conspiracy).

Moreover, liability cannot attach under the FCA when the alleged false claim is premised on a reasonable interpretation of the relevant regulations. *Hagood*, 81 F.3d at 1478; *see also United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 329 (9th Cir. 1995); *United States ex rel. Bane v. Breathe Easy Pulmonary Servs.*, 597 F. Supp. 2d 1280, 1287 (M.D. Fla. 2009) (if "reasonable minds could differ as to whether" the bill was proper, defendant "did not knowingly submit a false claim."). As discussed, a reasonable interpretation of the Rate Solicitation and the TR-12 leads to the conclusion that they are not applicable to Horizon. *See* Section III.B.1, *supra*. Even if the regulations did apply, the most sensible interpretation of the Rate Solicitation is that only the GBL, and not the "supporting documentation," must separately set forth the actual fuel surcharges. SAC Ex. A, App. 71.

Most importantly, it was reasonable for Horizon to believe that its invoices were not false because they complied with its approved tariffs. *See* SAC ¶ 40. Operating under this reasonable interpretation, Horizon simply could not have known that its claims were objectively false, or that it was knowingly assisting in the submission of false claims. *See, e.g.*, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S.

47, 68-70, 127 S. Ct. 2201, 2215-16, 167 L. Ed. 2d 1045, 1065-67 (2007) (clarifying that an objectively reasonable interpretation of the applicable regulations forecloses the possibility that scienter is met); *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d at 997 (finding defendants who submitted false claims under the belief that its actions fell under an exception to the statute did not necessarily have knowledge of falsity); *United States ex rel. Lockyer v. Hawaii Pac. Health Grp. Plan*, No. 07-17174, 2009 WL 270321 (9th Cir. Aug. 27, 2009) (good faith interpretation of regulations did not give rise to FCA liability); *see also Hendow*, 461 F.3d at 1174 (under the FCA's scienter requirement "[i]nnocent mistakes, mere negligent misrepresentations and differences in interpretations" do not give rise to liability).

## D.    Relator Failed to Plead Adequately That Horizon Caused the Submission of False or Fraudulent Claims for Payment

Relator has also failed to allege properly causation.  To be held liable under Section 3729(a)(1)(A), a defendant must knowingly "present[]" or "cause[] to be presented" a false claim to the government.  31 U.S.C. § 3729(a)(1)(A).  Thus, even if the Court were to accept that the Rate Solicitation and the TR-12 apply to ocean carriers, Horizon cannot be liable under Count 1 unless Horizon "caused" the freight forwarders to submit the invoices to the SDDC as part of its false claims for reimbursement.  Relator cannot satisfy his burden.

Relator offers two theories of causation.  The first involves freight forwarders such as Cartwright, who Relator alleges "knowingly submitted . . . false writings prepared by the Ocean Carrier Defendants" despite "kn[owing] that the freight bills or invoices submitted to them by the Ocean Carrier Defendants included inaccurately labeled fuel surcharges and fuel surcharges on rail and other line haul transportation."  SAC ¶ 47.  Relator adds that, by virtue of Horizon's pre-existing billing practices, which as of 2007 "already combined both the ocean or bunker fuel surcharge and the overland or rail surcharge, and specifically and falsely labeled

the combined surcharge as a 'BS' or bunker surcharge," Horizon assisted

Cartwright in preventing the SDDC from detecting the alleged fraud.  SAC ¶ 59.

Relator's second causation theory involves so-called and unnamed "innocent" freight forwarders who were "deceived" by Horizon's invoices. Specifically, Relator alleges that Horizon, armed with the knowledge that SDDC and government personnel would review its invoice, designed the invoice in a manner that both conceals the disallowed portion of the fuel surcharge and prevents freight forwarders from determining what portion of the surcharge is disallowed. SAC ¶¶ 73-74.  That is, even "if a freight forwarder wanted to be sure to comply with the Rate Solicitation and TR-12, and to subtract any portion of the surcharge," the allegation is that Horizon intended to "prevent[] the freight forwarder from doing so and thereby cause[] the freight forwarder to submit a false and inflated bill to the SDDC."  SAC ¶ 74.

These causation theories fail as a matter of law.

