GOODIN, MACBRIDE, SQUERI,
DAY & LAMPREY, LLP
Wayne T. Lamprey, Bar No. 095408
        wlamprey@goodinmacbride.com
Anne Hayes Hartman, Bar No. 184556
        ahartman@goodinmacbride.com
505 Sansome Street, Suite 900
San Francisco, California  94111
Telephone:   (415) 392-7900
Facsimile:   (415) 398-4321

Attorneys for Plaintiff-Relator
Mario Rizzo

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Mario RIZZO,<br><br>                    Plaintiff,<br><br>v.<br><br>HORIZON LINES, LLC, et al.,<br><br>                    Defendants. | Case No. 2:10-CV-07409-PA-AJW<br><br>**EX PARTE APPLICATION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT; DECLARATION OF W. LAMPREY** |

**APPLICATION TO FILE THIRD
AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................ 1

II.  EX PARTE RELIEF IS WARRANTED .............................................. 2

    A.   Plaintiff Will Be Irreparably Prejudiced if his Request for Leave to Amend is Not Ruled Upon Before the Hearing Scheduled For October 21 ...................................................................................... 2

    B.   The Plaintiff is Without Fault in the Need for Ex Parte Relief ........... 4

    C.   Plaintiff Has Provided Proper Notice ................................................. 5

III. PLAINTIFF IS ENTITLED TO LEAVE TO AMEND ....................... 5

    A.   Leave to Amend is Liberally Granted ................................................ 5

    B.   Plaintiff has Received a Substantial Body of Evidence and Prepared a Third Amended Complaint that adds Further Detailed and Compelling Allegations that Eviscerate the Carrier Defendants' Primary Objections and Defense ...................................... 6

    C.   Plaintiff's Proposed Third Amended Complaint Drops a Defendant and the Conspiracy Claim ............................................. 10

    D.   Defendants Will not be Unduly Prejudiced by the Amendment ........ 11

IV.  CONCLUSION ................................................................................ 11

DECLARATION OF WAYNE T. LAMPREY ....................................... 12

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## I.   **INTRODUCTION**

2   Plaintiff seeks leave on an *ex parte* basis to file a Third Amended Complaint

3   ("TAC"), lodged with this application.  Two of the three named defendants, Matson

4   Navigation, Inc. ("Matson") and Cartwright International Van Lines, Inc.

5   ("Cartwright") agreed to stipulate to the filing of a TAC and take their motions to

6   dismiss, set for hearing on October 21, 2013, off calendar.  However, Defendant

7   Horizon Lines, LLC ("Horizon"), has not stipulated to the filing of a TAC.  Hearing

8   on the motions to dismiss is days away, and Plaintiff has just received additional

9   evidence permitting an amendment which would address the issues raised in the

10  motions to dismiss.  *Ex parte* relief is sought in order to resolve this in advance of

11  the hearing on defendants' motions to dismiss the Second Amended Complaint.

12  Plaintiff is making this application at the earliest opportunity, having received the

13  additional evidence from one of the defendants in this matter, as part of settlement

14  discussions initiated after briefing on the present motions to dismiss was concluded.

15  The proposed TAC would 1) drop Cartwright as a defendant; 2) drop the

16  current Third Cause of Action for Conspiracy; and 3) incorporate substantial

17  additional factual allegations based on evidence provided by Cartwright to Plaintiff

18  on October 10, 2013.  Good cause for leave to file the TAC, and for an expedited

19  resolution of this matter, plainly exists:

20  - The evidence provided by Cartwright enables Plaintiff to further detail

21    how defendants Horizon and Matson (collectively, "Carriers") "caused"

22    freight forwarders to present false claims to the government, doing away

23    with the Carriers' chief objection to the present Second Amended

24    Complaint ("SAC").

25  - In dropping Cartwright and the existing conspiracy claim, the TAC trims

26    the case overall and the scope of any motion to dismiss that may later be

27    filed.

28  - The Carriers may decide not file further motions to dismiss, and even if

**APPLICATION TO FILE THIRD
AMENDED COMPLAINT**

1   they do, an amended complaint will permit the Court to resolve any such

2   motion in the context of more detailed allegations about how the Carriers

3   caused the submission of false claims, and avoid any need to consider or

4   rule on the current conspiracy charge and claims against Cartwright.

