UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7409 PA (AJWx) | Date | October 28, 2013 |
|---|---|---|---|
| Title | United States ex rel. Rizzo v. Horizon Lines, LLC, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court are Motions to Dismiss filed by defendants Matson Navigation Company, Inc. ("Matson") (Docket No. 83), Cartwright International Van Lines, Inc. ("Cartwright") (Docket No. 85), and Horizon Lines, LLC ("Horizon") (Docket No. 86). Defendants challenge the sufficiency of the Second Amended Complaint ("SAC") filed by relator Mario Rizzo ("Relator"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for October 21, 2013, is vacated, and the matters taken off calendar.

**I.    Background**

Relator filed his initial Complaint under seal on October 4, 2010. That Complaint alleged violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 to 3733, against three ocean carriers, including Horizon and Matson, arising out of their billing practices for shipments of household goods ("HHG") for members of the military between Hawaii or Guam and locations within the continental United States. Relator filed a First Amended Complaint on June 13, 2012. The First Amended Complaint added claims against Cartwright and numerous other freight forwarders. The United States filed a Notice of Election to Decline Intervention on May 10, 2013, and the Court lifted the seal. Horizon, Matson, and Cartwright (collectively "Defendants") stipulated to the filing of the SAC, which Relator filed on August 23, 2013. The SAC drops the First Amended Complaint's claims against all of the freight forwarders except Cartwright.

According to the SAC, the Department of Defense ("DOD") contracts for the transportation of HHG for members of the military through DOD's Surface Deployment and Distribution Command ("SDDC"). Freight forwarders like Cartwright contract with the SDDC to manage the shipment of HHG when members of the military move from one base to another. The freight forwarders, in turn, contract with ocean carriers such as Horizon and Matson when HHG must be shipped by sea. When a shipment must travel first by sea and then by land through rail and trucking companies, such "intermodal shipments" are arranged by the ocean carriers. The ocean carriers receive and pay bills from the railroads and trucking companies. The ocean carriers then submit invoices to the freight forwarders for the entire amount of the intermodal shipment. Once the shipment is complete, the freight forwarder bills

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 10-7409 PA (AJWx) | Date | October 28, 2013 |
|---|---|---|---|
| Title | United States ex rel. Rizzo v. Horizon Lines, LLC, et al. | | |

the SDDC for the entire shipment by submitting a completed Government Bill of Lading to the SDDC with supporting documentation. The supporting documentation would include the invoices submitted by the ocean carriers to the freight forwarders.

The SDDC periodically issues "Rate Solicitations" that provide guidelines, rules, regulations, and other information governing HHG shipments. Freight forwarders submit bids in response to the Rate Solicitations setting forth the rates they will charge the SDDC during the time period covered by the Rate Solicitation (the "rate cycle"). In advance of each rate cycle, ocean carriers create and publish rates for ocean and intermodal transportation specifically for military HHG shipments. According to Relator, the ocean carriers create and publish these rates knowing that the freight forwarders will use them to prepare their bids to the SDDC for the upcoming rate cycle.

A freight forwarder's rate established through this Rate Solicitation process is required to cover every aspect of the shipment, including fuel costs. The Rate Solicitation, however, allows freight forwarders to pass on to the SDDC some costs that were not anticipated when they submitted their bids through allowed "surcharges." One allowed surcharge is for bunker fuel used by ships. To obtain reimbursement from SDDC for allowed fuel surcharges: (1) the freight forwarder's claim for payment must be billed by the ocean carrier for a bunker fuel surcharge; (2) the freight forwarder's claim for the bunker fuel surcharge must be separately stated on the bill of lading submitted by the freight forwarder to the SDDC; and (3) the claimed bunker fuel surcharge must be supported by an invoice from the ocean carrier for the actual amount of the bunker fuel surcharge sought by the freight forwarder. Additionally, since April 1, 2007, the SDDC's revised policy concerning allowable fuel surcharges, "TR-12," establishes that SDDC does not pay fuel surcharges "for any type of rail shipment" for intermodal shipments between Hawaii or Guam and the continental United States and will only pay a fuel surcharge for truck transportation to the extent that diesel fuel costs exceed a specific baseline.

Relator alleges that contrary to the requirements of the applicable Rate Solicitations and TR-12, of which Horizon and Matson were aware, the ocean carriers prepared freight bills or invoices that combined together a fuel surcharge for ocean transport – the actual bunker fuel surcharge – with a fuel surcharge on the line haul portion of intermodal shipments. According to the SAC, by combining the allowed and disallowed fuel surcharges into a single charge, Horizon and Matson "knowingly created, presented and caused to be presented freight bills that included false and fraudulent labeled fuel surcharges that were inflated by the amount of the disallowed fuel surcharge on line haul transport" and "falsely and fraudulently labeled the fuel surcharges" on their invoices in a manner that they knew would cause "the freight forwarders to submit false and fraudulent claims to the SDDC."