## 1.     Horizon Did Not Knowingly Assist Freight Forwarders in Submitting False Claims to the SDDC

Relator concedes that Horizon does not have contractual privity with the SDDC.  SAC ¶ 19.  As a result, Relator must allege that Horizon indirectly caused the freight forwarders to submit false claims for payment to the SDDC.  Indirect liability can only be imposed "on defendants who have no direct contact with the government" when those defendants "knowingly assisted in causing the submission of the false claim."  *United States ex rel. Mason v. State Farm Mut. Auto Ins. Co.*, No. CV07-297-S-EJL, 2008 U.S. Dist. LEXIS 56218, at *11 (D. Idaho July 23, 2008); *see United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001); *see also United States ex rel. Drescher v. Highmark, Inc.*, 305 F. Supp. 2d 451, 460 (E.D. Pa. 2004) (cautioning that the FCA does not give relator "carte blanche to proceed under the FCA using indirect theories of causation which offer only attenuated links between the parties").  Some courts have also applied "but for" or "proximate

cause" tests developed under the common law of torts to establish liability under the FCA. *See United States v. Bornstein*, 423 U.S. 303, 313, 96 S. Ct. 523, 530, 46 L. Ed. 2d 514, 524 (1976) (applying a "but for" test when, if the defendant had not engaged in the activity, the third party would not have occasion to submit the false claim); *United States v. McLeod*, 721 F.2d 282, 284 (9th Cir. 1983) (applying the proximate cause test to assess an indirect defendant's FCA liability).

Under either theory, Relator wholly fails to allege specific facts that demonstrate that Horizon knowingly assisted, in any manner, the freight forwarders in perpetrating a fraud against the SDDC, or was otherwise a proximate cause of the submission of false claims. For instance, Relator fails to allege that Horizon has any control or influence over the freight forwarders' billings to the SDDC. Relator also fails to allege that Horizon coordinated with the freight forwarders' billing department, or that it participated in any manner in assisting the freight forwarders' submissions of claims to the SDDC.[6] Without these facts, Relator cannot establish causation as a matter of law. *See Bane,* 597 F. Supp. 2d at 1292 (holding that, when defendant "had no control over [co-defendant's] claims procedures, gave no suggestion or instruction to [the co-defendant] regarding its . . . submissions, and in no way participated in [the co-defendant's] submission of bills to [the government]," then "the direct causal link is missing").

Further, FCA liability cannot be imposed on Horizon merely because it provided freight forwarders with lawful bills in accordance with the tariff, and the freight forwarders then used those bills as part of their claim. *See id.* at 1291 ("Here, there is no evidence that [the defendant] did anything other than forward completed order forms and prescriptions [to the co-defendant]"); *see also United States ex rel. Perry v. Hooker Creek Asphalt & Paving, LLC*, No. 08-6307-HO,

---

[6] Indeed, Relator's decision to omit Horizon from the conspiracy claim (Count 3) tacitly concedes that Horizon played no role in the freight forwarders' submission of claims to the SDDC.

1  2011 U.S. Dist. LEXIS 144522, at *23-24 (D. Or. Dec. 13, 2011) (holding that
2  FCA claim failed as matter of law because "complaint explicitly alleges that
3  [an intermediary] paid defendants and that the government reimbursed
4  [the intermediary]" and there were "insufficient allegations of what statements were
5  made to the [intermediary]" and "what statements [were] passed on to the federal
6  government").

### 2.  Relator's Contention that Horizon's Invoices Caused "Innocent" Freight Forwarders to Submit False Claims Fails for the Additional Reason that Relator's Allegations Are Contradictory

Relator's claim that Horizon deceived so-called "innocent" freight
forwarders should also be rejected.  In deciding a motion to dismiss, the Court
"need not accept as true allegations that contradict facts . . . as matters of public
record [filed with administrative bodies] . . . and [as contained in] exhibits attached
to the complaint."  *Sumner Peck Ranch*, 823 F. Supp. at 720; *see also Schwenk
v. Cnty. of Alameda*, 364 F. App'x 336, 337 (9th Cir. 2010).

Here, the Court need not accept as true Relator's conclusory and speculative
allegations that Horizon's false invoices "deceive[d]" "innocent" freight forwarders
into believing that the invoices only assessed a fuel surcharge on ocean
transportation, SAC ¶ 76, because Relator also acknowledges that Horizon issued
Rate Guides that made freight forwarders aware that Horizon charges a single
combined fuel surcharge for all intermodal household goods shipments.  SAC ¶ 40.