5   • Plaintiff acted immediately upon receiving this new evidence from

6   Cartwright, and asked the Carrier s to stipulate to the filing of a an

7   amended complaint and to take their present Motions to Dismiss off

8   calendar the morning after reviewing the new evidence.  To avoid wasting

9   judicial resources, and to ensure a review of Plaintiff's claims in the

10   context of allegations that reflect the evidence now available, Plaintiff

11   must file a Third Amended Complaint in the next few days, before the

12   scheduled hearing date for the pending motions to dismiss the SAC.

13   As said above, defendants Cartwright and Matson have stipulated to the

14   filing of a Third Amended Complaint, and will not oppose the relief sought in this

15   Application.  Defendant Horizon has not stipulated, and Plaintiff is unaware of

16   whether Horizon will oppose this application.

17   II.   **EX PARTE RELIEF IS WARRANTED**

18   A.   **Plaintiff Will Be Irreparably Prejudiced if his Request for Leave to Amend is Not Ruled Upon Before the Hearing Scheduled For**
19   **October 21**

20   Motions to dismiss Plaintiff's current SAC have been filed and briefed, and

21   the hearing is set for Monday October 21, 2013.  (Dec. of W. Lamprey, attached

22   hereto ("Lamprey Dec.") ¶2)  The action concerns claims against two ocean

23   shipping companies – Horizon and Matson – and a freight forwarding company,

24   Cartwright.  Horizon and Matson are alleged to have violated the False Claims Act

25   by "causing" Cartwright and other freight forwarders to submit false and inflated

26   bills to the government.  Specifically, the Carriers are alleged to have included in

27   their freight bills to freight forwarders, fuel surcharges that included a surcharge the

28   forwarders were not permitted to bill to the government.  Freight forwarders, it is

GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   alleged, were generally unaware the surcharges imposed by the Carriers included

2   the prohibited surcharge, and unwittingly passed it through to the government.  The

3   Carriers, in contrast, it is alleged, intended this result and designed their freight bills

4   to mislead the forwarders and the government.

5           In their motions to dismiss, the Carriers contend that it is implausible that

6   they caused Cartwright and other freight forwarders to overcharge the government.

7   The Carriers argue that the freight forwarders made "independent decisions" to

8   defraud the government.  In short, the Carriers point their fingers at and seek to

9   shift blame to the freight forwarders for what are now admitted overcharges.

10          Affronted by the Carriers' efforts to shift the blame, in the past week co-

11  defendant Cartwright decided to fight back.  Cartwright's lawyers gathered

12  evidence to refute the Carriers' argument that Cartwright knew the Carriers freight

13  bills included prohibited charges and deliberately overcharged the government, and

14  on Thursday, October 10, provided it to the Plaintiff.  (Lamprey Dec. ¶3)

15          The evidence Cartwright has supplied to the Plaintiff demolishes the Carrier

16  Defendants' contention that the allegations in the SAC are implausible.  More to the

17  point, using that evidence Plaintiff has prepared a TAC that adds substantial and

18  conclusive detail to the allegations already made.  While the SAC is detailed and

19  the allegations are well founded and plausible, there is no good reason to deny the

20  Court the benefit of evidence a defendant has come forward to supply, and

21  allegations keyed off that evidence, as the Court considers whether this action

22  should proceed. Plaintiff risks prejudice if the pending motions proceed to hearing

23  based on the current SAC.  It likewise would correspondingly be unjust to require

24  Plaintiff to run the risk of a ruling on the Carriers' motions without this evidence –

25  or more precisely without allegations based upon this evidence – before the Court.

26  Simply stated, while the Carriers have in their motions offered a competing version

27  of the facts and argued that the allegations in the SAC are implausible, the evidence

28  provided by Cartwright makes it crystal clear that the facts as alleged by the

Plaintiff are far beyond plausible, and the Carriers' version is not only implausible, but improbable.