The SAC alleges that Cartwright, unlike the other freight forwarders who allegedly unknowingly passed along the disallowed fuel surcharges to the SDDC, knew that the invoices submitted by the ocean carriers included inaccurately labeled fuel surcharges and fuel surcharges on rail and other line haul transportation. According to the SAC, a representative from Cartwright communicated with a representative from Matson in November 2006 about SDDC's impending changes to TR-12. The Cartwright representative proposed that Matson "change and refer and bill the fuel [surcharge] as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7409 PA (AJWx) | Date | October 28, 2013 |
|---|---|---|---|
| Title | United States ex rel. Rizzo v. Horizon Lines, LLC, et al. | | |

'bunker fuel'?" Matson's representative allegedly responded that Matson had reviewed TR-12 and "began the process to change our nomenclature in regard to the fuel surcharge. To ensure SDDC will accept all supplemental bills from [freight forwarders participating in the SDDC program], Matson will have our line-item amended to read Bunker Fuel Surcharge long before the April 1, 2007 [i]mplementation date." The SAC alleges that by this time, Horizon was already combining its bunker fuel surcharge with the overland or rail surcharge and "falsely labeled the combined surcharge as a 'BS' or bunker surcharge."

The SAC alleges claims for: (1) knowingly presenting or causing to be presented, a false or fraudulent claim for payment against Horizon, Matson, and Cartwright pursuant to 31 U.S.C. § 3729(a)(1)(A); (2) knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim against Horizon, Matson, and Cartwright pursuant to 31 U.S.C. § 3729(a)(1)(B); and (3) conspiring to violate the FCA against Matson and Cartwright pursuant to 31 U.S.C. § 3729(a)(1)(C).

## II. Standard on Motion to Dismiss

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7409 PA (AJWx) | | Date | October 28, 2013 |
|---|---|---|---|---|
| Title | United States ex rel. Rizzo v. Horizon Lines, LLC, et al. | | | |

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964–65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

The more stringent pleading requirements of Federal Rule of Civil Procedure 9(b) apply to allegations of fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[W]here a complaint includes allegations of fraud, Federal Rule of Civil Procedure requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). "'To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" Id. (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)). When attempting to satisfy the 9(b) standard to allege an FCA claim with sufficient particularity, a plaintiff need not "identify representative examples of false claims to support every allegation . . . ." Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010). Instead, "it is sufficient to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" Id. at 998-99 (quoting United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)).

**III. Analysis**

The FCA was amended in 2009 by the Fraud Enforcement and Recovery Act ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617. As amended, the FCA imposes liability upon any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
> (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G) [of 31 U.S.C. § 3729(a)(1)].

31 U.S.C. § 3729(a)(1). The FERA amendments had the effect of modifying a claim under § 3729(a)(1)(B), which, for claims arising prior to June 7, 2008, applied to any person who "knowingly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7409 PA (AJWx) | | Date | October 28, 2013 |
|---|---|---|---|---|
| Title | United States ex rel. Rizzo v. Horizon Lines, LLC, et al. | | | |

makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C.A. § 3729(a)(1)(2) (2003). Additionally, for claims arising after May 20, 2009, FERA changed the definition of "knowing" and "knowingly":

> (1) the terms "knowing" and "knowingly" –
>   (A) mean that a person, with respect to information –
>     (i) has actual knowledge of the information;
>     (ii) acts in deliberate ignorance of the truth or falsity of the information; or
>     (iii) acts in reckless disregard of the truth or falsity of the information; and
>   (B) require no proof of specific intent to defraud . . . .

31 U.S.C. § 3729(b).

"The essential elements of an FCA claim are (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." United States ex rel. Lee v. Corinthian Colleges, 655 F.3d 984, 992 (9th Cir. 2011). To be liable under the FCA, a party must make "a palpably false statement, known to be a lie when it is made." United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1172 (9th Cir. 2006). While FCA liability only attaches to a person who knowingly makes a false statement, "a person need not be the one who actually submitted the claim forms in order to be liable." United States v. Mackby, 261 F.3d 821, 827 (9th Cir. 2001). "The FCA reaches 'any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government.'" Id. (quoting United States ex rel. Marcus v. Hess, 317 U.S. 537, 544-45, 63 S. Ct. 379, 384, 87 L. Ed. 443 (1943). Indeed, the FCA "gives the Unites States a cause of action against a subcontractor who causes a prime contractor to submit a false claim to the Government." United States v. Bornstein, 423 U.S. 303, 309, 96 S. Ct. 523, 528, 46 L. Ed. 2d 514 (1976); see also United States v. Harvard Coll., 323 F. Supp. 2d 151, 186-87 (D. Mass. 2004) (collecting cases).