Relator avers that Horizon and other ocean carriers periodically issue Rate
Guides, which publish their rates for the shipment of military household goods.
SAC ¶ 39.  For example, Horizon's Rate Guide for "Winter Cycle 2007," makes it
abundantly clear that Horizon assessed a single combined fuel surcharge – *i.e.*, 24%
for the winter of 2007 – for all shipments to and from Hawaii, including intermodal
shipments.  SAC Ex. C, App. 166-68.  The corresponding tariff, which is
referenced in the Rate Guide, also provides this same information.  *See* SAC ¶ 40.

21

1    Accordingly, freight forwarders cannot have been "deceived" because, as Relator

2    admits, "the freight forwarders [] use [the Rate Guide] to prepare their bids to

3    the SDDC."  SAC ¶ 28.  Contrary to Relator's claims, the tariff and the Rate Guide

4    fully inform the freight forwarders that the invoice's fuel surcharge rate applied

5    to the entire intermodal shipment because they had chosen these intermodal rates

6    themselves.

7         Similarly, Relator's allegations that Horizon's invoices "prevented" freight

8    forwarders from "determining what portion of the surcharge was disallowed"

9    cannot be accepted as true because these allegations are contradicted by other

10   portions of the SAC.  *See* SAC ¶ 74.  As discussed, ocean carriers publish their

11   rates *before* freight forwarders make an independent decision to use the rates in

12   submitting their bids to the SDDC.  SAC ¶ 28.  In other words, from the outset

13   of the solicitation process, the freight forwarders were fully aware that Horizon

14   assessed a single combined intermodal fuel surcharge, which, under SDDC policy,

15   is not reimbursable unless the surcharge is separately listed.  Yet, Relator makes no

16   allegations that the freight forwarders requested Horizon to segregate the different

17   fuel surcharges or otherwise seek other rates.  Without these additional allegations,

18   it was not Horizon's invoices that prevented freight forwarders from submitting

19   valid claims to the SDDC, but the freight forwarders' independent decisions to use

20   Horizon's combined rates – despite being fully aware that the surcharges for rail

21   fuel could not be passed through to the government – that prevented the freight

22   forwarders from submitting valid claims to the SDDC.  *See United States ex rel.*

23   *Westerfield v. Univ. of San Francisco*, No. C 04-03440 JSW, 2006 U.S. Dist.

24   LEXIS 15276, at *9 (N.D. Cal. Feb. 14, 2006) ("[Relator] may only allege

25   additional facts that are consistent with the complaint."); *see also Zeman v. USC*

26   *Univ. Hosp.*, No. CV 11-05755, 2013 U.S. Dist. LEXIS 79910, at *6 (C.D. Cal.

27   June 6, 2013) (granting motion to dismiss FCA action on the grounds that the

28   relator's argument contradicted the allegations in the first amended complaint).

1       Thus, Horizon's invoices could not have caused the freight forwarders to

2  submit false claims to the SDDC.[7]

3      **E.    Relator's Claims Against Horizon Fail to Meet the FCA's**

            **Heightened Pleading Requirements Pursuant to Rule 9(b)**

4

5       Relator's claims against Horizon also must be dismissed because they fail

6  to meet the heightened pleading burden under Rule 9(b). *See Bly-Magee*

7  *v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). To satisfy Rule 9(b), a relator

8  must "state with particularity the circumstances constituting fraud . . . including

9  the who, what, when, where, and how of the misconduct." *United States ex rel.*

10  *Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Moreover, the reviewing

11  court should "decline to make inferences about submission of fraudulent claims

12  because such assumption would strip all meaning from Rule 9(b)'s requirements

13  of specificity." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005).

14  Here, Relator's allegations against Horizon are at best conclusory and lack the

15  specifics necessary for Relator to pursue this action. *See Moore v. Kayport*

16

_____

17  [7] Similarly, Relator's § 3729(a)(1)(B) claim against Horizon fails because the

18  alleged false statements were not material to a false or fraudulent claim. The term

   "material" is defined as "having a natural tendency to influence, or be capable

19  of influencing, the payment or receipt of money or property." 31 U.S.C.