### B.    The Plaintiff is Without Fault in the Need for *Ex Parte* Relief

While the need for *ex parte* consideration of Plaintiff's motion is unfortunate, it is not of Plaintiff's doing.  Motivated by the factual contentions made by the Carriers, Cartwright's counsel contacted Plaintiff only after the Carriers had submitted their Motions to Dismiss and supporting briefs, and counsel for Plaintiff and Cartwright met as soon as possible, last Thursday, October 10.  (Lamprey Dec. ¶3)  Plaintiff's counsel reviewed the evidence that day and evening, and contacted the Carriers' counsel the next morning, Friday the 11th.  (Lamprey Dec. ¶¶4-5)  Nor could Plaintiff have discovered the evidence involved earlier.  Plaintiff has been pressing defense counsel to participate in a Rule 26(f) scheduling conference for the past few months, so Plaintiff could initiate discovery.  Defendants steadfastly declined to do so, and recently advised that they intended instead to seek a stay of discovery.[1]

In sum, *ex parte* relief is called for as the Plaintiff would be irreparably harmed if his Motion for Leave to Amend was heard as a noticed motion and the hearing the pending Motions to Dismiss were to proceed without the Court being aware of the evidence reviewed above; and the Plaintiff is without fault in creating the circumstances that require ex parte relief.  Mission Power Engineering v Continental Casualty, 883 F. Supp. 488 (C.D. Cal. 1995)(Edwards, J.).

---

[1] Because defendants refused to participate in a Rule 26(f) conference without one, Plaintiff asked the Court to schedule a Scheduling Conference.  (Dkt. No. 78)  The Court subsequently did so, setting the conference for November 18, 2013, (Dkt. No. 88) but now the defendants have advised that they still are planning to move for a stay of discovery.  (Lamprey Dec. ¶5, Exh. A)  Moreover, based on the date of the Scheduling Conference, Plaintiff cannot force Defendants to participate in a Rule 26(f) conference until October 22, the day after the scheduled hearing on the pending motions.  So far, defendants have successfully stymied Plaintiff's efforts to begin discovery.

GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**C.      Plaintiff Has Provided Proper Notice**

Plaintiff's counsel asked that the Carriers stipulate to the filing of a Third Amended Complaint, and take off calendar their pending motions to dismiss.[2] (Lamprey Dec. ¶5)  Defendants were further informed on Friday, October 11, that, given the impending motions to dismiss, if a stipulation was not reached, Plaintiff would file an *ex parte* application on the next court day, Tuesday, October 14.  (Id., and Exh. A thereto)  While counsel for Matson advised on Monday that it was willing to enter into the stipulation submitted herewith, counsel for Horizon advised that they were unwilling to do so.  (Lamprey Dec. ¶6)  Pursuant to Local Rule 7-19, Plaintiff has given notice to all parties of this *ex parte* application.  (Lamprey Dec. ¶7 and Exh. A thereto)

**III.   PLAINTIFF IS ENTITLED TO LEAVE TO AMEND**

**A.      Leave to Amend is Liberally Granted**

The two ocean shipping company defendants, Horizon and Matson, have in their motions to dismiss admitted the core of the claim against them.  Specifically they have acknowledged that their freight bills contained a prohibited rail surcharge and that the government was overcharged unspecified millions of dollars, as set forth in more detail below.  Having admitted that the government was overcharged and unwittingly paid prohibited surcharges, the Carriers premise their pending Motions to Dismiss on the argument that the parties to whom the Carriers submitted their freight bills, and who in turn "passed through" to the government the prohibited charges, freight forwarders, are solely at fault and alone have liability.

Faced with the Carriers' effort to shift fault and, as we detail below, factual contentions that are flatly untrue, the third defendant, freight forwarder Cartwright, decided to fight back and has *in the past week provided Plaintiff with key items of*

---

[2] Plaintiff's counsel noted that in order to avoid needless work for the Court, Local Rule 7-16 required advising the Court that a motion is being withdrawn seven court days in advance of the scheduled hearing, and that the Court would be closed on Monday the 14th.  (Lamprey Dec. ¶5, Exh. A)

APPLICATION TO FILE THIRD
AMENDED COMPLAINT

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*evidence* that demolish the Carriers' central defense.  (Lamprey Dec. ¶¶3-4)

Rule 15 provides that where a plaintiff has earlier amended his complaint, he may further amend:  "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A noticed motion is not required for the Court to grant leave.  Scott v. Eversole Mortuary, 522 F. 2d 1110, 1116 n.8 (9th Cir. 1975); Edwards v. Occidental Chemical Corp, 892 F. 2d 1442, 1445-46, n. 2 (9th Cir. 1990).  Amended complaints are to be permitted with "extreme liberality," Eminence Capital, LLC v. Aspeon, Inc., 316 F. 3d 1048, 1051 (9th Cir. 2003), and granted absent "undue delay, bad faith or dilatory motive[,] . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962).  Of these factors, "consideration of prejudice to the opposing party . . . carries the greatest weight." Eminence Capital, 316 F.3d at 1052.