General civil conspiracy principles apply to FCA conspiracy claims. See United States ex rel. Durcholz v. FKW Inc., 189 F.3d 542, 545 n.3 (7th Cir. 1999). "To prove a civil conspiracy, the plaintiff must show that the conspiring parties 'reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.'" Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999) (quoting Vieux v. East Bay Reg'l Park Dist., 906 F.2d 1330, 1343 (9th Cir. 1990)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Id. (quoting United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989)). "A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions." Id. at 856-57.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7409 PA (AJWx) | Date | October 28, 2013 |
|---|---|---|---|
| Title | United States ex rel. Rizzo v. Horizon Lines, LLC, et al. | | |

      In their Motions to Dismiss, Horizon and Matson contend that they cannot be liable under the FCA because their invoices were accurate, the fuel surcharges included on their invoices conformed to their valid tariffs that had been approved by the Surface Transportation Board, and that they are not subject to the SDDC's regulations concerning the disallowed fuel surcharge on the rail portion of an intermodal shipment. In essence, Horizon and Matson assert that their invoices were not false because they accurately sought payment for charges for which the freight forwarders were obligated to pay them pursuant to the agreements Horizon and Matson had with the freight forwarders. According to Horizon and Matson, the freight forwarders should have known that the invoices submitted by the ocean carriers combined the allowed and disallowed fuel surcharges in a single item because the tariffs and other information the ocean carriers provided to the freight forwarders disclosed that the fuel surcharge included a fuel surcharge for the rail portion of the shipments. Cartwright joins Horizon and Matson in additionally arguing that the SAC fails to allege sufficient facts to satisfy Rule 9(b)'s heightened pleading standard. Both Cartwright and Matson also assert that the SAC does not allege sufficient facts to support the conspiracy claim.

      The facts that the ocean carriers have no direct contractual relationship with the SDDC and are not explicitly bound by the SDDC's regulations are not fatal to Relators claims against Horizon and Matson. Horizon and Matson are in the position of subcontractors with the freight forwarders as the prime contractors. Horizon and Matson can therefore be liable under the FCA if they knowingly caused the freight forwarders to submit false claims to the SDDC. See Bornstein, 423 U.S. at 309, 96 S. Ct. at 528; see also Mackby, 261 F.3d at 827. Additionally, Horizon and Matson are not necessarily insulated from FCA liability simply because their tariffs and agreements with the freight forwarders may have allowed them to recover fuel surcharges from the freight forwarders for each segment of the intermodal shipments. Instead, the SAC attempts to make Horizon and Matson liable under the FCA because their invoices allegedly falsely characterized a disallowed fuel surcharge on rail transportation as a recoverable bunker fuel surcharge or deceptively concealed the fact that Horizon and Matson were including both recoverable and unrecoverable fuel surcharges in the same line item. See Mikes v. Straus, 274 F.3d 687, 696 (2d Cir. 2001) ("[T]he term 'false or fraudulent' is not defined in the Act. A common definition of 'fraud' is 'an intentional misrepresentation, concealment, or nondisclosure for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right.' 'False' can mean 'not true,' 'deceitful,' or 'tending to mislead.' The juxtaposition of the word 'false' with the word 'fraudulent,' plus the meanings of the words comprising the phrase 'false claim,' suggest an improper claim is aimed at extracting money the government otherwise would not have paid.") (citation omitted). The Court concludes, at least for purposes of the present Motions to Dismiss, that the SAC alleges sufficient facts to plausibly suggest that the description of the fuel surcharges in the ocean carriers' invoices were misleading or deceptive such that they could be considered "false or fraudulent" for purposes of the FCA.

      The Court additionally concludes that the SAC alleges sufficient facts to satisfy the requisite pleading standard to state each claim asserted against each defendant. Specifically, the SAC alleges the "who, what, where, and when" of the alleged fraud with sufficient particularity to satisfy Rule 9(b). Based on the allegations contained in the SAC, defendants know that Relator's claims involve

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7409 PA (AJWx) | | Date | October 28, 2013 |
|---|---|---|---|---|
| Title | United States ex rel. Rizzo v. Horizon Lines, LLC, et al. | | | |

shipments of HHG between Hawaii or Guam and the continental United States for which they assessed a fuel surcharge that included a surcharge on the rail portion of the shipment at times when the SDDC's regulations would only allow recovery for bunker fuel surcharges on the ocean-going portion of the shipment.  Moreover, the SAC satisfactorily alleges what was false about Horizon and Matson's invoices and Cartwright's claims for payment.  Finally, the SAC alleges sufficient facts to support the conspiracy claim against Matson and Cartwright.

**Conclusion**

For all of the foregoing reasons, the Court denies defendants' Motions to Dismiss the SAC. Defendants shall file their Answers to the SAC no later than November 12, 2013.  Relator's Ex Parte Application for Leave to File Third Amended Complaint (Docket No. 100) is denied without prejudice. Horizon's Motion to Stay Discovery Pending Resolution of Motions to Dismiss (Docket No. 103) is denied as moot.

IT IS SO ORDERED.