20  § 3729(b)(4). Horizon's invoices are not material to the freight forwarders'

   decision to pay because Horizon simply billed according to the rates contained in its

21  approved tariffs, of which the freight forwarders were previously made aware.

22  *See* SAC ¶ 40. Similarly, Horizon's invoices could not be material to the SDDC's

   decision to pay because the SDDC's payment decision is based primarily on the

23  contents of the GBL, which is submitted by the freight forwarder. SAC ¶ 22.

24  Moreover, the line-haul rate, and not the fuel surcharge, was material to the

   SDDC's decision to reimburse the freight forwarders. Accordingly, the portion

25  of the fuel surcharge attributable to inland transport could not form the basis of a

26  false claim because no payment by SDDC to the freight forwarder depended on the

   characterization or amount of that fuel surcharge. *See Kitsap Physicians*, 314 F.3d

27  at 1002 (FCA "'requires the presence of a claim – a call upon the government fisc –

   for liability to attach'") (quoting *Harrison v. Westinghouse Savannah River Co.*,

28  176 F.3d 776, 785 (4th Cir. 1999)).

1  *Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("Mere conclusory

2  allegations of fraud are insufficient.").

3       Relator's threadbare allegations of the alleged fraudulent scheme are

4  deficient.  Most notably, Relator fails to specify in the requisite detail "who"

5  at Horizon perpetrated the supposed fraud.  Rather, Relator does not mention any

6  specific individuals at Horizon that were knowingly complicit in the fraudulent

7  scheme with the freight forwarders.  Relater makes a conclusory statement that

8  Horizon's Director of Government Sales & Marketing was generally aware of the

9  Rate Solicitation.  *See* SAC ¶ 38.  But that does not provide the necessary details to

10  satisfy the "who" element of a Rule 9(b) analysis because there are no allegations

11  that this individual participated in any way with any freight forwarder to submit

12  false claims.

13       Relator also notes that Ed Berti of Horizon belonged to a committee of the

14  HHGFAA, along with representatives from Cartwright and Matson.  *See* SAC ¶ 52.

15  This too fails to inject the necessary specificity as to "who" at Horizon engaged

16  in misconduct, as well as "where" the misconduct occurred.  Tellingly, the SAC

17  contains no specific allegations that Berti knew of or otherwise participated in

18  fraudulent acts on behalf of Horizon.  Membership in the HHGFAA, alone, does

19  not equate to Horizon engaging in fraudulent conduct.  Rather, attendance at

20  industry trade show and events "is presumed legitimate and is not a basis from

21  which to infer a conspiracy, without more."  *In re Graphics*, 527 F. Supp. 2d

22  at 1023.  This "mere label and conclusion" is insufficient to satisfy the pleading

23  standards of Rule 8, let alone the requirements of Rule 9(b).

24       As for "when" the fraudulent conduct occurred, Relator fails to present

25  specific dates.  Instead, he generally alleges a six-year time frame, from January

26  2007 through May 2013.  *See* SAC ¶ 67.  This is nothing more than a blanket

27  assertion and fails Rule 9(b)'s standards.  This Court has previously found that

28  pleading such generic timeframes is insufficient.  *See United States ex rel. Serrano*

24

DEFENDANT HORIZON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*v. Oaks Diagnostics, Inc.*, 568 F. Supp. 2d 1136, 1143 (C.D. Cal. 2008) ("[A]llegations that all claims submitted during an almost four year period were fraudulently submitted is insufficient particularity to satisfy the 9(b) pleading standard."). Furthermore, Relator's chart listing his approximation of the number of yearly false claims submitted as a result of Horizon shipments does not help Relator vault the high Rule 9(b) threshold. *See United States ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F. Supp. 2d 35, 45 (D. Mass. 2000) (stating that Rule 9(b) "requires greater specificity than statistical analysis"). Simply put, Relator relies on nothing more than conclusory statements, assumptions, and unfounded legal conclusions. Relator's claims fail under Rule 9(b) as a matter of law.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Horizon respectfully requests that the Court dismiss Relator's claims against Horizon contained in the SAC with prejudice.

DATED:  September 16, 2013         BLANK ROME LLP

By: */s/ Arti L. Bhimani*
                    NICHOLAS C. HARBIST
                    PAUL M. HONIGBERG
                    ARTI L. BHIMANI
                    Attorneys for Defendant
                    HORIZON LINES, LLC