### B.   Plaintiff has Received a Substantial Body of Evidence and Prepared a Third Amended Complaint that adds Further Detailed and Compelling Allegations that Eviscerate the Carrier Defendants' Primary Objections and Defense

The interests of justice will be served by allowing Plaintiff to amend his complaint.  The SAC alleges that the Carriers created freight bills that included a prohibited fuel surcharge on shipments by rail ("rail surcharge"), but concealed that surcharge by making it part of an allowed surcharge for fuel used by ships, "bunker" fuel.  Freight forwarders who contracted with the federal government and subcontracted with the Carrier Defendants, upon receipt of the Carrier Defendants' freight bills "passed through" the full amount of the stated fuel surcharge, including the prohibited rail surcharge.

The Carrier Defendants do not dispute:  that their bills to freight forwarders included a single fuel surcharge, a portion of which was the prohibited rail

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

surcharge;[3] that the freight forwarders were prohibited from passing through the rail surcharge to the government;[4] that the Carrier Defendants did not provide the freight forwarders with the information they needed to deduct the prohibited rail surcharge before billing the government;[5] and that the freight forwarders passed through the prohibited surcharge.

Instead, to counter the central claim in the SAC – that they "caused" the freight forwarders to submit false claims to the government – the Carriers argue that the freight forwarders made "independent decisions" to defraud the government. Horizon, for example, contends that:

> [I]t was not Horizon's invoices that prevented freight forwarders from submitting valid claims to the SDDC, but the freight forwarders independent decisions to use Horizon's combined rates -- despite being fully aware that the surcharges for rail fuel could not be passed through to the government -- that prevented the freight forwarders from submitting valid claims to the SDDC.

(Horizon Mem., Dkt. No. 86 at 22:18-22)  The Carriers argue that the allegations in the SAC that they caused the forwarders to submit false claims are not plausible, because, the Carriers contend, their freight bills "plainly were not [deceptive]" and "were not misleading."  (Matson Reply Mem., Dkt. No. 96 at 3:10-11, 14-15)   The Carriers contend it is implausible freight forwarders understood the surcharges on the Carriers' freight bills to include only an allowable "bunker" surcharge (and not a prohibited rail surcharge), and that accordingly the SAC should be dismissed.

---

[3] Horizon notes that the purported bunker or ocean fuel surcharge on its freight bills in fact is a "single combined fuel surcharge rate and not simply an ocean fuel surcharge rate . . . ." (Horizon Mem., Dkt. No. 86 at 13:14-15)

[4] Horizon acknowledges that, "Horizon assessed a single combined intermodal fuel surcharge, which, under SDDC policy, is not reimbursable unless the surcharge is separately listed," and, "that the surcharges for rail fuel could not be passed through to the government . . . ."  (Horizon Mem., Dkt. No. 86 at 22:13-15 and 20-21)

[5] Horizon notes that the Complaint alleges that the Horizon invoice attached to the Complaint, "fails to set forth separately the fuel surcharge assessed for the ocean transport and the fuel surcharge assessed for rail transport . . . ."  Horizon admits this to be true, saying that its "[i]nvoice does not separately set forth the rail and ocean components of the fuel surcharges . . . ." (Horizon Mem., Dkt. No. 86 at 14:19-20, 24-25)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1        The SAC already contains abundant allegations supporting the central charge

2   that the Carriers' conduct and freight bills mislead and caused freight forwarders to

3   pass through prohibited surcharges.[6]  The evidence the Carriers' finger-pointing

4   inspired Cartwright to supply, however, leaves no doubt about the veracity or

5   plausibility of the allegations in the SAC.   More to the point, armed with this

6   additional evidence, Plaintiff has prepared a Third Amended Complaint that

7   includes additional details that make the allegations unassailable.

8        For example, attached to the SAC is a sample freight bill from Horizon.  On

9   that bill, Horizon identifies the surcharge at issue as a "BS Fuel Surcharge."  The

10   SAC alleges: "'BS' means 'bunker surcharge;' indeed the SDDC Rate Solicitation

11   itself abbreviates 'bunker surcharge as 'BSC.'  As the fuel surcharge here includes

12   a fuel surcharge on the rail transport – and train fuel is not bunker fuel – this label

13   in the bill is false and fraudulent."  (SAC ¶70)  Horizon challenges this allegation,

14   arguing generally that it is implausible and should be rejected.  Horizon goes even

15   one step farther asserting that because the sample bill uses the abbreviation "BS"

16   and not "BSC" (the abbreviation form the Rate Solicitation) that by "labeling the

17   surcharge as a 'BS Fuel Surcharge' [Horizon] put the freight forwarder on notice

18   that it [the surcharge] was not limited to ocean fuel."  Horizon invokes that as a

19   reason the allegation this label is false should be rejected.  (Horizon Reply Mem.,

20   Dkt. No. 98 at 2:12-20)

21        Horizon's contention is demolished by the evidence Cartwright has supplied.

22   Affronted by Horizon's assertion that it could not possibly have understood "BS

23   Fuel Surcharge" to mean a bunker surcharge, Cartwright has come forward with

24   example after example of freight bills from Horizon that indisputably equate "BS"

25   with a bunker surcharge.  Attached to the TAC as Exhibit F are Horizon freight

26   bills that describe the fuel surcharge assessed as a "BS BUNKER SURCHARGE,"

27

28   _____

[6] See e.g. Plaintiff's Mem., Dkt. No. 93 at 10-16, 20-28.

GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**APPLICATION TO FILE THIRD AMENDED COMPLAINT**

including bills from 2004, 2005, 2006, 2007, and 2008.  Having received hundreds of freight bills that specifically equate "BS" with "Bunker Surcharge" it is beyond simply plausible that Cartwright and some 200 other freight forwarders understood "BS" to mean bunker surcharge.[7]

The allegation in the SAC that freight forwarders understood the surcharge on Horizon's freight bills to be a bunker surcharge can also now be buttressed by multiple examples of the false claims prepared by both Cartwright and Daycos, the largest billing agent for freight forwarders.  Examples of freight forwarder claims for payment to the SDDC that were prepared by Cartwright and Daycos are attached as Exhibit A to the TAC.  In each and every instance, Cartwright and Daycos passed through to the SDDC the full amount of the "BS Bunker Surcharge," or "BS fuel Surcharge" that Horizon imposed.  The TAC will put to rest any reasonable dispute concerning whether freight forwarders could have understood a "BS fuel surcharge" to be a bunker surcharge. Clearly they did, and it was more than reasonable for them to do so.

Evidence from Cartwright also confirms that the allegations Matson caused freight forwarders to submit false and inflated claims to the SDDC are plausible (and indeed true).  In addition to the already abundant supporting details alleged in the SAC, the TAC includes multiple new allegations concerning how Matson caused freight forwarders to overcharge the SDDC.  Among these is an email to Cartwright in which, in answer to a question about fuel surcharges, Matson expressly states that for the type of shipments at issue here, intermodal shipments with a single fuel surcharge, freight forwarders "*can bill the US Government for full*

---

[7] The Horizon freight bill attached to the SAC was dated September 23, 2009.  It appears Horizon may have changed the description from "BS  Bunker Surcharge" to "BS Fuel Surcharge" sometime in 2009.  Such a change would not make it implausible that freight forwarders continued to interpret "BS" to mean a bunker surcharge.  Indeed, such a change in practice would serve only to demonstrate guilty knowledge and intent, and Horizon offers no other or innocent explanation.

**APPLICATION TO FILE THIRD
AMENDED COMPLAINT**

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*fuel recovery*."  (TAC ¶71, emphasis added)  Matson is here specifically advising a

freight forwarder that it and other forwarders can pass through to the government

the "full" surcharge for a "full fuel recovery."  This single item of evidence and

related allegation completely belie Matson's contention freight forwarders could

not have understood Matson's fuel surcharge to be fully reimbursable.  Other new

allegations include references to:  a) multiple writings in which Matson equated its

fuel surcharge with a bunker surcharge and represent that the surcharge was based

upon the consumption of fuel by ships (and not trains)(TAC ¶¶70, 72); and, b)

communications between Cartwright and Matson in which Cartwright made it clear

it intended to pass through the full surcharge Matson assessed but Matson did not

alert Cartwright that a portion of the surcharge was for rail transport or otherwise

protest.  (TAC ¶71)  Also demonstrating that the allegation Matson caused the

submission of false claims is plausible are bills from Cartwright and Daycos to the

SDDC passing through the full fuel surcharge Matson assessed.  (TAC Exh. A)

Statements made on his blog by Brandon Day of Daycos, a billing agent for a

substantial portion of the 200 some freight forwarders, that he always understood

the Matson "fuel related surcharge" to be a bunker surcharge, are also added and

support the general allegations of causation.  (TAC ¶65)

## C.   **Plaintiff's Proposed Third Amended Complaint Drops a Defendant and the Conspiracy Claim**

Leave to file the TAC should also be granted as Plaintiff has agreed to seek

Cartwright's dismissal and the TAC accordingly no longer contains claims against

Cartwright.  No good purpose would be served by proceeding with a complaint that

includes a defendant and a claim that Plaintiff is prepared to dismiss.[8]  Granting

---

[8] Plaintiff intends to dismiss the claims against Cartwright, but as this is a False Claims action, must first obtain the consent of the United States and the Court.  This creates an unusual procedural issue. Because of the need to present this motion to the Court without undue delay and before the hearing on the pending Motions to Dismiss (scheduled for October 21), Plaintiff has prepared this motion and the proposed TAC, and intends immediately to seek consent to

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

leave to file the TAC will conserve time and effort for the Court and the parties.

### D. **Defendants Will not be Unduly Prejudiced by the Amendment**

The proposed Third Amended Complaint is entirely consistent with the allegations of the SAC.  It adds no new causes of action or theories of liability, but instead merely adds more detail discovered from recently obtained evidence.  As Horizon moved to dismiss the SAC, in part, on the grounds that Plaintiff failed to plead with adequate particularity, Fed. R. Civ. P. Rule 9(b), it can hardly object to an amendment that adds greater particularity.  As set forth above, Plaintiff has brought this motion to amend at the earliest opportunity, and Horizon cannot claim that it has been prejudiced by any delay.  Moreover, no case deadlines need be extended as a result of the proposed amendment.

## IV. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order 1) taking the currently pending motions to dismiss off calendar without prejudice and, 2) deeming the Third Amended Complaint lodged herewith as filed and served on all defendants as of the date of the order.

Dated:        October 15, 2013            GOODIN, MACBRIDE, SQUERI,
                                          DAY & LAMPREY, LLP


                                          By:  */s/ Wayne T. Lamprey*
                                          Wayne T. Lamprey
                                          Attorneys for Plaintiff-Relator
                                          Mario Rizzo

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

Cartwright's dismissal.  (Lamprey Dec. ¶ 8)   Should Plaintiff be unable to obtain the government's consent and Court approval for the dismissal before the scheduled hearing date on the pending motions, however, to avoid a procedural knot, either the hearing date on the pending motions could be delayed to allow additional time, or Plaintiff could proceed to file the TAC. Both of these actions would obviate the need for the Court or the parties to proceed with a hearing on an outdated version of the Complaint, should the present motion be granted.

1

## DECLARATION OF WAYNE T. LAMPREY

2       I, Wayne T. Lamprey, declare as follows:

3       1.    I am a member of the State Bar of California and the bar of the Central

4   District of California.  I am a partner with the law firm of Goodin, MacBride,

5   Squeri, Day & Lamprey, LLP, counsel of record for plaintiff-relator Mario Rizzo in

6   this matter.  I make this declaration in support of Plaintiff's Ex Parte Request for

7   Leave to File a Third Amended Complaint.  Unless otherwise stated, I know the

8   facts stated herein of my own personal knowledge and if called as a witness I could

9   and would testify competently thereto.

10      2.    Motions to dismiss the operative Second Amended Complaint were

11  filed by each of the named defendants on September 16, 2013, and are set for

12  hearing on Monday, October 21, 2013, at 1:30 p.m.  The motions are fully briefed,

13  with opposition by Plaintiff filed on Monday, September 30, 2013, and replies by

14  each defendant filed on Monday, October 7, 2013.

15      3.    After the motions to dismiss were filed, I was contacted by counsel for

16  defendant Cartwright International Van Lines, Inc., to explore settlement of

17  Plaintiff's claims against Cartwright.  On October 10, 2013, I met with Cartwright's

18  counsel.  At that meeting, counsel provided me with a large number of documents

19  regarding such matters as the billing and fuel surcharge policies of the carrier

20  defendants (the "Cartwright Documents").

21      4.    On October 10 and 11, I reviewed the Cartwright Documents in detail.

22  The Cartwright Documents are consistent with the allegations of the Second

23  Amended Complaint, but provide additional detail previously not available to

24  Plaintiff.  This additional detail materially contradicts the arguments made by the

25  Carriers in their motions to dismiss.

26      5.    On Friday, October 11, at 9:37 in the morning, I sent an electronic

27  mail message to counsel for Horizon and Matson (who were seeking to meet and

28  confer regarding a motion to stay discovery), informing them of our intention to file

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**LAMPREY DEC. RE APP. TO FILE
THIRD AM. COMPL.**

1    a Third Amended Complaint and asking to meet and confer on the matter.  A true

2    and correct copy of this message is included in Exhibit A hereto.  I further informed

3    them that if the parties were unable to stipulate to the filing of a Third Amended

4    Complaint, Plaintiff would proceed *ex parte* before this Court, submitting the

5    application on the next court business day, Tuesday, October 15.

6        6.    On Monday, October 14, I circulated to defense counsel a proposed

7    stipulation for filing of a Third Amended Complaint.  Counsel for Matson and

8    Cartwright indicated that they would stipulate to the filing of a Third Amended

9    Complaint.  Counsel for Horizon declined to stipulate.

10       7.    Pursuant to Local Rule 7-19, the name, address, telephone number and

11   e-mail address of counsel for the opposing parties is set forth below.  I have advised

12   each of them by electronic mail (Exhibit A) of the date and substance of this *ex*

13   *parte* application.  As set forth above, counsel for Matson and Cartwright do not

14   oppose the relief sought herein; I do now know whether counsel for Horizon will

15   oppose the relief sought.

16   **Counsel for Matson Navigation**
     **Company, Inc.:**

17

18   Winston Y. Chan
          wchan@gibsondunn.com
19   Matthew L. Berde
          mberde@gibsondunn.com
20   Gibson, Dunn & Crutcher LLP
     555 Mission Street, Suite 3000
21   San Francisco, CA  94105-0921
     (415)393-8200
22

23

24

25

26

27

28

16   **Counsel for Horizon Lines, LLC:**

     Nicholas C. Harbist
          Harbist@BlankRome.com
     Blank Rome LLP
     1 Loan Square
     Philadelphia, PA  19103
     (215) 569-5500

     Paul M. Honigberg
          Honigberg@BlankRome.com
     Blank Rome LLP
     600 New Hampshire Ave NW
     Washington DC 20037
     (202) 772-5955

     Arti L. Bhimani
          ABhimani@BlankRome.com
     Blank Rome LLP
     1925 Century Park East, Suite 1900
     Los Angeles, CA  90067
     (414) 239-3400

GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**Counsel for Cartwright Int'l Van**
**Lines, Inc.**

2

3

James L. Eisenbrandt
    jeisenbrandt@berkowitzoliver.com
Christina M. Digirolamo
    cdigirolamo@berkowitzoliver.com

4

5

Berkowitz Oliver Williams Shaw
    & Eisenbrandt LLP
2600 Grand Boulevard, Suite 1200
Kansas City, MO  64108
(816) 561-7007

6

7

Robert L. Corbin
    rcorbin@corbinathey.com
Corbin Athey
601 West Fifth Street, Suite 1150
Los Angeles, CA  90071-2024
(213) 612-0001

8

9

10

11

    8.    I have made efforts to contact Benjamin Wei, the Assistant United

12

States Attorney responsible for this matter, regarding the proposed dismissal of

13

Cartwright.  On Monday, October 14, in response to an email I sent, I received an

14

automatic reply from Mr. Wei's email address advising me that he has been

15

furloughed and would not be available as a result of the government shut-down.

16

    I declare under penalty of perjury under the laws of the State of California

17

that the foregoing is true and correct.  Executed this 15th day of October, 2013, in

18

San Francisco, California

19

Dated:    October 15, 2013

20

    /s/ Wayne T. Lamprey
    Wayne T. Lamprey

21

22

3405/001/X156414.v1

23

24

25

26

27

28

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO